# EXHIBIT A

LIBERTY 1100 VA DR MEMBER LLC

FIRST AMENDMENT TO

AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

DATED AS OF AUGUST __, 2023

This First Amendment to Amended and Restated Limited Liability Company Agreement (this "**Amendment**") of **LIBERTY 1100 VA DR MEMBER LLC**, a Pennsylvania limited liability company (the "**Company**"), dated as of August __, 2023, is made by and among the individuals signing it below.

**WHEREAS**, the parties signing this Amendment desire to amend and modify that certain Amended and Restated Limited Liability Company Agreement of the Company dated as of December 31, 2021 (the "**Restated Operating Agreement**"), which Restated Operating Agreement amended and restated in its entirety and replaced that certain Limited Liability Company Agreement of the Company dated as of July ___, 2021 (the "**Original Operating Agreement**"), as amended by that certain First Amendment to the Operating Agreement, dated as of July ___, 2021 (the "**First Amendment**"), as amended by that certain Second Amendment to the Operating Agreement, dated as of July 19, 2022 (the "**Second Amendment**"), and as further amended by that certain Third Amendment to the Operating Agreement, dated as of October 19, 2022 (the "**Third Amendment**", and together with the Original Operating Agreement, the First Amendment, the Second Amendment, and the Restated Operating Agreement, collectively, hereinafter the "Operating Agreement"), which Operating Agreement governs the Company, pursuant to the Pennsylvania Limited Liability Company Law;

**NOW, THEREFORE**, in consideration of the premises and mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, intending to be legally bound, the individuals signing this Amendment below agree to amend the Operating Agreement as follows by adding the following provisions, which terms shall modify, supersede and replace the terms of the Operating Agreement:

Notwithstanding any other provision of the Operating Agreement, any other organizational documents or any provisions of law that empowers the Company, the following provisions shall be operative and controlling.

1. <u>Definitions</u>

All Capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Restated Operating Agreement.

2. <u>Members</u>

Modifying Section 5 of the Restated Operating Agreement, to add that the Members of the Company shall be composed of the Preferred Members and the Common Members.

No additional Members may be admitted to the Company without the prior unanimous written consent of the Preferred Members and the Common Members.

The defined term "Members" in Section A of Schedule A of the Restated Operating Agreement is hereby deleted in its entirety and replaced with the following:

"<u>Members</u>" means collectively, the Common Members and the Preferred Members, and includes any Person admitted as an additional member of the Company or as a

substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company.

The following new defined terms are hereby added to Section A of Schedule A of the Restated Operating Agreement in the appropriate alphabetical order:

"Common Members" means, Avrohom Prager and THE OLIVE 2021 SOUTH DAKOTA NGCG TRUST.

"Preferred Members" means, those Persons listed on Table II of Schedule B attached hereto.

Schedule B of the Restated Operating Agreement is hereby deleted in its entirety and replaced with Schedule B attached hereto.

3. Capital Contributions

Section 13 of the Restated Operating Agreement, and subsequently the Books of the Company referenced in Section 13 and 14 of the Operating Agreement shall be modified to reflect that the Preferred Members made a Capital Contribution to the Company in the amount of Ten Million Five Hundred Thousand ($10,500,000.00) Dollars (the "**Preferred Capital Contribution**"). The Preferred Members shall be entitled to a return of one and twenty-five hundredths (1.25%) percent per month (the "**Preferred Return**") pro rata in accordance with Schedule B until the Preferred Capital Contribution is paid back to the Preferred Members in full ("**Redemption**"), on or before two (2) years from the date hereof (the "**Redemption Deadline**").

The Preferred Capital Contribution shall be used solely for renovations at the Property.

The Company may not further encumber the Property, incur any additional debt which when taken together with the principal balance of the Loan exceeds the principal amount of $58,000,000.00, or add any other preferred members until the Preferred Members are paid their Preferred Capital Contribution together with the Preferred Return (including the Minimum Returns Requirement, if applicable), or without the express written consent of the Preferred Members.

Section 14 of the Restated Operating Agreement shall be modified to state that any additional capital contributions required or agreed to by the Managing Member or the Members shall be the sole responsibility of the Common Members and in no event shall the Preferred Members be required to make any additional capital contributions to the Company.

Notwithstanding anything herein to the contrary, any (i) sums advanced or expended by the Preferred Members in addition to the Preferred Capital Contribution which sums are advanced or expended in connection with the Company or the Preferred Capital Contribution, including without limitation costs of collection and reasonable legal fees, and (ii) unpaid Preferred Return payments which remain unpaid five (5) days following their regularly scheduled due date, shall be deemed additional Preferred Capital Contribution as and when made and the Preferred Members shall be entitled to a Preferred Return on such amounts at the rates set forth in, and in accordance with the terms of, Section 13 of the Restated Operating Agreement.

4. Allocation of Profits and Losses.

Prior to the repayment of the Preferred Capital Contributions in full, the Company's profits shall be allocated first to the Preferred Members to the extent of any accrued Preferred Return payments, then the balance to the Common Members. Losses shall be allocated to the Common Members.

5. Distributions

Notwithstanding anything contained in Section 16 of the Restated Operating Agreement, prior to distributing any funds to a Common Member, the Preferred Member shall receive the Preferred Capital Contribution and Preferred Return. The Preferred Return shall be due and payable by wire transfer to each individual member of the Preferred Member's account on a monthly basis on the first (1st) day of each calendar month with the first payment due on September 1, 2023. The first payment shall be prorated calculated based on the actual number of days elapsed from the date hereof through and including August 31, 2023. Notwithstanding anything contained herein to the contrary, prior to Redemption, the Preferred Members must have received an amount equal to at least six (6) months of Preferred Return payments (the "**Minimum Returns Requirement**").

Notwithstanding anything herein to the contrary, upon the occurrence and during the continuation of an Event of Default under the Loan Agreement, no distributions of available cash shall be made to the Common Members so long as the Preferred Members have not been redeemed in full.

6. Redemption

At such time as the Preferred Members has received the Preferred Capital Contribution and Preferred Return, the Preferred Members shall be redeemed and the Preferred Members shall be deemed to withdraw from the Company and resign as a Member, whereupon the Preferred Members shall execute a standard and customary form "Assignment and Resignation of Member" thereby relinquishing any and all rights and remedies as a member of the Company and assigning its membership interests in the Company to the Members.

7. Miscellaneous

Use of Funds. The Company shall use the Preferred Capital Contribution solely for renovations at the Property.

Personal Guaranty. Notwithstanding anything contained herein to the contrary, the Preferred Members shall receive the Preferred Capital Contribution and Preferred Return (including the Minimum Returns Requirement, if applicable) on or before the Redemption Deadline. Avrohom Prager and Shulamit Prager in their individual capacities, shall, jointly and severally personally guaranty to the Preferred Members that the Preferred Capital Contribution and Preferred Return (including the Minimum Returns Requirement, if applicable) will be paid in full to the Preferred Members on or before the Redemption Deadline by executing that certain Guaranty dated as of the date hereof made by Avrohom Prager and Shulamit Prager in favor of the Preferred Members.

Successors and Assigns. This Amendment shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and permitted assigns.

Counterparts. This Amendment may be executed in any number of counterparts, all of which together shall constitute a single instrument. In addition, the parties may execute this Amendment by telecopy, PDF, or electronic transmission and such facsimile signature or electronic transmission shall be deemed an original.

Entire Agreement. This Amendment embodies the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein. There are no restrictions, promises, representations, warranties, covenants or undertakings other than those expressly set forth or referred to herein. This Amendment supersedes all prior agreements and understandings, express or implied, oral or written, between the parties with respect to such subject matter hereof.

Amendments. Any amendment to this Amendment shall be effective only if such amendment is evidenced by a written instrument duly executed and delivered by the Members.

Section Titles. Section titles are for descriptive purposes only and shall not control or alter the meaning of this Amendment as set forth in the text hereof.

Governing Law. This Amendment shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania without regard to its conflict of laws principles.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the day and year first above written.

**MANAGING MEMBER:**

By: ______________________
Name: Avrohom Prager
Title: Managing Member

**MEMBERS:**

By: ______________________
Name: Avrohom Prager

**THE OLIVE 2021 SOUTH DAKOTA NCNG TRUST**

By: ______________________
Name: Doug Mikkonen
Title: SVP

By: ______________________
Name: Shulamit Prager

**PERSONAL GUARANTY:**

______________________
Avrohom Prager

______________________
Shulamit Prager

Preferred Members:

Nuview Trust Co C/F
Satish Patel IRA

By: [signature]

Nuview Trust Co C/F
Manjit S Bains IRA

By:__________

Nuview Trust Co C/F
Mrinal S Mali IRA

By:__________

[signature]
Ramesh Thakkar

[signature]
Manjula Thakkar

__________
Madhava Reddy for MVP
International Inc

__________
Renuka U. Reddy for
MVP International Inc

Preferred Members:

Nuview Trust Co C/F
Satish Patel IRA

By:____________

Nuview Trust Co C/F
Manjit S Bains IRA

By: [signature]

Nuview Trust Co C/F
Mrinal S Mali IRA

By:____________

[signature]
Ramesh Thakkar

[signature]
Manjula Thakkar

____________
Madhava Reddy for MVP
International Inc

____________
Renuka U. Reddy for
MVP International Inc

Scanned with CamScanner

Preferred Members:

Nuview Trust Co C/F
Satish Patel IRA

By:____________

Nuview Trust Co C/F
Manjit S Bains IRA

By:____________

Nuview Trust Co C/F
Mehul S Mali IRA

By: [signature]

[signature]
Ramesh Trikha

[signature]
Manjula Trikha

____________
Madhava Reddy for MVP
International Inc

____________
Renuka U. Reddy for
MVP International Inc

**Preferred Members:**

Nuview Trust Co C/F
Satish Patel IRA

By:________________

Nuview Trust Co C/F
Manjit S Bains IRA

By:________________

Nuview Trust Co C/F
Mrinal S Mali IRA

By:________________

________________
Ramesh Thakkar

________________
Manjula Thakkar

________________
Madhava Reddy for MVP Park
International Inc

Renuka Reddy
________________
Renuka U. Reddy for
MVP Park International Inc

Nuview Trust Co C/F Cory Commiff IRA

By:__________________

__________________
Cory Commiff

__________________
Lignea Stack

NUVIEW Trust Co C/F
Mayur T Dalal IRA

By:__________________

__________________
Madhavi M. Dalal

Nuview Trust Co C/F
Mahesh Chhabria IRA

By:__________________

__________________
Mrinal S Mali

__________________
Kavita Kalra

__________________
Shashi Goel

__________________
Prem Goel

Nuview Trust Co C/F Cory Conniff IRA

By:________________

________________
Cory Conniff

________________
Linnea Stack

NUVIEW Trust Co C/F
Mayur T Dalal IRA
By: M Dalal.

m. m dalal.
Madhavi M. Dalal

Nuview Trust Co C/F
Mahesh Chhabria IRA
By: [signature] 7/9/23.

________________
Mrinal S Mali

________________
Kavita Kalra

________________
Shashi Goel

________________
Prem Goel

______________
Linnea Stack

NUVIEW Trust Co C/f
Mayur T Dalal IRA

By:______________

______________
Madhavi M. Dalal

Nuview Trust Co C/f
Mahesh Chhabria IRA

By:______________

______________
Umesh I. Dalal

______________
Kavita Kalra

______________
Shashi Goel

______________
Prem Goel

CRP Investors Group LLC

By:______________

UK Management and Investors Group LLC

By:______________

________________________
Linnea Stack

NUVIEW Trust Co C/F
Mayur T Dalal IRA

By:____________________

________________________
Madhavi M. Dalal

Nuview Trust Co C/f
Mahesh Chhabria IRA

By:____________________

________________________
Umesh I. Dalal

________________________
Kavita Kalra

________________________
Shashi Goel

________________________
Prem Goel

CRP Investors Group LLC

By: chantniEi Patel

UK Management and Investors Group LLC

By: Uttsav Patel

Nuview Trust Co C/F Cory Conniff IRA

By:________________

________________
Cory Conniff

________________
Linnea Stack

NUVIEW Trust Co C/F
Mayur T Dalal IRA
By:________________

________________
Madhavi M. Dalal

Nuview Trust Co C/F
Mahesh Chhabria IRA

By:________________

________________
Mrinal S Mali

________________
Kavita Kalra

________________
Shashi Goel

________________
Prem Goel

____________________
Linnea Stack

NUVIEW Trust Co C/F
Mayur T Dalal IRA

By:__________________

____________________
Madhavi M. Dalal

Nuview Trust Co C/f
Mahesh Chhabria IRA

By:__________________

____________________
Umesh I. Dalal

____________________
Kavita Kalra

____________________
VIJAY SINGHAL

____________________
Shashi Goel

____________________ 7/9/2023
Prem Goel

CRP Investors Group LLC

By:__________________

UK Management and Investors Group LLC

By:__________________

**SCHEDULE B**

**Members**

| Table I | |
|---|---|
| Common Members | |
| Name | Percentage Interest |
| Avrohom Prager | 30% |
| THE OLIVE 2021 SOUTH DAKOTA NCNG TRUST | 70% |

| Table II | |
|---|---|
| Preferred Members | |
| Name | Amount Committed |
| NuView Trust Company Custodian FBO Satish D. Patel IRA | $1,448,000 |
| NuView Trust Company Custodian FBO Manjit S. Bains IRA | $2,000,000 |
| NuView Trust Company Custodian FBO Mrinal S. Mali IRA | $1,500,000 |
| Ramesh Thakkar and Manjula Thakkar | $500,000 |
| MVP Park International Inc. | $500,000 |
| NuView Trust Company Custodian FBO Cory Conniff IRA | $150,000 |
| Cory Conniff | $100,000 |
| NuView Trust Company Custodian FBO Mayur T. Dalal IRA | $100,000 |
| Madhavi M. Dalal | $102,000 |
| NuView Trust Company Custodian FBO Mahesh Chhabria IRA | $300,000 |
| Kavita Kalra | $100,000 |
| Vijay Singhal | $100,000 |
| Prem Goel | $300,000 |
| Mrinal S. Mali | $300,000 |
| CRP Investors Group LLC | $1,500,000 |

| | |
|---|---|
| UK Management and Investors. Group LLC | $1,500,000 |
| **TOTAL** | **$10,500,000** |

# GUARANTY OF PAYMENT

**THIS GUARANTY OF PAYMENT** (the "Guaranty") is executed as of August 1 , 2023, by the undersigned AVROHOM PRAGER & SHULAMIT PRAGER, individuals with an address at 7 Olive Court, Lakewood, NJ 08701 (collectively "Guarantor"), to and for the benefit of the Persons listed on Schedule A attached hereto (together with their successors and assigns, collectively, the "Preferred Members").

## PRELIMINARY STATEMENT

**WHEREAS,** pursuant to that First Amendment to the Amended and Restated Limited Liability Company Agreement of even date herewith (the "Amendment") of LIBERTY 1100 VA DR MEMBER LLC (the "Company") the Preferred Members made a Preferred Capital Contribution (as defined in the Amendment) in the total amount of $10,500,000.00 to the Company; and

**WHEREAS**, the Amendment modified that certain Amended and Restated Limited Liability Company Agreement of the Company dated as of December 31, 2021 (the "Restated Operating Agreement" and together with the Amendment, as the same may be further amended from time to time, collectively, hereinafter the "Agreement")

**WHEREAS**, as part of the consideration for Preferred Members making the Preferred Capital Contribution, Guarantor has agreed to deliver to the Preferred Members this Guaranty; and

**WHEREAS**, Preferred Members have declined to make the Preferred Capital Contribution, unless this Guaranty is duly executed by the Guarantor and delivered to Preferred Members; and

**WHEREAS,** Guarantor will derive substantial economic benefits from the Preferred Members making the Preferred Capital Contribution to the Company.

**NOW, THEREFORE**, in consideration of the promises and as part of the consideration for making the Preferred Capital Contribution, Guarantor covenants and agrees to and with Preferred Members as follows:

(1) Guarantor hereby unconditionally, absolutely and irrevocably guarantees to Preferred Members the punctual, prompt and complete payment of: (i) the Preferred Return, (ii) the Minimum Returns Requirement, and the (iii) Redemption (as such terms are defined in the Amendment). Guarantor hereby further unconditionally, absolutely and irrevocably guarantees to Preferred Members that appraised the value of the Property presented to Preferred Members as of the date hereof is current and accurate, and that any proceeds from the sale of all or any portion of the Property shall be used to pay down the Preferred Capital Contribution until repaid in full, prior to being distributed to the Common Members, only if The Company has defaulted in repaying the Preferred Capital Contribution. It being expressly understood and agreed that this is a continuing Guaranty

and an instrument for the payment of money only, and that the obligations of Guarantor are and shall be absolute, unconditional and irrevocable under any and all circumstances without regard to the legality, binding effect, validity, regularity, or enforceability of the Amendment or any other documents executed in connection herewith or therewith, a true copy of each of such documents Guarantor hereby acknowledge having received, reviewed and approved.

(2) Guarantor agrees that their liabilities under this Guaranty shall be unaffected, regardless of whether notice or consideration is given or their further consent obtained, by (i) any amendment, supplement, modification or other change in the Restated Operating Agreement or the Amendment or any other instrument made to or with Preferred Members by Guarantor or the Company, (ii) any extension of time for the observance or performance required thereby, (iii) any sale or assignment of the Company's membership interests, the Property, or any part thereof, (iv) exculpatory provisions, if any limiting Preferred Members' rights to enforce a deficiency judgment against Guarantor, (v) any release of Guarantor, Company, or any other person or entity from performance or observance of any of the agreements, terms, covenants or conditions contained in any of such instruments whether by operation of law or otherwise, (vi) Reserved, (vii) any recovery from Guarantor hereunder or under any other guaranty or guaranties executed in connection with the Preferred Capital Contribution, (viii) the accuracy or inaccuracy of any representations or warranties made by Guarantor in the Agreement or by Guarantor in this Guaranty or in any other documents executed by Guarantor in connection with the Preferred Capital Contribution, (ix) any bankruptcy, insolvency, liquidation, moratorium, reorganization, arrangement for the benefit of creditors, receivership, trusteeship or other law of like import affecting Guarantor or any of their respective successors and assigns, including, but not limited to, any automatic stay granted pursuant to any provision of a bankruptcy or similar law, (x) notwithstanding any provision to the contrary contained or implied in the Agreement or by law or in equity, any recovery as a result of the exercise of any of Preferred Members' rights or remedies under the Amendment unless as a result thereof Preferred Members has been paid the entire amount owed to Preferred Members under the Amendment (hereinafter such obligations owed to Preferred Members are referred to as the "Guaranteed Obligations") and (xi) any defense given to any guarantor (whether or not the same is Guarantor hereunder) or surety at law or in equity.

(3) Guarantor agrees that to the extent any amounts (i) are collected by Preferred Members in connection with any other guaranty or guaranties which are executed by Guarantor or any other person or entity which may have or may hereafter guarantee all or part of the Guaranteed Obligations, or (ii) are paid to Preferred Members by Guarantor or by any person or entity which may have or may hereafter execute any guaranty or guaranties of all or part of the Guaranteed Obligations, that regardless of the way such payments or amounts are characterized by Guarantor or any other person or entity, Preferred Members shall have the right, but not the obligation, to apply such amounts first to that part of the Guaranteed Obligations, if any, which is not covered by this Guaranty but which is covered by any other guaranty or guaranties of all or part of the Guaranteed Obligations.

(4) Guarantor waives any and all legal requirements that may require Preferred Members to institute any action or proceedings at law or in equity against Company, or anyone else, or exhaust its remedies against Company, or anyone else in respect of the Preferred Capital Contribution or in respect of any other security held by Preferred Members as a condition precedent to bringing an action against Guarantor upon this Guaranty. All remedies afforded to Preferred Members by reason of this Guaranty are separate and cumulative remedies and no one of such remedies, whether exercised by Preferred Members or not, shall be deemed to be an exclusion of any of the other remedies available to Preferred Members and shall not limit or prejudice any other legal or equitable remedy which Preferred Members may have. This is a guaranty of payment and not of collection.

(5) Guarantor agrees that until each and every term, covenant and condition of this Guaranty is fully performed and fulfilled, they shall not be released by any act or thing which might, but for this provision, be deemed a legal or equitable discharge of a surety or guarantor (including, without limitation, Guarantor), or by reason of any waiver, extension, modification, forbearance or delay or other act or omission of Preferred Members or its failure to proceed promptly or otherwise, or by reason of any action taken or omitted or circumstance which may or might vary the risk or affect rights or remedies by reason of any further dealings between Company and Preferred Members, whether relating to the Preferred Capital Contribution or otherwise, and Guarantor waives and surrenders any defense to their liabilities hereunder based upon any of the foregoing acts, omissions, agreements, waivers or any of them and also waives and relinquishes all other rights and remedies accorded by applicable law to guarantors and sureties, it being the purpose and intent of this Guaranty that the obligations of the Guarantor hereunder is and that this Guaranty is absolute, irrevocable and unconditional under any and all circumstances. No amendment, modification, discharge, waiver or release of this Guaranty shall be established by conduct, custom or course or business.

(6) Guarantor waives notice of acceptance of this Guaranty and of presentment for payment, demand, protest, notice of protest and of dishonor, notices of default and all other notices of every kind and description now or hereafter provided by any constitution, statute or rule of law.

(7) If Guarantor shall advance or become obligated to pay any sums with respect to this Guaranty or the Preferred Capital Contribution, Guarantor agrees that the amount of such sums and of such indebtedness and all interest thereon shall at all times be subordinate as to lien, time of payment and in all other respects to all sums, including Capital Contributions, Preferred Return, and other amounts at any time owing to Preferred Members under the Agreement or the obligations evidencing the same and that the Guarantor shall not be entitled to enforce or receive payment thereof until the Indebtedness is paid in full. Nothing herein contained is intended or shall be construed to give Guarantor any right of subrogation in or under the Preferred Capital Contribution, the obligations evidencing the same, or any right to participate in any way therein or in the right, title or

interest of Preferred Members in or to the Premises, or any part thereof, or other mortgaged property, notwithstanding any payment made by Guarantor with respect to this Guaranty or the Preferred Capital Contribution, all such rights of subrogation and participation being expressly waived and released until the Guaranteed Obligations are paid in full.

(8) Any notice, demand or request by Preferred Members to the Guarantor shall be in writing and shall be deemed to have been duly given or made one (1) business day following the date when sent by any reputable overnight courier addressed to Guarantor at his address set forth at the foot hereof.

(9) (a) This Guaranty is to be construed according to the laws of the State of Pennsylvania in all respects without giving effect to its conflict of laws principles, including matters of construction, performance and enforcement except to the extent the procedural laws of another jurisdiction shall apply to any action commenced by the Preferred Members with respect to the remedies of the Preferred Members under this Guaranty or otherwise. Without limiting other methods of obtaining jurisdiction, the Guarantor hereby agrees to submit to personal jurisdiction of the courts of the in any action or proceeding arising out of this Guaranty. In furtherance of such agreement, Guarantor hereby agrees and consents that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the undersigned by personal service or by mail within or without the jurisdiction of any such court. The foregoing shall not be deemed a limitation of Preferred Members' right to bring an action based on this Guaranty in any other jurisdiction.

(b) In the event any action or proceeding be brought by Preferred Members to enforce this Guaranty, or by or against Guarantor or Preferred Members, or both, or Preferred Members appears in any action or proceeding, in such event, Guarantor agrees to pay to Preferred Members reasonable attorney's fees and court costs including attorney's fees and court costs at trial or on appeal, together with returns at the Preferred Return rate set forth in the Amendment from the date demand is made by Preferred Members on this Guaranty until payment in full is received.

(10) Guarantor represents and warrants that:

(a) There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor or the properties of Guarantor before any court, governmental department, arbitrator, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to Guarantor, would have a material adverse effect on the financial condition, business, properties or operations of Guarantor.

(b) Neither the business nor properties of Guarantor are affected by a fire, explosion, strike, lockout, or other labor dispute, drought, storm, hail, earthquake, embargo, acts of God or of the public enemy or other casualty (whether or not covered by insurance) which would have a material adverse effect upon the financial condition, business, properties or operations of Guarantor.

(c) They are not a party to any indenture, Preferred Capital Contribution or credit agreement or any lease or other agreement or instrument or subject to any charter or other restriction which would have a material adverse effect on their ability to carry out their obligations under this Guaranty.

(d) No information, exhibit or report furnished by Guarantor to Preferred Members in connection with the negotiation of this Guaranty contained as of the date of the furnishing thereof any material misstatement of fact or omitted to state a material fact necessary to make the statements contained therein not misleading.

(e) Guarantor has the full power, legal right, authority and requisite capacity to execute and deliver this Guaranty, and to observe, perform and fulfill the provisions hereof.

(f) All payments under this Guaranty shall be made in United States currency.

(11) Guarantor agrees to furnish Preferred Members with the information with respect to the business, properties, operations or condition, financial or otherwise, of Guarantor as Preferred Members may from time-to-time reasonably request.

(12) Should Preferred Members be obligated by any bankruptcy or other law to repay to Guarantor or to any trustee, receiver or other representative of any of them, any amounts previously paid in respect of this Guaranty, then this Guaranty shall be reinstated to include the amount of such repayment. Preferred Members shall not be required to litigate or otherwise dispute their obligation to make such repayments if, in good faith and on the advice of counsel, they believe that such obligation exists.

(13) If any action, suit or proceeding which either directly or indirectly involves the Guaranty is commenced, Guarantor waive their right to any jury trial in connection therewith.

(14) If any of the provisions of this Guaranty, or the application thereto to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Guaranty, or the application of such provision to persons or circumstances other than those as to whom or which it is held invalid or enforceable, shall not be affected thereby, and every provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.

(15) Guarantor agrees to indemnify Preferred Members against any reasonable loss, cost or expense in the nature of costs, expenses and reasonable attorney's fees and expenses caused by the assertion by Guarantor of any unsuccessful defense to their obligations under this Guaranty. Guarantor waives any right or claim of right to cause a marshaling of Guarantor's assets or to cause Preferred Members to proceed against any security that has been or may be granted before proceeding against Guarantor. Guarantor

agrees that any payments required to be made by him hereunder shall become due in accordance with the Agreement immediately upon the happening of any default following the expiration of any applicable grace period under the Agreement and without presentment of the Agreement to Guarantor, demand for payment or protest thereof, or notice or nonpayment or protest thereof.

(16) This Guaranty is separate, distinct and in addition to any liability or obligations that Guarantor may have under any other guaranty executed by Guarantor in connection with any other Preferred Capital Contribution from Preferred Members to Company and no other agreement or guaranty executed in connection with the Preferred Capital Contribution shall act to reduce or set off Guarantor's liability hereunder.

(17) This Guaranty shall be binding upon the heirs, legal representatives, successors and permitted assigns of Guarantor and shall inure to the benefit of Preferred Members and their respective successors and assigns (whether such assignment is in whole or in part). Without the prior written consent of the Preferred Members, which may be withheld in Preferred Members' sole and absolute discretion, no Guarantor shall assign or otherwise transfer any of its obligations under this Guaranty.

(18) This Guaranty may not be modified, amended, discharged or otherwise changed orally, but only by an instrument in writing which is executed and delivered by the Guarantor and Preferred Members.

(19) Guarantor acknowledge that they have received a true copy of this Guaranty and agree that they have executed and delivered this Guaranty to the Preferred Members, intending that Preferred Members materially and justifiably rely thereon in connection with the Preferred Capital Contribution.

(20) In interpreting this Guaranty, the singular shall include the plural; the plural shall include the singular; and the use of any gender shall include all genders.

(21) The obligations of Guarantor hereunder shall be joint and several with the obligations of any other person or entity providing any guaranty or Indemnity with respect to the Preferred Capital Contribution.

(22) Guarantor represents that the additional amounts are owed by the Guarantor on the additional properties as shown on Exhibit A attached hereto.

(23) As security for prompt and full satisfaction of the Guarantor's obligations hereunder, Guarantor hereby pledges to the Preferred Members, and grants to the Preferred Members a security interest in and a right of set-off against all monies, deposits and other property of any kind owned by the Guarantor or in which the Guarantor now or hereafter has an interest and which shall be in the possession of or control of the Preferred Members at any time for any reason whatsoever; such lien and security interest shall be independent of any right of set-off which the Preferred Members may have, and in the event the Guarantor shall not pay to the Preferred Members any amounts when due hereunder, the

Preferred Members may set-off and apply against the Guarantor's liabilities hereunder all amounts owed by the Preferred Members to the Guarantor which are or may be in the possession of the Preferred Members.

BALANCE OF PAGE INTENTIONALLY LEFT BLANK

**IN WITNESS WHEREOF,** Guarantor has duly executed this Guaranty as of the day and year first above written.

______________________________
Avrohom Prager

______________________________
Shulamit Prager

STATE OF NJ )
) ss.:
COUNTY OF Ocean )

On the 1 day of ~~July~~ Aug in the year 2023 before me, the undersigned, personally appeared AVROHOM PRAGER & SHULAMIT PRAGER personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

______________________________
Notary Public

SARAH RUBIN
MY COMMISSION EXPIRES 6/21/2027
NOTARY PUBLIC STATE OF NEW JERSEY

SARAH RUBIN
Notary Public, State of New Jersey
Comm. # 50198494
My Commission Expires 6/21/2027

**SCHEDULE A**

**PREFERRED MEMBERS**

| |
|---|
| NuView Trust Company Custodian FBO Satish D. Patel IRA |
| NuView Trust Company Custodian FBO Manjit S. Bains IRA |
| NuView Trust Company Custodian FBO Mrinal S. Mali IRA |
| Ramesh Thakkar and Manjula Thakkar |
| MVP Park International Inc. |
| NuView Trust Company Custodian FBO Cory Conniff IRA |
| Cory Conniff |
| NuView Trust Company Custodian FBO Mayur T. Dalal IRA |
| Madhavi M. Dalal |
| NuView Trust Company Custodian FBO Mahesh Chhabria IRA |
| Kavita Kalra |
| Vijay Singhal |
| Prem Goel |
| Mrinal S. Mali |
| CRP Investors Group LLC |
| UK Management and Investors. Group LLC |

| Avrohom Prager PFS as of 1/9/2023 | |
|---|---|
| Cash in Bank | $21,500,000 |
| Cash in Escrow | $8,000,000 |
| Securities | $57,654,702 |
| Personal Real Estate | $175,000 |
| Net Equity in Real Estate Investments | $492,027,554 |
| Equity in Other Businesses | $3,044,000 |
| Total Assets | $582,401,256 |
| | |
| Total Liabilities | $0 |
| | |
| Net Worth | $582,401,256 |

DISCLAIMER: I hereby certify that, to the best of my knowledge, the provided information which is based on third party appraisals is true and accurate.

Avrohom Prager
Shulamit Prager

A Prager

State of New Jersey
County Of Ocean

On this 10 day of January 2023, before me, a Notary Public, personally appeared Avrohom Prager known to be or satisfactorily proven to be the person whose name is subscrbed to the within document and acknowledge that he/she executed the same.

In witness whereoff, I have hereunto set my hand and official seal:

Sarah Rubin

SARAH RUBIN
Notary Public, State of New Jersey
Comm. # 50198494
My Commission Expires 6/21/2027

SARAH RUBIN
MY COMMISSION EXPIRES 6/21/2027
NOTARY PUBLIC
STATE OF NEW JERSEY

On this 10 day of January 2023, before me, a Notary Public, personally appeared Shulamit Prager known to be or satisfactorily proven to be the person whose name is subscrbed to the within document and acknowledge that he/she executed the same.

In witness whereoff, I have hereunto set my hand and official seal:

Sarah Rubin

SARAH RUBIN
Notary Public, State of New Jersey
Comm. # 50198494
My Commission Expires 6/21/2027

SARAH RUBIN
MY COMMISSION EXPIRES 6/21/2027
NOTARY PUBLIC
STATE OF NEW JERSEY

Avrohom Prager PFS June 2020

## Avrohom Prager - Real Estate Schedule as of September 30, 2022

| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| American Metro Center | 300 American Metro Blvd Hamilton NJ | 240 Princeton Avenue Associates, LP | Class A Office | Oct-19 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 190-200 Campus Drive | 190-200 Campus Drive Florham Park NJ 07932 | 200 Campus Drive LLC | Class A Office | Jan-20 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 300-600 Campus Drive | 300-600 Campus Drive Florham Park NJ 07932 | Campus 300-600 LLC | Class A Office | Jan-20 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Hopewell Blvd | 1100 American Blvd Pennington NJ 08534 | 1100 American Blvd LLC | Class A Office | Apr-20 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 207 W 75th Street, Owner LLC | 207 W 75th Street, New York, NY | 75th Street Partners LLC | Mixed Use | | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Edgewater Wood LLC | 26 Main Street, New Egypt, NJ | | Multifamily | | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 100 Campus Drive | 100 Campus Drive Florham Park NJ 07932 | Campus 100 LLC | Class A Office | Jan-20 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 99 Wood Ave S | 99 Wood Ave S, Iselin, NJ | 99 Wood Ave LLC | Class A Office | Mar-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 101 Wood Ave S | 101 Wood Ave S, Iselin, NJ | 101 Wood Ave LLC | Class A Office | Mar-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 333 & 343 Thornall | 333 & 343 Thornall St, Edison, NJ | 333 Thornall Ave LLC/ 343 Thornall Ave LLC | Class A Office | Mar-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 194 Wood Ave S | 194 Wood Ave S, Iselin, NJ | Wood Ave 194 LLC | Class A Office | Aug-20 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| BB&T Center | 200 S College St, Charlotte, NC | S College Lessee LLC | Class A Office | Jan-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Riverside on the James | 1001 Haxall Point, Richmond, VA | Riverside Richmond LLC | Class A Office | Apr-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Burnett Plaza | 801 Cherry St, Fort Worth, TX | Burnett Cherry Street LLC | Class A Office | Apr-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Riveredge Summit | 1500-1600 Riveredge Summit Pkwy, Atlanta, GA | Riverside Summit Parkway LLC | Class A Office | Apr-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 44 Whippany | 44 Whippany Road, Morristown NJ | Whipp Morristown LLC | Class A Office | Oct-20 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 1100 Virginia | 1100 Virginia Drive, Fort Washington, PA | Liberty 1100 VA Dr LLC | Class A Office | Jul-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| City Tower | 333 City Blvd, Orange, CA | 333 City Blvd LLC | Class A Office | Jul-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 11 & 99 Canal | 11 & 99 Canal Center Plaza, Alexandria, VA | Liberty 11 Canal LLC / Liberty 99 Canal LLC | Class A Office | Sep-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 44 Canal | 44 Canal Center Plaza, Alexandria, VA | Liberty 44 Canal LLC | Class A Office | Sep-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 590 Wood | 590 Wood Avenue S, Iselin, NJ | Liberty 590 Wood LLC | Class A Office | Dec-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Fair Lakes | 13005 Fair Lakes Circle, Fairfax, VA | Liberty Fair Lakes LLC | Class A Office | Sep-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 35 West Wacker | 35 West Wacker Drive, Chicago, IL | Liberty 35 Wacker LLC | Class A Office | Jan-22 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] by Marriott | 515 US Highway 1 South, Iselin, NJ | Liberty Woodbridge Hotel Member LLC | Hotel | Dec-21 | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| The Shuman | 263 Shuman Blvd, Naperville, IL | Liberty 263 Shuman LLC | Class A Office | Mar-22 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Heathrow | [illegible] International Parkway Lake Mary, Florida 32746 | Liberty Heathrow Portfolio LLC | Class A Office | Dec-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | 6500 Hamilton Lebanon Road, Monroe, OH | Monroe Industrial Holdings Member LLC | Single Tenant Industrial | Jul-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | 501 Park East Blvd, New Albany, IN | 501 Industrial Holdings Member LLC | Single Tenant Industrial | Dec-21 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Hopewell Blvd | 1100 American Blvd Pennington NJ 08534 | AACF Hopewell LLC | Class A Office | Apr-20 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| American Metro Center | 300 American Metro Blvd Hamilton NJ | 240 Princeton Urban Renewal LLC | Class A Office | Oct-19 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 8300 Normandale | 8300 Norman Center Drive, Bloomington, MN | Liberty 8300 Normandale LLC | Class A Office | Jun-22 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] Normandale | [illegible] Street West, Bloomington, MN | Liberty [illegible] Normandale LLC | Class A Office | Jun-22 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] Normandale | [illegible] Norman Center Drive, Bloomington, MN | Liberty [illegible] Normandale LLC | Class A Office | Jun-22 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 8400 Normandale | [illegible] Street West, Bloomington, MN | Liberty 8400 Normandale LLC | Class A Office | Jun-22 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 8500 Normandale*** | 8500 Normandale Lake Blvd, Bloomington, MN | Liberty 8500 Normandale LLC | Class A Office | Jun-22 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Brown NJ LLC | 6-20 Brown, New Egypt, NJ | | Multifamily | | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | Total | | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

---

LIBERTY 1100 VA DR MEMBER LLC

FIRST AMENDMENT TO

AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

DATED AS OF AUGUST __, 2023

---

This First Amendment to Amended and Restated Limited Liability Company Agreement (this "**Amendment**") of **LIBERTY 1100 VA DR MEMBER LLC**, a Pennsylvania limited liability company (the "**Company**"), dated as of August __, 2023, is made by and among the individuals signing it below.

**WHEREAS**, the parties signing this Amendment desire to amend and modify that certain Amended and Restated Limited Liability Company Agreement of the Company dated as of December 31, 2021 (the "**Restated Operating Agreement**"), which Restated Operating Agreement amended and restated in its entirety and replaced that certain Limited Liability Company Agreement of the Company dated as of July ___, 2021 (the "**Original Operating Agreement**"), as amended by that certain First Amendment to the Operating Agreement, dated as of July ___, 2021 (the "**First Amendment**"), as amended by that certain Second Amendment to the Operating Agreement, dated as of July 19, 2022 (the "**Second Amendment**"), and as further amended by that certain Third Amendment to the Operating Agreement, dated as of October 19, 2022 (the "**Third Amendment**", and together with the Original Operating Agreement, the First Amendment, the Second Amendment, and the Restated Operating Agreement, collectively, hereinafter the "Operating Agreement"), which Operating Agreement governs the Company, pursuant to the Pennsylvania Limited Liability Company Law;

**NOW, THEREFORE**, in consideration of the premises and mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, intending to be legally bound, the individuals signing this Amendment below agree to amend the Operating Agreement as follows by adding the following provisions, which terms shall modify, supersede and replace the terms of the Operating Agreement:

Notwithstanding any other provision of the Operating Agreement, any other organizational documents or any provisions of law that empowers the Company, the following provisions shall be operative and controlling.

1. <u>Definitions</u>

All Capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Restated Operating Agreement.

2. <u>Members</u>

Modifying Section 5 of the Restated Operating Agreement, to add that the Members of the Company shall be composed of the Preferred Members and the Common Members.

No additional Members may be admitted to the Company without the prior unanimous written consent of the Preferred Members and the Common Members.

The defined term "Members" in Section A of Schedule A of the Restated Operating Agreement is hereby deleted in its entirety and replaced with the following:

"<u>Members</u>" means collectively, the Common Members and the Preferred Members, and includes any Person admitted as an additional member of the Company or as a

substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company.

The following new defined terms are hereby added to Section A of Schedule A of the Restated Operating Agreement in the appropriate alphabetical order:

"Common Members" means, Avrohom Prager and THE OLIVE 2021 SOUTH DAKOTA NGCG TRUST.

"Preferred Members" means, those Persons listed on Table II of Schedule B attached hereto.

Schedule B of the Restated Operating Agreement is hereby deleted in its entirety and replaced with Schedule B attached hereto.

3. Capital Contributions

Section 13 of the Restated Operating Agreement, and subsequently the Books of the Company referenced in Section 13 and 14 of the Operating Agreement shall be modified to reflect that the Preferred Members made a Capital Contribution to the Company in the amount of Ten Million Five Hundred Thousand ($10,500,000.00) Dollars (the "**Preferred Capital Contribution**"). The Preferred Members shall be entitled to a return of one and twenty-five hundredths (1.25%) percent per month (the "**Preferred Return**") pro rata in accordance with Schedule B until the Preferred Capital Contribution is paid back to the Preferred Members in full ("**Redemption**"), on or before two (2) years from the date hereof (the "**Redemption Deadline**").

The Preferred Capital Contribution shall be used solely for renovations at the Property.

The Company may not further encumber the Property, incur any additional debt which when taken together with the principal balance of the Loan exceeds the principal amount of $58,000,000.00, or add any other preferred members until the Preferred Members are paid their Preferred Capital Contribution together with the Preferred Return (including the Minimum Returns Requirement, if applicable), or without the express written consent of the Preferred Members.

Section 14 of the Restated Operating Agreement shall be modified to state that any additional capital contributions required or agreed to by the Managing Member or the Members shall be the sole responsibility of the Common Members and in no event shall the Preferred Members be required to make any additional capital contributions to the Company.

Notwithstanding anything herein to the contrary, any (i) sums advanced or expended by the Preferred Members in addition to the Preferred Capital Contribution which sums are advanced or expended in connection with the Company or the Preferred Capital Contribution, including without limitation costs of collection and reasonable legal fees, and (ii) unpaid Preferred Return payments which remain unpaid five (5) days following their regularly scheduled due date, shall be deemed additional Preferred Capital Contribution as and when made and the Preferred Members shall be entitled to a Preferred Return on such amounts at the rates set forth in, and in accordance with the terms of, Section 13 of the Restated Operating Agreement.

4. Allocation of Profits and Losses.

Prior to the repayment of the Preferred Capital Contributions in full, the Company's profits shall be allocated first to the Preferred Members to the extent of any accrued Preferred Return payments, then the balance to the Common Members. Losses shall be allocated to the Common Members.

5. Distributions

Notwithstanding anything contained in Section 16 of the Restated Operating Agreement, prior to distributing any funds to a Common Member, the Preferred Member shall receive the Preferred Capital Contribution and Preferred Return. The Preferred Return shall be due and payable by wire transfer to each individual member of the Preferred Member's account on a monthly basis on the first (1st) day of each calendar month with the first payment due on September 1, 2023. The first payment shall be prorated calculated based on the actual number of days elapsed from the date hereof through and including August 31, 2023. Notwithstanding anything contained herein to the contrary, prior to Redemption, the Preferred Members must have received an amount equal to at least six (6) months of Preferred Return payments (the "**Minimum Returns Requirement**").

Notwithstanding anything herein to the contrary, upon the occurrence and during the continuation of an Event of Default under the Loan Agreement, no distributions of available cash shall be made to the Common Members so long as the Preferred Members have not been redeemed in full.

6. Redemption

At such time as the Preferred Members has received the Preferred Capital Contribution and Preferred Return, the Preferred Members shall be redeemed and the Preferred Members shall be deemed to withdraw from the Company and resign as a Member, whereupon the Preferred Members shall execute a standard and customary form "Assignment and Resignation of Member" thereby relinquishing any and all rights and remedies as a member of the Company and assigning its membership interests in the Company to the Members.

7. Miscellaneous

Use of Funds. The Company shall use the Preferred Capital Contribution solely for renovations at the Property.

Personal Guaranty. Notwithstanding anything contained herein to the contrary, the Preferred Members shall receive the Preferred Capital Contribution and Preferred Return (including the Minimum Returns Requirement, if applicable) on or before the Redemption Deadline. Avrohom Prager and Shulamit Prager in their individual capacities, shall, jointly and severally personally guaranty to the Preferred Members that the Preferred Capital Contribution and Preferred Return (including the Minimum Returns Requirement, if applicable) will be paid in full to the Preferred Members on or before the Redemption Deadline by executing that certain Guaranty dated as of the date hereof made by Avrohom Prager and Shulamit Prager in favor of the Preferred Members.

Successors and Assigns. This Amendment shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and permitted assigns.

Counterparts. This Amendment may be executed in any number of counterparts, all of which together shall constitute a single instrument. In addition, the parties may execute this Amendment by telecopy, PDF, or electronic transmission and such facsimile signature or electronic transmission shall be deemed an original.

Entire Agreement. This Amendment embodies the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein. There are no restrictions, promises, representations, warranties, covenants or undertakings other than those expressly set forth or referred to herein. This Amendment supersedes all prior agreements and understandings, express or implied, oral or written, between the parties with respect to such subject matter hereof.

Amendments. Any amendment to this Amendment shall be effective only if such amendment is evidenced by a written instrument duly executed and delivered by the Members.

Section Titles. Section titles are for descriptive purposes only and shall not control or alter the meaning of this Amendment as set forth in the text hereof.

Governing Law. This Amendment shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania without regard to its conflict of laws principles.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the day and year first above written.

**MANAGING MEMBER:**

By: ______________________
Name: Avrohom Prager
Title: Managing Member

**MEMBERS:**

By: ______________________
Name: Avrohom Prager

**THE OLIVE 2021 SOUTH DAKOTA NCNG TRUST**

By: ______________________
Name: Doug Mikkonen
Title: SVP

By: ______________________
Name: Shulamit Prager

**PERSONAL GUARANTY:**

______________________
Avrohom Prager

______________________
Shulamit Prager

Preferred Members:

Nuview Trust Co C/F
Satish Patel IRA

By: [signature]

Nuview Trust Co C/F
Manjit S Bains IRA

By:____________

Nuview Trust Co C/F
Mrinal S Mali IRA

By:____________

[signature]
Ramesh Thakkar

[signature]
Manjula Thakkar

____________
Madhava Reddy for MVP
International Inc

____________
Renuka U. Reddy for
MVP International Inc

Preferred Members:

Nuview Trust Co C/F
Satish Patel IRA

By:______________

Nuview Trust Co C/F
Manjit S Bains IRA

By: [signature]

Nuview Trust Co C/F
Mrinal S Mali IRA

By:______________

[signature]
Ramesh Thakkar

[signature]
Manjula Thakkar

______________
Madhava Reddy for MVP
International Inc

______________
Renuka U. Reddy for
MVP International Inc

Scanned with CamScanner

Preferred Members:

Noview Trust Co C/F
Satish Patel IRA

By:______________

Noview Trust Co C/F
Manjit S Baine IRA

By:______________

Noview Trust Co C/F
Mehul S Mali IRA

By:______________

______________
Ramesh Thakkar

______________
Manjula Thakkar

______________
Madhava Reddy for MVP
International Inc

______________
Renuka U. Reddy for
MVP International Inc

**Preferred Members:**

Nuview Trust Co C/F
Satish Patel IRA

By:_______________

Nuview Trust Co C/F
Manjit S Bains IRA

By:_______________

Nuview Trust Co C/F
Mrinal S Mali IRA

By:_______________

_______________
Ramesh Thakkar

_______________
Manjula Thakkar

_______________
Madhava Reddy for MVP Park
International Inc

Renuka Reddy
_______________
Renuka U. Reddy for
MVP Park International Inc

Nuview Trust Co C/F Cory Conniff IRA

By:____________________

____________________
Cory Conniff

____________________
Linnea Stack

NUVIEW Trust Co C/F
Mayur T Dalal IRA

By:____________________

____________________
Madhavi M. Dalal

Nuview Trust Co C/F
Mahesh Chhabria IRA

By:____________________

____________________
Mrinal S Mali

____________________
Kavita Kalra

____________________
Shashi Goel

____________________
Prem Goel

Nuview Trust Co C/F Cory Conniff IRA

By:_______________

_______________
Cory Conniff

_______________
Linnea Stack

NUVIEW Trust Co C/F
Mayur T Dalal IRA
By: MDalal.

m.m dalal.
Madhavi M. Dalal

Nuview Trust Co C/F
Mahesh Chhabria IRA
By: [signature] 7/9/23.

_______________
Mrinal S Mali

_______________
Kavita Kalra

_______________
Shashi Goel

_______________
Prem Goel

______________________
Linnea Stack

NUVIEW Trust Co C/f
Mayur T Dalal IRA

By:______________

______________________
Madhavi M. Dalal

Nuview Trust Co C/f
Mahesh Chhabria IRA

By:______________

______________________
Umesh I. Dalal

______________________
Kavita Kalra

______________________
Shashi Goel

______________________
Prem Goel

CRP Investors Group LLC

By:______________

UK Management and Investors Group LLC

By:______________

______________________
Linnea Stack

NUVIEW Trust Co C/F
Mayur T Dalal IRA

By:______________________

______________________
Madhavi M. Dalal

Nuview Trust Co C/f
Mahesh Chhabria IRA

By:______________________

______________________
Umesh I. Dalal

______________________
Kavita Kalra

______________________
Shashi Goel

______________________
Prem Goel

CRP Investors Group LLC

By: chandrikesh patel

UK Management and Investors Group LLC

By: Uttsav Patel

Nuview Trust Co C/F Cory Conniff IRA

By:__________________

__________________
Cory Conniff

__________________
Linnea Stack

NUVIEW Trust Co C/F
Mayur T Dalal IRA

By:__________________

__________________
Madhavi M. Dalal

Nuview Trust Co C/F
Mahesh Chhabria IRA

By:__________________

__________________
Mrinal S Mali

__________________
Kavita Kalra

__________________
Shashi Goel

__________________
Prem Goel

______________________
Linnea Stack

NUVIEW Trust Co C/F
Mayur T Dalal IRA

By:____________________

______________________
Madhavi M. Dalal

Nuview Trust Co C/f
Mahesh Chhabria IRA

By:____________________

______________________
Umesh I. Dalal

______________________
Kavita Kalra

[signature]
VIJAY SINGHAL
______________________
Shashi Goel

[signature] 7/9/2023
______________________
Prem Goel

CRP Investors Group LLC

By:____________________

UK Management and Investors Group LLC

By:____________________

## SCHEDULE B

### Members

| Table I | |
|---|---|
| Common Members | |
| Name | Percentage Interest |
| Avrohom Prager | 30% |
| THE OLIVE 2021 SOUTH DAKOTA NCNG TRUST | 70% |

| Table II | |
|---|---|
| Preferred Members | |
| Name | Amount Committed |
| NuView Trust Company Custodian FBO Satish D. Patel IRA | $1,448,000 |
| NuView Trust Company Custodian FBO Manjit S. Bains IRA | $2,000,000 |
| NuView Trust Company Custodian FBO Mrinal S. Mali IRA | $1,500,000 |
| Ramesh Thakkar and Manjula Thakkar | $500,000 |
| MVP Park International Inc. | $500,000 |
| NuView Trust Company Custodian FBO Cory Conniff IRA | $150,000 |
| Cory Conniff | $100,000 |
| NuView Trust Company Custodian FBO Mayur T. Dalal IRA | $100,000 |
| Madhavi M. Dalal | $102,000 |
| NuView Trust Company Custodian FBO Mahesh Chhabria IRA | $300,000 |
| Kavita Kalra | $100,000 |
| Vijay Singhal | $100,000 |
| Prem Goel | $300,000 |
| Mrinal S. Mali | $300,000 |
| CRP Investors Group LLC | $1,500,000 |

| | |
|---|---|
| UK Management and Investors. Group LLC | $1,500,000 |
| **TOTAL** | **$10,500,000** |