# EXHIBIT B

---

# RIVERSIDE RICHMOND MEMBER LLC

## FIRST AMENDMENT TO

## LIMITED LIABILITY COMPANY AGREEMENT

DATED AS OF SEPTEMBER 8, 2022

---

This First Amendment to the Limited Liability Company Agreement (this "**Amendment**") of **RIVERSIDE RICHMOND MEMBER LLC**, a Virginia limited liability company (the "**Company**"), dated as of September 8, 2022, is made by and among the individuals signing it below.

**WHEREAS**, the parties signing this Amendment desire to amend that certain Limited Liability Company Agreement of the Company dated as of March 10, 2021 ("**Operating Agreement**"), which governs the Company, pursuant to the Virginia Uniform Limited Liability Company Act;

**WHEREAS**, the Company borrowed the sum of $1,500,000.00 (the "Mezzanine Loan") from CRP INVESTORS GROUP LLC, a New York limited liability company (the "Mezzanine Lender") as evidenced by that certain Promissory Note dated as of the date hereof made by Company for the benefit of Mezzanine Lender (the "Mezzanine Note");

**NOW, THEREFORE**, in consideration of the premises and mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, intending to be legally bound, the parties signing this Amendment below agree to amend the Operating Agreement as follows by adding the following provisions, which terms shall modify, supersede and replace the terms of the Operating Agreement:

Notwithstanding any other provision of the Operating Agreement, any other organizational documents or any provisions of law that empowers the Company, the following provisions shall be operative and controlling.

1. Definitions

All Capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Operating Agreement.

2. Members

Modifying Section 5 and Schedule B of the Operating Agreement, to add the Preferred Equity Members listed on Schedule B attached hereto (individually and collectively as required by context, hereinafter, the "Preferred Member") as preferred members of the Company. Avrohom Prager, Shulamit Prager, and THE OLIVE 2021 SOUTH DAKOTA ING TRUST are the Common Members of the Company. As of the date hereof, the Preferred Member and the Common Members (hereinafter, collectively, the "Members") are the sole Members of the Company.

No additional Members may be admitted to the Company without the prior unanimous written consent of the Preferred Member and the Common Members.

3. Capital Contributions

Section 13 of the Operating Agreement, and subsequently the Books of the Company referenced in Section 13 and 14 of the Operating Agreement shall be modified to reflect that the Preferred Member made Capital Contributions to the Company in the total amount of Seven

Million Five Hundred Thousand ($7,500,000.00) Dollars (the "Preferred Capital Contribution"). The Preferred Member shall be entitled to a preferred return of eighteen (18%) percent annually until the Preferred Capital Contribution is paid back to the Preferred Member in full (the "Preferred Return").

Section 14 of the Operating Agreement shall be modified to state that any additional capital contributions required or agreed to by the Manager or the Members shall be the sole responsibility of the Common Members and in no event shall the Preferred Member be required to make any additional capital contributions to the Company.

Notwithstanding anything herein to the contrary, any (i) sums advanced or expended by the Preferred Member in addition to the Preferred Capital Contribution which sums are advanced or expended in connection with the Company or the Preferred Capital Contribution, including without limitation costs of collection and reasonable legal fees, and (ii) unpaid Preferred Return payments which remain unpaid five (5) days following their regularly scheduled due date, shall be deemed additional Preferred Capital Contribution as and when made and the Preferred Member shall be entitled to a preferred return on such amounts at the rates set forth in, and in accordance with the terms of, Section 13.

4. Allocation of Profits and Losses.

Prior to the repayment of the Preferred Capital Contribution in full, the Company's profits shall be allocated first to the Preferred Member to the extent of any accrued Preferred Return payments, then the balance to the Common Members. Losses shall be allocated to the Common Members.

5. Distributions

Notwithstanding anything contained in Section 16 of the Operating Agreement, prior to distributing any funds to a Common Member, the Preferred Member shall receive the Preferred Capital Contribution and Preferred Return. The Preferred Return shall be due and payable by wire transfer to each individual Preferred Member's account on the first (1st) day of each calendar month with the first payment due on October 1, 2022. Notwithstanding anything contained herein to the contrary, prior to Redemption, the Preferred Member must have received an amount equal to at least six (6) months of Preferred Return payments (the "Minimum Returns Requirement").

Except as otherwise provided in this Agreement, the Company shall promptly distribute all available cash from (i) the refinancing of the Property, (ii) the sale of the Property, (iii) the sale of limited lability company interest in the Company or in RIVERSIDE RICHMOND LLC, (iv) proceeds from any casualty or condemnation or taking by eminent domain with respect to the Property, or (v) proceeds from insurance under any title insurance policy with respect to the Property, to the Members, to the fullest extent permitted by law as follows:

A. First to the Preferred Member to the extent of any accrued Preferred Return payments;

B. Second, to the Mezzanine Lender to the extent of any accrued interest payments due on the Mezzanine Loan'

C. Third, subject to the Minimum Returns Requirement, to the Preferred Member in repayment of the Preferred Capital Contribution until such time as the aggregate amount of distributions have equaled the lesser of (i) the Preferred Capital Contribution, and (ii) the aggregate amount of available cash;

D. Fourth, subject to the Minimum Interest Requirement (as such term is defined in the Mezzanine Note), to the Mezzanine Lender in repayment of the Mezzanine Loan until such time as the aggregate amount of distributions have equaled the lesser of (i) the Mezzanine Loan, and (ii) the aggregate amount of available cash; and

E. Thereafter, to the Common Members so long as each Preferred Member has been redeemed in full and the Mezzanine Loan has been paid in full.

Notwithstanding anything herein to the contrary, upon the occurrence and during the continuation of an Event of Default under the Loan Agreement, no distributions of available cash shall be made to the Common Members so long as each Preferred Member has not been redeemed in full.

6. <u>Redemption</u>

At such time as the Preferred Member has received the Preferred Capital Contribution and Preferred Return, the Preferred Member shall be redeemed and the Preferred Member shall be deemed to withdraw from the Company and resign as Members, whereupon each Preferred Member shall execute a standard and customary form "Assignment and Resignation of Member" thereby relinquishing any and all rights and remedies as a member of the Company and assigning its membership interests in the Company to the Members.

Notwithstanding anything herein to the contrary, in no event shall the Mezzanine Loan be repaid prior to the redemption of each Preferred Member in full.

7. <u>Miscellaneous</u>

Use of Funds. The Company shall hold the Preferred Capital Contribution in an escrow account and shall only use such funds for renovations at the Property as well as in connection with tenant improvements for new leases. The Company is strictly prohibited from using the Preferred Capital Contribution for any purpose other than for the aforementioned use and it shall be deemed an Event of Default hereunder should the Company use all or any portion of the Preferred Capital Contribution for any purpose other than said purpose. The Company shall, upon the Preferred Member's request, provide documented proof to the Preferred Member that the Preferred Capital Contribution funds have not been used in contravention of this provision.

Debt. The Company shall not take on debt (whether senior or mezzanine) in excess of Thirty-Eight Million Two Hundred Fifty Thousand ($38,250,000.00) Dollars unless such debt is for the purpose of returning the Preferred Capital Contribution to the Preferred Member, repaying the Mezzanine Loan, and such payments to the Preferred Member and to the Mezzanine Lender shall be made on the date of closing on such loan.

Personal Guaranty. Notwithstanding anything contained herein to the contrary, the Preferred Member shall receive the Preferred Capital Contribution and Preferred Return within eighteen (18) months from the date hereof. Avrohom Prager and Shulamit Prager, each in his individual capacity, shall personally guaranty to the Preferred Member that the Preferred Capital Contribution and Preferred Return will be paid in full to the Preferred Member on or before eighteen (18) months from the date hereof by executing that certain Guaranty dated as of the date hereof made by Avrohom Prager and Shulamit Prager in favor of the Preferred Member.

Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and permitted assigns.

Counterparts. This Agreement may be executed in any number of counterparts, all of which together shall constitute a single instrument. In addition, the parties may execute this Agreement by telecopy or facsimile or electronic transmission and such facsimile signature or electronic transmission shall be deemed an original.

Entire Agreement. This Agreement embodies the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein. There are no restrictions, promises, representations, warranties, covenants or undertakings other than those expressly set forth or referred to herein. This Agreement supersedes all prior agreements and understandings, express or implied, oral or written, between the parties with respect to such subject matter hereof.

Amendments. Any amendment to this Agreement shall be effective only if such amendment is evidenced by a written instrument duly executed and delivered by the Members.

Section Titles. Section titles are for descriptive purposes only and shall not control or alter the meaning of this Agreement as set forth in the text hereof.

Governing Law. This Amendment shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its conflict of laws principles.

Legal Fees. The Company shall pay to Preferred Member all fees, charges, and other expenses, including reasonable attorney's fees, and any expenses incurred in connection with enforcement of this Amendment or any documents executed in connection with this Amendment.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**MEMBERS:**

By: ______________________
Name: Avrohom Prager

By: ______________________
Name: Shulamit Prager

**THE OLIVE 2021 SOUTH DAKOTA ING TRUST**

By: ______________________
Name: Danielle Keeton
Title: Senior Vice President

By: ______________________
Name: Shulamit Prager

**Preferred Member:**

UK Management and Investors Group LLC

By: ______________________
Name: Uttsav Lalit Patel
Title: Managing Member

By: ______________________
Name: Rupan Trikha

By: ______________________
Name: Niti Trikha

By: ______________________
Name: Manish Gandhi

By: ______________________
Name: Yogini J. Patel

By: ______________________
Name: Rajesh Dharia

By: ______________________
Name: Mahesh Chhabira

By: ______________________
Name: Bhavna Chhabria

SHAHSI GOEL and PREM GOEL, as
Tenants by the entirety

By: ______________________
Name: Shashi Goel

By: ______________________
Name: Prem Goel

NUVIEW TRUST CO C/F MAYUR T.
DALAL ROLLOVER IRA

By: ______________________________
Name:
Title

NUVIEW TRUST CO C/F CORY
CONNIFF IRA

By : ______________________________
Name:
Title:

**Preferred Member:**

UK Management and Investors Group LLC

By: ____________________________
Name: Uttsav Lalit Patel
Title: Managing Member

By: ____________________________
Name: Rupan Trikha

By: ____________________________
Name: Niti Trikha

By: ____________________________
Name: Manish Gandhi

By: ____________________________
Name: Yogini J. Patel

By: ____________________________
Name: Rajesh Dharia

By: ____________________________
Name: Mahesh Chhabira

By: ____________________________
Name: Bhavna Chhabria

SHAHSI GOEL and PREM GOEL, as
Tenants by the entirety

By: ____________________________
Name: Shashi Goel

By: ____________________________
Name: Prem Goel

**Preferred Member:**

UK Management and Investors Group LLC

By: ____________________________
Name: Uttsav Lalit Patel
Title: Managing Member

By: ____________________________
Name: Rupan Trikha

By: ____________________________
Name: Niti Trikha

By: ____________________________
Name: Manish Gandhi

By: ____________________________
Name: Yogini J. Patel

By: ____________________________
Name: Rajesh Dharia

By: ____________________________
Name: Mahesh Chhabira

By: ____________________________
Name: Bhavna Chhabria

SHAHSI GOEL and PREM GOEL, as Tenants by the entirety

By: ____________________________
Name: Shashi Goel

By: ____________________________
Name: Prem Goel

**Preferred Member:**

UK Management and Investors Group LLC

By: ______________________
Name: Uttsav Lalit Patel
Title: Managing Member

By: ______________________
Name: Rupan Trikha

By: ______________________
Name: Niti Trikha

By: ______________________
Name: Manish Gandhi

By: ______________________
Name: Yogini J. Patel

By: ______________________
Name: Rajesh Dharia

By: ______________________
Name: Mahesh Chhabira

By: ______________________
Name: Bhavna Chhabria

SHAHSI GOEL and PREM GOEL, as Tenants by the entirety

By: ______________________
Name: Shashi Goel

By: ______________________
Name: Prem Goel

DocuSign Envelope ID: AD39F7F2-8D75-4C8E-AC70-326170E128A08

NUVIEW TRUST CO C/F MAYUR T.
DALAL ROLLOVER IRA

By: ____________________________
Name:
Title

NUVIEW TRUST CO C/F CORY
CONNIFF IRA

By: ____________________________
Name:
Title:

DocuSigned by:
1C3246820F9A4A
Vicente Anto

9/8/2022

9/8/2022 | 4:

**Preferred Member:**

UK Management and Investors Group LLC

By: ____________________________
Name: Uttsav Lalit Patel
Title: Managing Member

By: ____________________________
Name: Rupan Trikha

By: M Gandhi
Name: Manish Gandhi
(For Manish Gandhi Revocable Trust
Nov 6, 2002

By: ____________________________
Name: Yogini J. Patel

By: ____________________________
Name: Rajesh Dharia

By: ____________________________
Name: Mahesh Chhabira

By: ____________________________
Name: Bhavna Chhabria

SHAHSI GOEL and PREM GOEL, as
Tenants by the entirety

By: ____________________________
Name: Shashi Goel

By: ____________________________
Name: Prem Goel

**Preferred Member:**

UK Management and Investors Group LLC

By: ______________________________
Name: Uttsav Lalit Patel
Title: Managing Member

By: ______________________________
Name: Rupan Trikha

By: ______________________________
Name: Niti Trikha

By: ______________________________
Name: Manish Gandhi

By: ______________________________
Name: Yogini J. Patel

By: ______________________________
Name: Rajesh Dharia

By: ______________________________
Name: Mahesh Chhabira

By: ______________________________
Name: Bhavna Chhabria

SHAHSI GOEL and PREM GOEL, as Tenants by the entirety

By: ______________________________
Name: Shashi Goel

By: ______________________________
Name: Prem Goel

## SCHEDULE B

## MEMBERS

| Common Members | |
|---|---|
| Name | Percentage Interest |
| Avrohom Prager | 20% |
| Shulamit Prager | 10% |
| THE OLIVE 2021 SOUTH DAKOTA ING TRUST | 70% |

| Preferred Members | | |
|---|---|---|
| | Name | Contribution Amount |
| 1. | Rupan Trikha | $2,000,000.00 |
| 2. | Niti Trikha | $500,000.00 |
| 3. | Manish Gandhi | $500,000.00 |
| 4. | Yogini J Patel | $500,000.00 |
| 5. | Rajesh Dharia | $500,000.00 |
| 6. | Mahesh Chhabria | $150,000.00 |
| 7. | Bhavna Chhabria | $150,000.00 |
| 8. | NuView Trust Co. C/F Mayur T. Dalal Rollover IRA | $200,000.00 |
| 9. | NuView Trust Co. C/F Cory Conniff IRA | $200,000.00 |
| 10. | Shashi Goel & Prem Goel, TBE | $250,000.00 |
| 11. | UK Management and Investors Group LLC | $2,550,000.00 |
| | TOTAL | $7,500,000.00 |

# GUARANTY OF PAYMENT

**THIS GUARANTY OF PAYMENT** (the "Guaranty") is executed as of September 8, 2022, by the undersigned AVROHOM PRAGER, an individual with an address 212 2nd Street, Suite 104, Lakewood, NJ 08701 and SHULAMIT PRAGER, an individual with an address at 212 2nd Street, Suite 104, Lakewood, NJ 08701 (collectively, the "Guarantor"), to and for the benefit of THE PARTIES LISTED ON SCHEDULE A HERETO (together with their respective successors and/or assigns) (collectively, the "PE Members").

## PRELIMINARY STATEMENT

**WHEREAS,** pursuant to that certain First Amendment to Limited Liability Company Agreement (the " Amendment") of RIVERSIDE RICHMOND MEMBER LLC ("Company") dated of even date herewith, PE Members agreed to make a Preferred Equity investment in the Company in the total amount of $7,500,000.00 (the "PE Investment"); and

**WHEREAS**, the Amendment modified that certain Limited Liability Company Agreement of the Company dated as of March 10, 2021 (the "Operating Agreement" and together with the Amendment, collectively, hereinafter the "Agreement")

**WHEREAS**, as part of the consideration for making the PE Investment, Company has agreed to procure from the Guarantor and deliver to PE Members this Guaranty; and

**WHEREAS**, PE Members declined to make the PE Investment unless this Guaranty is duly executed by the Guarantor and delivered to Lender; and

**WHEREAS,** Guarantor will derive substantial economic benefits from the making of the PE Investment in the Company.

**NOW, THEREFORE**, in consideration of the premises and as part of the consideration for making the PE Investment, Guarantor covenants and agrees to and with PE Members as follows:

(1) Guarantor hereby unconditionally, absolutely and irrevocably guarantees to PE Members the punctual, prompt and complete payment of (i) the outstanding Redemption (as hereinafter defined) and (ii) the preferred return which is due and payable on the PE Investment, it being expressly understood and agreed that this is a continuing Guaranty and an instrument for the payment of money only, and that the obligations of Guarantor are and shall be absolute, unconditional and irrevocable under any and all circumstances without regard to the legality, binding effect, validity, regularity, or enforceability of the Amendment or any other documents executed in connection herewith or therewith, a true copy of each of such documents Guarantor hereby acknowledge having received, reviewed and approved.

(2) Guarantor agrees that his liabilities under this Guaranty shall be unaffected, regardless of whether notice or consideration is given or his further consent obtained, by (i) any amendment, supplement, modification or other change in the Amendment or any other instrument made to or with PE Members by Company, (ii) any extension of time for the observance or performance required thereby, (iii) Reserved, (iv) exculpatory provisions, if any limiting PE Members' rights to enforce a deficiency judgment against Company, (v) any release of Company or Guarantor or any other person or entity from performance or observance of any of the agreements, terms, covenants or conditions contained in any of such instruments whether by operation of law or otherwise, (vi) Reserved, (vii) any recovery from Guarantor hereunder or under any other guaranty or guaranties executed in connection with the PE Investment, (viii) the accuracy or inaccuracy of any representations or warranties made by Company in the Amendment or in the Agreement, or by Guarantor in this Guaranty or in any other documents executed by Guarantor in connection with the PE Investment, (ix) any bankruptcy, insolvency, liquidation, moratorium, reorganization, arrangement for the benefit of creditors, receivership, trusteeship or other law of like import affecting Company, Guarantor or any of their respective successors and assigns, including, but not limited to, any automatic stay granted pursuant to any provision of a bankruptcy or similar law, (x) notwithstanding any provision to the contrary contained or implied in the Agreement or by law or in equity, any recovery as a result of the exercise of any of PE Members' rights or remedies under the Amendment unless as a result thereof PE Members have been paid the entire amount owed to PE Members under the Amendment (hereinafter such obligations owed to PE Members are referred to as the "Redemption") and (xi) any defense given to any guarantor (whether or not the same is Guarantor hereunder) or surety at law or in equity.

(3) Guarantor agrees that to the extent any amounts (i) are collected by PE Members in connection with any other guaranty or guaranties which are executed by Guarantor or any other person or entity which may have or may hereafter guarantee all or part of the Redemption, or (ii) are paid to PE Members by Guarantor or by any person or entity which may have or may hereafter execute any guaranty or guaranties of all or part of the Redemption, that regardless of the way such payments or amounts are characterized by Guarantor or any other person or entity, PE Members shall have the right, but not the obligation, to apply such amounts first to that part of the Redemption, if any, which is not covered by this Guaranty but which is covered by any other guaranty or guaranties of all or part of the Redemption.

(4) Guarantor waives any and all legal requirements that may require PE Members to institute any action or proceedings at law or in equity against Company, or anyone else, or exhaust its remedies against Company, or anyone else in respect of the PE Investment or in respect of any other security held by PE Members as a condition precedent to bringing an action against Guarantor upon this Guaranty. All remedies afforded to PE Members by reason of this Guaranty are separate and cumulative remedies and no one of such remedies, whether exercised by PE Members or not, shall be deemed to be an exclusion of any of the other remedies available to PE Members and shall not

limit or prejudice any other legal or equitable remedy which PE Members may have. This is a guaranty of payment and not of collection.

(5) Guarantor agrees that until each and every term, covenant and condition of this Guaranty is fully performed and fulfilled, he shall not be released by any act or thing which might, but for this provision, be deemed a legal or equitable discharge of a surety or guarantor (including, without limitation, Guarantor), or by reason of any waiver, extension, modification, forbearance or delay or other act or omission of PE Members or their failure to proceed promptly or otherwise, or by reason of any action taken or omitted or circumstance which may or might vary the risk or affect rights or remedies by reason of any further dealings between Company and PE Members, whether relating to the PE Investment or otherwise, and Guarantor waives and surrenders any defense to his liabilities hereunder based upon any of the foregoing acts, omissions, agreements, waivers or any of them and also waives and relinquishes all other rights and remedies accorded by applicable law to guarantors and sureties, it being the purpose and intent of this Guaranty that the obligations of the Guarantor hereunder is and that this Guaranty is absolute, irrevocable and unconditional under any and all circumstances. No amendment, modification, discharge, waiver or release of this Guaranty shall be established by conduct, custom or course or business.

(6) Guarantor waives notice of acceptance of this Guaranty and of presentment for payment, demand, protest, notice of protest and of dishonor, notices of default and all other notices of every kind and description now or hereafter provided by any constitution, statute or rule of law.

(7) If Guarantor shall advance or become obligated to pay any sums with respect to this Guaranty or the PE Investment, or if for any reason whatsoever Company is now, or shall hereafter become, indebted to Guarantor, Guarantor agrees that the amount of such sums and of such indebtedness and all interest thereon shall at all times be subordinate as to lien, time of payment and in all other respects to all sums, including contributions, returns, and other amounts at any time owing to PE Members under the Amendment or the obligations evidencing the same and that the Guarantor shall not be entitled to enforce or receive payment thereof until the Redemption is paid in full. Nothing herein contained is intended or shall be construed to give Guarantor any right of subrogation in or under the PE Investment, the obligations evidencing the same, or any right to participate in any way therein or in the right, title or interest of PE Members in or to the Premises, or any part thereof, or other mortgaged property, notwithstanding any payment made by Guarantor with respect to this Guaranty or the PE Investment, all such rights of subrogation and participation being expressly waived and released until the redemption is paid in full.

(8) Any notice, demand or request by PE Members to the Guarantor shall be in writing and shall be deemed to have been duly given or made one (1) business day following the date when sent by any reputable overnight courier addressed to Guarantor at his address set forth at the foot hereof.

(9) (a) This Guaranty is to be construed according to the laws of the State of Virginia. Without limiting other methods of obtaining jurisdiction, the Guarantor hereby agrees to submit to personal jurisdiction of the courts of the State of Virginia in any action or proceeding arising out of this Guaranty. In furtherance of such agreement, Guarantor hereby agrees and consents that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the undersigned by personal service within or without the jurisdiction of any such court. The foregoing shall not be deemed a limitation of PE Members' right to bring an action based on this Guaranty in any other jurisdiction.

(b) In the event any action or proceeding be brought by PE Members to enforce this Guaranty, or by or against Guarantor or PE Members, or both, or PE Members appear in any action or proceeding, in such event, Guarantor agrees to pay to PE Members reasonable attorney's fees and court costs including attorney's fees and court costs at trial or on appeal, together with all interest at the preferred return rate set forth in the Amendment from the date demand is made by PE Members on this Guaranty until payment in full is received.

(10) Guarantor represents and warrants that:

(a) There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor or the properties of Guarantor before any court, governmental department, arbitrator, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to Guarantor, would have a material adverse effect on the financial condition, business, properties or operations of Guarantor.

(b) Neither the business nor properties of Guarantor are affected by a fire, explosion, strike, lockout, or other labor dispute, drought, storm, hail, earthquake, embargo, acts of God or of the public enemy or other casualty (whether or not covered by insurance) which would have a material adverse effect upon the financial condition, business, properties or operations of Guarantor.

(c) They are not a party to any indenture, loan or credit agreement or any lease or other agreement or instrument or subject to any charter or other restriction which would have a material adverse effect on his ability to carry out his obligations under this Guaranty.

(d) No information, exhibit or report furnished by Guarantor to PE Members in connection with the negotiation of this Guaranty contained as of the date of the furnishing thereof any material misstatement of fact or omitted to state a material fact necessary to make the statements contained therein not misleading.

(e) Guarantor has the full power, legal right, authority and requisite capacity to execute and deliver this Guaranty, and to observe, perform and fulfill the provisions hereof.

(11) Guarantor agrees to furnish PE Members with the information with respect to the business, properties, operations or condition, financial or otherwise, of Guarantor as PE Members may from time-to-time reasonably request.

(12) Should PE Members be obligated by any bankruptcy or other law to repay to Company or Guarantor or to any trustee, receiver or other representative of any of them, any amounts previously paid in respect of this Guaranty, then this Guaranty shall be reinstated to include the amount of such repayment. PE Members shall not be required to litigate or otherwise dispute its obligation to make such repayments if, in good faith and on the advice of counsel, it believes that such obligation exists.

(13) If any action, suit or proceeding which either directly or indirectly involves the Guaranty is commenced, Guarantor waives his right to any jury trial in connection therewith.

(14) If any of the provisions of this Guaranty, or the application thereto to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Guaranty, or the application of such provision to persons or circumstances other than those as to whom or which it is held invalid or enforceable, shall not be affected thereby, and every provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.

(15) Guarantor agrees to indemnify PE Members against any reasonable loss, cost or expense in the nature of costs, expenses and reasonable attorney's fees and expenses caused by the assertion by Guarantor of any unsuccessful defense to his obligations under this Guaranty. Guarantor waives any right or claim of right to cause a marshaling of Borrower's assets or to cause PE Members to proceed against any security that has been or may be granted before proceeding against Guarantor. Guarantor agrees that any payments required to be made by him hereunder shall become due in accordance with the Amendment immediately upon the happening of any default following the expiration of any applicable grace period under the Amendment and without demand for payment or notice or nonpayment.

(16) This Guaranty is separate, distinct and in addition to any liability or obligations that Guarantor may have under any other guaranty executed by Guarantor in connection with any other loan from PE Members to Company and no other agreement or guaranty executed in connection with the Loan shall act to reduce or set off Guarantor's liability hereunder.

(17) This Guaranty shall be binding upon the heirs, legal representatives, successors and permitted assigns of Guarantor and shall inure to the benefit of PE Members and their respective successors and assigns (whether such assignment is in whole or in part). Without the prior written consent of the PE Members, which may be withheld in PE Members’ sole and absolute discretion, no Guarantor shall assign or otherwise transfer any of its obligations under this Guaranty.

(18) This Guaranty may not be modified, amended, discharged or otherwise changed orally, but only by an instrument in writing which is executed and delivered by the Guarantor and PE Members.

(19) Guarantor acknowledges that he has received a true copy of this Guaranty and agrees that he has executed and delivered this Guaranty to PE Members, intending that PE Members materially and justifiably rely thereon in connection with the PE Investment.

(20) In interpreting this Guaranty, the singular shall include the plural; the plural shall include the singular; and the use of any gender shall include all genders.

(21) The obligations of Guarantor hereunder shall be joint and several with the obligations of any other person or entity providing any guaranty or Indemnity with respect to the Loan.

BALANCE OF PAGE INTENTIONALLY LEFT BLANK

**IN WITNESS WHEREOF**, Guarantor has duly executed this Guaranty as of the day and year first above written.

AVROHOM PRAGER

STATE OF ~~NEW YORK~~ NJ )
) ss.:
COUNTY OF Ocean )

On the 8th day of September in the year 2022 before me, the undersigned, personally appeared AVROHOM PRAGER personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

SARAH RUBIN
Notary Public, State of New Jersey
Comm. # 50198494
My Commission Expires 6/21/2027

SARAH RUBIN MY COMMISSION EXPIRES 6/21/2027 NOTARY PUBLIC STATE OF NEW JERSEY

Notary Public

SHULAMIT PRAGER

STATE OF ~~NEW YORK~~ NJ )
) ss.:
COUNTY OF Ocean )

On the 8th day of September in the year 2022 before me, the undersigned, personally appeared SHULAMIT PRAGER personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

SARAH RUBIN MY COMMISSION EXPIRES 6/21/2027 NOTARY PUBLIC STATE OF NEW JERSEY

Notary Public

SARAH RUBIN
Notary Public, State of New Jersey
Comm. # 50198494
My Commission Expires 6/21/2027

**SCHEDULE A**

**PE MEMBERS**

| | |
|---|---|
| 1. | Rupan Trikha |
| 2. | Niti Trikha |
| 3. | Manish Gandhi |
| 4. | Yogini J Patel |
| 5. | Rajesh Dharia |
| 6. | Mahesh Chhabria |
| 7. | Bhavna Chhabria |
| 8. | NuView Trust Co. C/F Mayur T. Dalal Rollover IRA |
| 9. | NuView Trust Co. C/F Cory Conniff IRA |
| 10. | Shashi Goel & Prem Goel, TBE |
| 11. | UK Management and Investors Group LLC |

# RIVERSIDE RICHMOND MEMBER LLC

## FIRST AMENDMENT TO

## LIMITED LIABILITY COMPANY AGREEMENT

DATED AS OF SEPTEMBER 8, 2022

This First Amendment to the Limited Liability Company Agreement (this "**Amendment**") of **RIVERSIDE RICHMOND MEMBER LLC**, a Virginia limited liability company (the "**Company**"), dated as of September 8, 2022, is made by and among the individuals signing it below.

**WHEREAS**, the parties signing this Amendment desire to amend that certain Limited Liability Company Agreement of the Company dated as of March 10, 2021 ("**Operating Agreement**"), which governs the Company, pursuant to the Virginia Uniform Limited Liability Company Act;

**WHEREAS**, the Company borrowed the sum of $1,500,000.00 (the "Mezzanine Loan") from CRP INVESTORS GROUP LLC, a New York limited liability company (the "Mezzanine Lender") as evidenced by that certain Promissory Note dated as of the date hereof made by Company for the benefit of Mezzanine Lender (the "Mezzanine Note");

**NOW, THEREFORE**, in consideration of the premises and mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, intending to be legally bound, the parties signing this Amendment below agree to amend the Operating Agreement as follows by adding the following provisions, which terms shall modify, supersede and replace the terms of the Operating Agreement:

Notwithstanding any other provision of the Operating Agreement, any other organizational documents or any provisions of law that empowers the Company, the following provisions shall be operative and controlling.

1. Definitions

All Capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Operating Agreement.

2. Members

Modifying Section 5 and Schedule B of the Operating Agreement, to add the Preferred Equity Members listed on Schedule B attached hereto (individually and collectively as required by context, hereinafter, the "Preferred Member") as preferred members of the Company. Avrohom Prager, Shulamit Prager, and THE OLIVE 2021 SOUTH DAKOTA ING TRUST are the Common Members of the Company. As of the date hereof, the Preferred Member and the Common Members (hereinafter, collectively, the "Members") are the sole Members of the Company.

No additional Members may be admitted to the Company without the prior unanimous written consent of the Preferred Member and the Common Members.

3. Capital Contributions

Section 13 of the Operating Agreement, and subsequently the Books of the Company referenced in Section 13 and 14 of the Operating Agreement shall be modified to reflect that the Preferred Member made Capital Contributions to the Company in the total amount of Seven

Million Five Hundred Thousand ($7,500,000.00) Dollars (the "Preferred Capital Contribution"). The Preferred Member shall be entitled to a preferred return of eighteen (18%) percent annually until the Preferred Capital Contribution is paid back to the Preferred Member in full (the "Preferred Return").

Section 14 of the Operating Agreement shall be modified to state that any additional capital contributions required or agreed to by the Manager or the Members shall be the sole responsibility of the Common Members and in no event shall the Preferred Member be required to make any additional capital contributions to the Company.

Notwithstanding anything herein to the contrary, any (i) sums advanced or expended by the Preferred Member in addition to the Preferred Capital Contribution which sums are advanced or expended in connection with the Company or the Preferred Capital Contribution, including without limitation costs of collection and reasonable legal fees, and (ii) unpaid Preferred Return payments which remain unpaid five (5) days following their regularly scheduled due date, shall be deemed additional Preferred Capital Contribution as and when made and the Preferred Member shall be entitled to a preferred return on such amounts at the rates set forth in, and in accordance with the terms of, Section 13.

4. Allocation of Profits and Losses.

Prior to the repayment of the Preferred Capital Contribution in full, the Company's profits shall be allocated first to the Preferred Member to the extent of any accrued Preferred Return payments, then the balance to the Common Members. Losses shall be allocated to the Common Members.

5. Distributions

Notwithstanding anything contained in Section 16 of the Operating Agreement, prior to distributing any funds to a Common Member, the Preferred Member shall receive the Preferred Capital Contribution and Preferred Return. The Preferred Return shall be due and payable by wire transfer to each individual Preferred Member's account on the first (1st) day of each calendar month with the first payment due on October 1, 2022. Notwithstanding anything contained herein to the contrary, prior to Redemption, the Preferred Member must have received an amount equal to at least six (6) months of Preferred Return payments (the "Minimum Returns Requirement").

Except as otherwise provided in this Agreement, the Company shall promptly distribute all available cash from (i) the refinancing of the Property, (ii) the sale of the Property, (iii) the sale of limited lability company interest in the Company or in RIVERSIDE RICHMOND LLC, (iv) proceeds from any casualty or condemnation or taking by eminent domain with respect to the Property, or (v) proceeds from insurance under any title insurance policy with respect to the Property, to the Members, to the fullest extent permitted by law as follows:

A. First to the Preferred Member to the extent of any accrued Preferred Return payments;

B. Second, to the Mezzanine Lender to the extent of any accrued interest payments due on the Mezzanine Loan'

C. Third, subject to the Minimum Returns Requirement, to the Preferred Member in repayment of the Preferred Capital Contribution until such time as the aggregate amount of distributions have equaled the lesser of (i) the Preferred Capital Contribution, and (ii) the aggregate amount of available cash;

D. Fourth, subject to the Minimum Interest Requirement (as such term is defined in the Mezzanine Note), to the Mezzanine Lender in repayment of the Mezzanine Loan until such time as the aggregate amount of distributions have equaled the lesser of (i) the Mezzanine Loan, and (ii) the aggregate amount of available cash; and

E. Thereafter, to the Common Members so long as each Preferred Member has been redeemed in full and the Mezzanine Loan has been paid in full.

Notwithstanding anything herein to the contrary, upon the occurrence and during the continuation of an Event of Default under the Loan Agreement, no distributions of available cash shall be made to the Common Members so long as each Preferred Member has not been redeemed in full.

6. Redemption

At such time as the Preferred Member has received the Preferred Capital Contribution and Preferred Return, the Preferred Member shall be redeemed and the Preferred Member shall be deemed to withdraw from the Company and resign as Members, whereupon each Preferred Member shall execute a standard and customary form "Assignment and Resignation of Member" thereby relinquishing any and all rights and remedies as a member of the Company and assigning its membership interests in the Company to the Members.

Notwithstanding anything herein to the contrary, in no event shall the Mezzanine Loan be repaid prior to the redemption of each Preferred Member in full.

7. Miscellaneous

Use of Funds. The Company shall hold the Preferred Capital Contribution in an escrow account and shall only use such funds for renovations at the Property as well as in connection with tenant improvements for new leases. The Company is strictly prohibited from using the Preferred Capital Contribution for any purpose other than for the aforementioned use and it shall be deemed an Event of Default hereunder should the Company use all or any portion of the Preferred Capital Contribution for any purpose other than said purpose. The Company shall, upon the Preferred Member's request, provide documented proof to the Preferred Member that the Preferred Capital Contribution funds have not been used in contravention of this provision.

Debt. The Company shall not take on debt (whether senior or mezzanine) in excess of Thirty-Eight Million Two Hundred Fifty Thousand ($38,250,000.00) Dollars unless such debt is for the purpose of returning the Preferred Capital Contribution to the Preferred Member, repaying the Mezzanine Loan, and such payments to the Preferred Member and to the Mezzanine Lender shall be made on the date of closing on such loan.

Personal Guaranty. Notwithstanding anything contained herein to the contrary, the Preferred Member shall receive the Preferred Capital Contribution and Preferred Return within eighteen (18) months from the date hereof. Avrohom Prager and Shulamit Prager, each in his individual capacity, shall personally guaranty to the Preferred Member that the Preferred Capital Contribution and Preferred Return will be paid in full to the Preferred Member on or before eighteen (18) months from the date hereof by executing that certain Guaranty dated as of the date hereof made by Avrohom Prager and Shulamit Prager in favor of the Preferred Member.

Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and permitted assigns.

Counterparts. This Agreement may be executed in any number of counterparts, all of which together shall constitute a single instrument. In addition, the parties may execute this Agreement by telecopy or facsimile or electronic transmission and such facsimile signature or electronic transmission shall be deemed an original.

Entire Agreement. This Agreement embodies the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein. There are no restrictions, promises, representations, warranties, covenants or undertakings other than those expressly set forth or referred to herein. This Agreement supersedes all prior agreements and understandings, express or implied, oral or written, between the parties with respect to such subject matter hereof.

Amendments. Any amendment to this Agreement shall be effective only if such amendment is evidenced by a written instrument duly executed and delivered by the Members.

Section Titles. Section titles are for descriptive purposes only and shall not control or alter the meaning of this Agreement as set forth in the text hereof.

Governing Law. This Amendment shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its conflict of laws principles.

Legal Fees. The Company shall pay to Preferred Member all fees, charges, and other expenses, including reasonable attorney's fees, and any expenses incurred in connection with enforcement of this Amendment or any documents executed in connection with this Amendment.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**MEMBERS:**

By: ______________________
Name: Avrohom Prager

By: ______________________
Name: Shulamit Prager

**THE OLIVE 2021 SOUTH DAKOTA ING TRUST**

By: ______________________
Name: Danielle Keeton
Title: Senior Vice President

By: ______________________
Name: Shulamit Prager

**Preferred Member:**

UK Management and Investors Group LLC

By: ______________________
Name: Uttsav Lalit Patel
Title: Managing Member

By: ______________________
Name: Rupan Trikha

By: ______________________
Name: Niti Trikha

By: ______________________
Name: Manish Gandhi

By: ______________________
Name: Yogini J. Patel

By: ______________________
Name: Rajesh Dharia

By: ______________________
Name: Mahesh Chhabira

By: ______________________
Name: Bhavna Chhabria

SHAHSI GOEL and PREM GOEL, as Tenants by the entirety

By: ______________________
Name: Shashi Goel

By: ______________________
Name: Prem Goel

NUVIEW TRUST CO C/F MAYUR T.
DALAL ROLLOVER IRA

By: ______________________
Name:
Title

NUVIEW TRUST CO C/F CORY
CONNIFF IRA

By : ______________________
Name:
Title:

**Preferred Member:**

UK Management and Investors Group LLC

By: ___________________________
Name: Uttsav Lalit Patel
Title: Managing Member

By: ___________________________
Name: Rupan Trikha

By: ___________________________
Name: Niti Trikha

By: ___________________________
Name: Manish Gandhi

By: ___________________________
Name: Yogini J. Patel

By: ___________________________
Name: Rajesh Dharia

By: ___________________________
Name: Mahesh Chhabira

By: ___________________________
Name: Bhavna Chhabria

SHAHSI GOEL and PREM GOEL, as
Tenants by the entirety

By: ___________________________
Name: Shashi Goel

By: ___________________________
Name: Prem Goel

**Preferred Member:**

UK Management and Investors Group LLC

By: ____________________________
Name: Uttsav Lalit Patel
Title: Managing Member

By: ____________________________
Name: Rupan Trikha

By: ____________________________
Name: Niti Trikha

By: ____________________________
Name: Manish Gandhi

By: ____________________________
Name: Yogini J. Patel

By: ____________________________
Name: Rajesh Dharia

By: ___________________________
Name: Mahesh Chhabira

By: ____________________________
Name: Bhavna Chhabria

SHAHSI GOEL and PREM GOEL, as
Tenants by the entirety

By: ____________________________
Name: Shashi Goel

By: ____________________________
Name: Prem Goel

**Preferred Member:**

UK Management and Investors Group LLC

By: ______________________
Name: Uttsav Lalit Patel
Title: Managing Member

By: ______________________
Name: Rupan Trikha

By: ______________________
Name: Niti Trikha

By: ______________________
Name: Manish Gandhi

By: ______________________
Name: Yogini J. Patel

By: ______________________
Name: Rajesh Dharia

By: ______________________
Name: Mahesh Chhabira

By: ______________________
Name: Bhavna Chhabria

SHAHSI GOEL and PREM GOEL., as Tenants by the entirety

By: ______________________
Name: Shashi Goel

By: ______________________
Name: Prem Goel

DocuSign Envelope ID: AD39F7F2-8D75-4C8E-AE70-3267 0E128A08

NUVIEW TRUST CO C/F MAYUR T.
DALAL ROLLOVER IRA

By: ____________________________
Name:
Title

NUVIEW TRUST CO C/F CORY
CONNIFF IRA

DocuSigned by:
1C3246820F9A4A
Vicente Ant

By: ____________________________
Name:
Title:

9/8/2022

9/8/2022 | 4:

**Preferred Member:**

UK Management and Investors Group LLC

By: ___________________________
Name: Uttsav Lalit Patel
Title: Managing Member

By: ___________________________
Name: Rupan Trikha

By: ___________________________
Name: Manish Gandhi
(For Manish Gandhi Revocable Trust Nov 6, 2002

By: ___________________________
Name: Yogini J. Patel

By: ___________________________
Name: Rajesh Dharia

By: ___________________________
Name: Mahesh Chhabira

By: ___________________________
Name: Bhavna Chhabria

SHAHSI GOEL and PREM GOEL, as
Tenants by the entirety

By: ___________________________
Name: Shashi Goel

By: ___________________________
Name: Prem Goel

**Preferred Member:**

UK Management and Investors Group LLC

By: ______________________________
Name: Uttsav Lalit Patel
Title: Managing Member

By: ______________________________
Name: Rupan Trikha

By: ______________________________
Name: Niti Trikha

By: ______________________________
Name: Manish Gandhi

By: ______________________________
Name: Yogini J. Patel

By: ______________________________
Name: Rajesh Dharia

By: ______________________________
Name: Mahesh Chhabira

By: ______________________________
Name: Bhavna Chhabria

SHAHSI GOEL and PREM GOEL, as
Tenants by the entirety

By: ______________________________
Name: Shashi Goel

By: ______________________________
Name: Prem Goel

**SCHEDULE B**

**MEMBERS**

| Common Members | |
|---|---|
| Name | Percentage Interest |
| Avrohom Prager | 20% |
| Shulamit Prager | 10% |
| THE OLIVE 2021 SOUTH DAKOTA ING TRUST | 70% |

| Preferred Members | | |
|---|---|---|
| | Name | Contribution Amount |
| 1. | Rupan Trikha | $2,000,000.00 |
| 2. | Niti Trikha | $500,000.00 |
| 3. | Manish Gandhi | $500,000.00 |
| 4. | Yogini J Patel | $500,000.00 |
| 5. | Rajesh Dharia | $500,000.00 |
| 6. | Mahesh Chhabria | $150,000.00 |
| 7. | Bhavna Chhabria | $150,000.00 |
| 8. | NuView Trust Co. C/F Mayur T. Dalal Rollover IRA | $200,000.00 |
| 9. | NuView Trust Co. C/F Cory Conniff IRA | $200,000.00 |
| 10. | Shashi Goel & Prem Goel, TBE | $250,000.00 |
| 11. | UK Management and Investors Group LLC | $2,550,000.00 |
| | TOTAL | $7,500,000.00 |