# EXHIBIT C

WOOD AVE 194 LLC

FIRST AMENDMENT TO

AMENDED & RESTATED LIMITED LIABLITY COMPANY AGREEMENT

DATED AS OF JANUARY 31, 2023

This First Amendment (this "**Amendment**") to the Amended & Restated Limited Liability Company Agreement of WOOD AVE 194 LLC, a New Jersey limited liability company (the "**Company**"), dated as of Janaury 31, 2023, is made by and among the individuals signing it below.

**WHEREAS**, the parties signing this Amendment desire to amend that certain Operating Agreement of the Company dated as of December 30, 2021 (the "**Operating Agreement**"), which governs the Company, pursuant to the New Jersey Revised Uniform Limited Liability Company Act, as amended from time to time;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the individuals signing this Amendment below agree to amend the Operating Agreement as follows by adding the following provisions, which terms shall modify, supersede and replace the terms of the Operating Agreement:

Notwithstanding any other provision of the Operating Agreement, any other organizational documents or any provisions of law that empowers the Company, the following provisions shall be operative and controlling.

1. Definitions

All Capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Operating Agreement.

2. Members

Modifying Section 5 and Schedule B of the Operating Agreement, the sole Preferred Members, of the Company, shall be as listed in Schedule A attached hereto (the "**Preferred Members**").

3. Capital Contributions

Section 13 of the Operating Agreement, and subsequently the Books of the Company referenced in Section 13 and 14 of the Operating Agreement shall be modified to reflect that the Preferred Members made a Capital Contribution to the Company in the amount of Eight Million ($8,000,000.00) Dollars (the "**Preferred Capital Contribution**"). The Preferred Members shall be entitled to a return of one and twenty-five hundredths (1.25%) percent per month pro rate in accordance with Schedule A until the Preferred Capital Contribution is paid back to the Preferred Members in full ("Preferred Return").

4. Distributions

Notwithstanding anything contained in Section 16 of the Operating Agreement, prior to distributing any funds to a Member, the Preferred Members shall receive the Preferred Capital Contribution and Preferred Return. The Preferred Return shall be due and payable by wire transfer to each individual member of the Preferred Members' account, pro rata, on a monthly basis with the first payment due thirty (30) days after the date hereof. Notwithstanding anything contained

herein to the contrary, prior to Redemption, the Preferred Members must have received an amount equal to at least six (6) months of Preferred Return payments.

5. Redemption

At such time as the Preferred Members has received the Preferred Capital Contribution and Preferred Return, the Preferred Members shall be redeemed and the Preferred Members shall be deemed to withdraw from the Company and resign as a Member, whereupon the Preferred Members shall execute a standard and customary form "Assignment and Resignation of Member" thereby relinquishing any and all rights and remedies as a member of the Company and assigning its membership interests in the Company to the Members.

6. Miscellaneous

Use of Funds. The Company shall use the Preferred Capital Contribution for renovations at the Property.

Personal Guaranty. Notwithstanding anything contained herein to the contrary, the Preferred Members shall receive the Preferred Capital Contribution and Preferred Return within twenty-four (24) months from the date hereof. Avrohom Prager in his individual capacity, by evidence of his signature below, hereby personally guarantees to the Preferred Members that the Preferred Capital Contribution and Preferred Return will be paid in full to the Preferred Members on or before twenty-four (24) months from the date hereof.

Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and permitted assigns.

Counterparts. This Agreement may be executed in any number of counterparts, all of which together shall constitute a single instrument. In addition, the parties may execute this Agreement by PDF, telecopy or other facsimile machine or electronic transmission and such facsimile signature or electronic transmission shall be deemed an original.

Entire Agreement. This Agreement embodies the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein. There are no restrictions, promises, representations, warranties, covenants or undertakings other than those expressly set forth or referred to herein. This Agreement supersedes all prior agreements and understandings, express or implied, oral or written, between the parties with respect to such subject matter hereof.

Amendments. Any amendment to this Agreement shall be effective only if such amendment is evidenced by a written instrument duly executed and delivered by the Members.

Section Titles. Section titles are for descriptive purposes only and shall not control or alter the meaning of this Agreement as set forth in the text hereof.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**MEMBERS**:

Avrohom Prager

Shulamit Prager

Personal Guaranty:

Name: Avrohom Prager

Name: Shulamit Prager

**Preferred Members:**

Rupan Trikha

Niti Trikha

Nuview Trust Co FBO Mayur T Dalal IRA

Manish Gandhi Revocable Trust 2002

MVP Park International Inc

Shetal Patel

Shetal Patel

Nuview Trust Co FBO Mahesh D Chhabria

Nuview Trust Co FBO Cory Conniff IRA

Bhavna Chhabria

Gandotra Investments LLC

R & R DHARIA LLC

CORY CONNIFF

CRP INVESTORS Group LLC

Shashi and Prem Goel

Kavita Kalra

# Schedule A

## List of Preferred Members

| **Name** | **Amount** |
|---|---|
| Rupan Trikha | **$1,500,000.00** |
| Niti Trikha | **$ 500,000.00** |
| Nuview Trust Co FBO Mayur T Dalal IRA | **$1,350,000.00** |
| Manish Gandhi Revocable Trust 2002 | **$1,000,000.00** |
| MVP Park International Inc | **$1,000,000.00** |
| Shetal Patel | **$ 500,000.00** |
| Nuview Trust Co FBO Mahesh D Chhabria | **$ 300,000.00** |
| Bhavna Chhabria | **$ 200,000.00** |
| Gandotra **Investments** LLC | **$ 300,000.00** |
| R & R DHARIA LLC | **$ 150,000.00** |
| CORY CONNIFF | **$ 100,000.00** |
| Nuview Trust Co FBO Cory Conniff IRA | **$ 100,000.00** |
| CRP INVESTORS Group LLC | **$ 500,000.00** |
| Shashi and Prem Goel | **$ 350,000.00** |
| Kavita Kalra | **$ 150,000.00** |
| Total | **$8000,000.00** |

# GUARANTY OF PAYMENT

**THIS GUARANTY OF PAYMENT** (the "Guaranty") is executed as of January ____, 2023, by the undersigned AVROHOM PRAGER & SHULAMIT PRAGER, individuals with an address at 7 Olive Court, Lakewood, NJ 08701 (collectively "Guarantor"), to and for the benefit of the Preferred Members (as defined in Schedule A attached to the First Amendment to the Amended & Restated Operating Agreement of WOOD AVE 194 LLC).

## PRELIMINARY STATEMENT

**WHEREAS,** pursuant to that First Amendment to the Amended & Restated Limited Liability Company Agreement of even date herewith (the "Amended Operating Agreement") of WOOD AVE 194 LLC (the "Company") the Preferred Members has made a Preferred Capital Contribution (as defined in the Amended Operating Agreement) of $8,000,000.00 to the Company; and

**WHEREAS,** as part of the consideration for Preferred Members making the Preferred Capital Contribution, Guarantor has agreed to deliver to the Preferred Members this Guaranty; and

**WHEREAS,** Preferred Members has declined to make the Preferred Capital Contribution, unless this Guaranty is duly executed by the Guarantor and delivered to Preferred Members; and

**WHEREAS,** Guarantor will derive substantial economic benefits from the Preferred Members making the Preferred Capital Contribution to the Company.

**NOW, THEREFORE,** in consideration of the promises and as part of the consideration for making the Preferred Capital Contribution, Guarantor covenants and agrees to and with Preferred Members as follows:

(1) Guarantor hereby unconditionally, absolutely and irrevocably guarantees to Preferred Members the punctual, prompt and complete payment of the Preferred Return (as defined in the amended Operating Agreement) and it being expressly understood and agreed that this is a continuing Guaranty and an instrument for the payment of money only, and that the obligations of Guarantor are and shall be absolute, unconditional and irrevocable under any and all circumstances without regard to the legality, binding effect, validity, regularity, or enforceability of the Amended Operating Agreement or any other documents executed in connection herewith or therewith, a true copy of each of such documents Guarantor hereby acknowledge having received, reviewed and approved.

(2) Guarantor agrees that their liabilities under this Guaranty shall be unaffected, regardless of whether notice or consideration is given or his further consent obtained, by (i) any amendment, supplement, modification or other change in the

Amended Operating Agreement or any other instrument made to or with Preferred Members by Guarantor, (ii) any extension of time for the observance or performance required thereby, (iii) any sale or assignment of the Company's membership interests, or any part thereof, (iv) exculpatory provisions, if any limiting Preferred Members's rights to enforce a deficiency judgment against Guarantor, (v) any release of Guarantor or any other person or entity from performance or observance of any of the agreements, terms, covenants or conditions contained in any of such instruments whether by operation of law or otherwise, (vi) Reserved, (vii) any recovery from Guarantor hereunder or under any other guaranty or guaranties executed in connection with the Preferred Capital Contribution, (viii) the accuracy or inaccuracy of any representations or warranties made by Guarantor in the Amended Operating Agreement or by Guarantor in this Guaranty or in any other documents executed by Guarantor in connection with the Preferred Capital Contribution, (ix) any bankruptcy, insolvency, liquidation, moratorium, reorganization, arrangement for the benefit of creditors, receivership, trusteeship or other law of like import affecting Guarantor or any of their respective successors and assigns, including, but not limited to, any automatic stay granted pursuant to any provision of a bankruptcy or similar law, (x) notwithstanding any provision to the contrary contained or implied in the Amended Operating Agreement or by law or in equity, any recovery as a result of the exercise of any of Preferred Members' rights or remedies under the Amended Operating Agreement unless as a result thereof Preferred Members has been paid the entire amount owed to Preferred Members under the Amended Operating Agreement (hereinafter such obligations owed to Preferred Members are referred to as the "Indebtedness") and (xi) any defense given to any guarantor (whether or not the same is Guarantor hereunder) or surety at law or in equity.

(3) Guarantor agrees that to the extent any amounts (i) are collected by Preferred Members in connection with any other guaranty or guaranties which are executed by Guarantor or any other person or entity which may have or may hereafter guarantee all or part of the Indebtedness, or (ii) are paid to Preferred Members by Guarantor or by any person or entity which may have or may hereafter execute any guaranty or guaranties of all or part of the Indebtedness, that regardless of the way such payments or amounts are characterized by Guarantor or any other person or entity, Preferred Members shall have the right, but not the obligation, to apply such amounts first to that part of the Indebtedness, if any, which is not covered by this Guaranty but which is covered by any other guaranty or guaranties of all or part of the Indebtedness.

(4) Guarantor waives any and all legal requirements that may require Preferred Members to institute any action or proceedings at law or in equity against Guarantor, or anyone else, or exhaust its remedies against Guarantor, or anyone else in respect of the Preferred Capital Contribution or in respect of any other security held by Preferred Members as a condition precedent to bringing an action against Guarantor upon this Guaranty. All remedies afforded to Preferred Members by reason of this Guaranty are separate and cumulative remedies and no one of such remedies, whether exercised by Preferred Members or not, shall be deemed to be an exclusion of any of the other remedies available to Preferred Members and shall not limit or prejudice any other legal

or equitable remedy which Preferred Members may have. This is a guaranty of payment and not of collection.

(5) Guarantor agrees that until each and every term, covenant and condition of this Guaranty is fully performed and fulfilled, he shall not be released by any act or thing which might, but for this provision, be deemed a legal or equitable discharge of a surety or guarantor (including, without limitation, Guarantor), or by reason of any waiver, extension, modification, forbearance or delay or other act or omission of Preferred Members or its failure to proceed promptly or otherwise, or by reason of any action taken or omitted or circumstance which may or might vary the risk or affect rights or remedies by reason of any further dealings between Guarantor and Preferred Members, whether relating to the Preferred Capital Contribution or otherwise, and Guarantor waives and surrenders any defense to his liabilities hereunder based upon any of the foregoing acts, omissions, agreements, waivers or any of them and also waives and relinquishes all other rights and remedies accorded by applicable law to guarantors and sureties, it being the purpose and intent of this Guaranty that the obligations of the Guarantor hereunder is and that this Guaranty is absolute, irrevocable and unconditional under any and all circumstances. No amendment, modification, discharge, waiver or release of this Guaranty shall be established by conduct, custom or course or business.

(6) Guarantor waives notice of acceptance of this Guaranty and of presentment for payment, demand, protest, notice of protest and of dishonor, notices of default and all other notices of every kind and description now or hereafter provided by any constitution, statute or rule of law.

(7) If Guarantor shall advance or become obligated to pay any sums with respect to this Guaranty or the Preferred Capital Contribution, Guarantor agrees that the amount of such sums and of such indebtedness and all interest thereon shall at all times be subordinate as to lien, time of payment and in all other respects to all sums, including principal, interest and other amounts at any time owing to Preferred Members under the Amended Operating Agreement or the obligations evidencing the same and that the Guarantor shall not be entitled to enforce or receive payment thereof until the Indebtedness is paid in full. Nothing herein contained is intended or shall be construed to give Guarantor any right of subrogation in or under the Preferred Capital Contribution, the obligations evidencing the same, or any right to participate in any way therein or in the right, title or interest of Preferred Members in or to the Premises, or any part thereof, or other mortgaged property, notwithstanding any payment made by Guarantor with respect to this Guaranty or the Preferred Capital Contribution, all such rights of subrogation and participation being expressly waived and released until the indebtedness is paid in full.

(8) Any notice, demand or request by Preferred Members to the Guarantor shall be in writing and shall be deemed to have been duly given or made one (1) business day following the date when sent by any reputable overnight courier addressed to Guarantor at his address set forth at the foot hereof.

(9) (a) This Guaranty is to be construed according to the laws of the State of New Jersey. Without limiting other methods of obtaining jurisdiction, the Guarantor hereby agrees to submit to personal jurisdiction of the courts of the State of New Jersey in any action or proceeding arising out of this Guaranty. In furtherance of such agreement, Guarantor hereby agrees and consents that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the undersigned by personal service within or without the jurisdiction of any such court. The foregoing shall not be deemed a limitation of Preferred Members' right to bring an action based on this Guaranty in any other jurisdiction.

(b) In the event any action or proceeding be brought by Preferred Members to enforce this Guaranty, or by or against Guarantor or Preferred Members, or both, or Preferred Members appears in any action or proceeding, in such event, Guarantor agrees to pay to Preferred Members reasonable attorney's fees and court costs including attorney's fees and court costs at trial or on appeal, together with all interest at the default rate set forth in the Amended Operating Agreement from the date demand is made by Preferred Members on this Guaranty until payment in full is received.

(10) Guarantor represents and warrants that:

(a) There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor or the properties of Guarantor before any court, governmental department, arbitrator, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to Guarantor, would have a material adverse effect on the financial condition, business, properties or operations of Guarantor.

(b) Neither the business nor properties of Guarantor are affected by a fire, explosion, strike, lockout, or other labor dispute, drought, storm, hail, earthquake, embargo, acts of God or of the public enemy or other casualty (whether or not covered by insurance) which would have a material adverse effect upon the financial condition, business, properties or operations of Guarantor.

(c) They are not a party to any indenture, Preferred Capital Contribution or credit agreement or any lease or other agreement or instrument or subject to any charter or other restriction which would have a material adverse effect on his ability to carry out his obligations under this Guaranty.

(d) No information, exhibit or report furnished by Guarantor to Preferred Members in connection with the negotiation of this Guaranty contained as of the date of the furnishing thereof any material misstatement of fact or omitted to state a material fact necessary to make the statements contained therein not misleading.

(e) Guarantor has the full power, legal right, authority and requisite capacity to execute and deliver this Guaranty, and to observe, perform and fulfill the provisions hereof.

(11) Guarantor agrees to furnish Preferred Members with the information with respect to the business, properties, operations or condition, financial or otherwise, of Guarantor as Preferred Members may from time-to-time reasonably request.

(12) Should Preferred Members be obligated by any bankruptcy or other law to repay to Guarantor or to any trustee, receiver or other representative of any of them, any amounts previously paid in respect of this Guaranty, then this Guaranty shall be reinstated to include the amount of such repayment. Preferred Members shall not be required to litigate or otherwise dispute its obligation to make such repayments if, in good faith and on the advice of counsel, it believes that such obligation exists.

(13) If any action, suit or proceeding which either directly or indirectly involves the Guaranty is commenced, Guarantor waives his right to any jury trial in connection therewith.

(14) If any of the provisions of this Guaranty, or the application thereto to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Guaranty, or the application of such provision to persons or circumstances other than those as to whom or which it is held invalid or enforceable, shall not be affected thereby, and every provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.

(15) Guarantor agrees to indemnify Preferred Members against any reasonable loss, cost or expense in the nature of costs, expenses and reasonable attorney's fees and expenses caused by the assertion by Guarantor of any unsuccessful defense to his obligations under this Guaranty. Guarantor waives any right or claim of right to cause a marshaling of Guarantor's assets or to cause Preferred Members to proceed against any security that has been or may be granted before proceeding against Guarantor. Guarantor agrees that any payments required to be made by him hereunder shall become due in accordance with the Amended Operating Agreement immediately upon the happening of any default following the expiration of any applicable grace period under the Amended Operating Agreement and without presentment of the Amended Operating Agreement to Guarantor, demand for payment or protest thereof, or notice or nonpayment or protest thereof.

(16) This Guaranty is separate, distinct and in addition to any liability or obligations that Guarantor may have under any other guaranty executed by Guarantor in connection with any other Preferred Capital Contribution from Preferred Members to Guarantor and no other agreement or guaranty executed in connection with the Preferred Capital Contribution shall act to reduce or set off Guarantor's liability hereunder.

(17) This Guaranty shall be binding upon the heirs, legal representatives, successors and permitted assigns of Guarantor and shall inure to the benefit of Preferred Members and its successors and assigns (whether such assignment is in whole or in part). Without the prior written consent of the Preferred Members, which may be withheld in

Preferred Members' sole and absolute discretion, no Guarantor shall assign or otherwise transfer any of its obligations under this Amended Operating Agreement.

(18) This Guaranty may not be modified, amended, discharged or otherwise changed orally, but only by an instrument in writing which is executed and delivered by the Guarantor and Preferred Members.

(19) Guarantor acknowledges that he has received a true copy of this Guaranty and agrees that he has executed and delivered this Guaranty to the Preferred Members, intending that Preferred Members materially and justifiably rely thereon in connection with the Preferred Capital Contribution.

(20) In interpreting this Guaranty, the singular shall include the plural; the plural shall include the singular; and the use of any gender shall include all genders.

(21) The obligations of Guaranty hereunder shall be joint and several with the obligations of any other person or entity providing any guaranty or Indemnity with respect to the Preferred Capital Contribution.

BALANCE OF PAGE INTENTIONALLY LEFT BLANK

**IN WITNESS WHEREOF,** Guarantor has duly executed this Guaranty as of the day and year first above written.

______________________________
Avrohom Prager

______________________________
Shulamit Prager

STATE OF NJ )
) ss.:
COUNTY OF Ocean )

On the 31 day of January in the year 2023 before me, the undersigned, personally appeared AVROHOM PRAGER & SHULAMIT PRAGER personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

______________________________
Notary Public

SARAH RUBIN
Notary Public, State of New Jersey
Comm. # 50198494
My Commission Expires 6/21/2027

SARAH RUBIN MY COMMISSION EXPIRES 6/21/2027 NOTARY PUBLIC STATE OF NEW JERSEY

SARAH RUBIN MY COMMISSION EXPIRES 6/21/2027 NOTARY PUBLIC STATE OF NEW JERSEY

WOOD AVE 194 LLC

FIRST AMENDMENT TO

AMENDED & RESTATED LIMITED LIABLITY COMPANY AGREEMENT

DATED AS OF JANUARY 31, 2023

This First Amendment (this "**Amendment**") to the Amended & Restated Limited Liability Company Agreement of WOOD AVE 194 LLC, a New Jersey limited liability company (the "**Company**"), dated as of Janaury 31, 2023, is made by and among the individuals signing it below.

**WHEREAS**, the parties signing this Amendment desire to amend that certain Operating Agreement of the Company dated as of December 30, 2021 (the "**Operating Agreement**"), which governs the Company, pursuant to the New Jersey Revised Uniform Limited Liability Company Act, as amended from time to time;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the individuals signing this Amendment below agree to amend the Operating Agreement as follows by adding the following provisions, which terms shall modify, supersede and replace the terms of the Operating Agreement:

Notwithstanding any other provision of the Operating Agreement, any other organizational documents or any provisions of law that empowers the Company, the following provisions shall be operative and controlling.

1. Definitions

All Capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Operating Agreement.

2. Members

Modifying Section 5 and Schedule B of the Operating Agreement, the sole Preferred Members, of the Company, shall be as listed in Schedule A attached hereto (the "**Preferred Members**").

3. Capital Contributions

Section 13 of the Operating Agreement, and subsequently the Books of the Company referenced in Section 13 and 14 of the Operating Agreement shall be modified to reflect that the Preferred Members made a Capital Contribution to the Company in the amount of Eight Million ($8,000,000.00) Dollars (the "**Preferred Capital Contribution**"). The Preferred Members shall be entitled to a return of one and twenty-five hundredths (1.25%) percent per month pro rate in accordance with Schedule A until the Preferred Capital Contribution is paid back to the Preferred Members in full ("Preferred Return").

4. Distributions

Notwithstanding anything contained in Section 16 of the Operating Agreement, prior to distributing any funds to a Member, the Preferred Members shall receive the Preferred Capital Contribution and Preferred Return. The Preferred Return shall be due and payable by wire transfer to each individual member of the Preferred Members' account, pro rata, on a monthly basis with the first payment due thirty (30) days after the date hereof. Notwithstanding anything contained

herein to the contrary, prior to Redemption, the Preferred Members must have received an amount equal to at least six (6) months of Preferred Return payments.

5. Redemption

At such time as the Preferred Members has received the Preferred Capital Contribution and Preferred Return, the Preferred Members shall be redeemed and the Preferred Members shall be deemed to withdraw from the Company and resign as a Member, whereupon the Preferred Members shall execute a standard and customary form "Assignment and Resignation of Member" thereby relinquishing any and all rights and remedies as a member of the Company and assigning its membership interests in the Company to the Members.

6. Miscellaneous

Use of Funds. The Company shall use the Preferred Capital Contribution for renovations at the Property.

Personal Guaranty. Notwithstanding anything contained herein to the contrary, the Preferred Members shall receive the Preferred Capital Contribution and Preferred Return within twenty-four (24) months from the date hereof. Avrohom Prager in his individual capacity, by evidence of his signature below, hereby personally guarantees to the Preferred Members that the Preferred Capital Contribution and Preferred Return will be paid in full to the Preferred Members on or before twenty-four (24) months from the date hereof.

Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and permitted assigns.

Counterparts. This Agreement may be executed in any number of counterparts, all of which together shall constitute a single instrument. In addition, the parties may execute this Agreement by PDF, telecopy or other facsimile machine or electronic transmission and such facsimile signature or electronic transmission shall be deemed an original.

Entire Agreement. This Agreement embodies the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein. There are no restrictions, promises, representations, warranties, covenants or undertakings other than those expressly set forth or referred to herein. This Agreement supersedes all prior agreements and understandings, express or implied, oral or written, between the parties with respect to such subject matter hereof.

Amendments. Any amendment to this Agreement shall be effective only if such amendment is evidenced by a written instrument duly executed and delivered by the Members.

Section Titles. Section titles are for descriptive purposes only and shall not control or alter the meaning of this Agreement as set forth in the text hereof.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**MEMBERS**:

____________________________
Avrohom Prager

____________________________
Shulamit Prager

Personal Guaranty:

____________________________
Name: Avrohom Prager

____________________________
Name: Shulamit Prager

**Preferred Members:**

______________________________
Rupan Trikha

______________________________
Niti Trikha

______________________________
Nuview Trust Co FBO Mayur T Dalal IRA

______________________________
Manish Gandhi Revocable Trust 2002

______________________________
MVP Park International Inc

Shetal Patel
______________________________
Shetal Patel

______________________________
Nuview Trust Co FBO Mahesh D Chhabria

______________________________
Nuview Trust Co FBO Cory Conniff IRA

______________________________
Bhavna Chhabria

______________________________
Gandotra Investments LLC

______________________________
R & R DHARIA LLC

______________________________
CORY CONNIFF

______________________________
CRP INVESTORS Group LLC

______________________________
Shashi and Prem Goel

______________________________
Kavita Kalra

# Schedule A

## List of Preferred Members

| Name | Amount |
|---|---|
| Rupan Trikha | $1,500,000.00 |
| Niti Trikha | $ 500,000.00 |
| Nuview Trust Co FBO Mayur T Dalal IRA | $1,350,000.00 |
| Manish Gandhi Revocable Trust 2002 | $1,000,000.00 |
| MVP Park International Inc | $1,000,000.00 |
| Shetal Patel | $ 500,000.00 |
| Nuview Trust Co FBO Mahesh D Chhabria | $ 300,000.00 |
| Bhavna Chhabria | $ 200,000.00 |
| Gandotra **Investments** LLC | $ 300,000.00 |
| R & R DHARIA LLC | $ 150,000.00 |
| CORY CONNIFF | $ 100,000.00 |
| Nuview Trust Co FBO Cory Conniff IRA | $ 100,000.00 |
| CRP INVESTORS Group LLC | $ 500,000.00 |
| Shashi and Prem Goel | $ 350,000.00 |
| Kavita Kalra | $ 150,000.00 |
| Total | $8000,000.00 |