# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

AVENTURA CHIROPRACTIC CENTER, INC., individually and on behalf of all others similarly situated,

Plaintiff, Case No.

v.

MED WASTE MANAGEMENT LLC, a New York limited liability company, and JOHN DOES 1-10,

Defendants.

**CLASS ACTION COMPLAINT**

Plaintiff, AVENTURA CHIROPRACTIC CENTER, INC. ("Plaintiff"), brings this action on behalf of itself and all other persons similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendants, MED WASTE MANAGEMENT LLC and JOHN DOES 1-10 (collectively, "Defendants").

**PRELIMINARY STATEMENT**

1. This case is a consumer class action related to Defendants' practice of faxing unsolicited advertisements.

2. The federal Telephone Consumer Protection Act, 47 U.S.C. § 227, prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission. The TCPA provides a private right of action and

Case 1:22-cv-21695-CMA Document 1 Entered on FLSD Docket 05/04/2022 Page 2 of 12

provides statutory damages of $500.00 per violation.

3. Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

4. On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against the Defendants under the TCPA and for Common Law Conversion.

5. Plaintiff seeks an award of statutory damages, individually and on behalf of the Class, for each violation of the TCPA and for damages under common law conversion.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

7. Venue in this district is proper because Defendants committed a statutory tort in Florida and within this judicial district.

## PARTIES

8. On information and belief, Plaintiff is a Florida corporation with its principal place of business in Miami, Florida.

9. On information and belief, Defendant, MED WASTE MANAGEMENT LLC,

is a New York limited liability company, organized under the laws of the State of New York with its principal place of business in Brooklyn, New York.

10. Defendants, JOHN DOES 1-10, will be identified in discovery but are not presently known.

**FACTS**

11. On or about May 12, 2010 and/or May 14, 2010, Defendants transmitted by telephone facsimile machine a facsimile to Plaintiff. A copy of that facsimile is attached hereto as Exhibit A.

12. Defendants created or made Exhibit A which Defendants knew or should have known is a good or product which Defendants intended to and did in fact distribute to Plaintiff and the other members of the class.

13. Defendants sent the same form facsimile to the entire class. Defendants' facsimile was successfully sent to Plaintiff and more than 50 other recipients.

14. Exhibit A is a part of Defendants' work or operations to market Defendants' goods or services which was performed by Defendants and on behalf of Defendants. Therefore, Exhibit A constitutes material furnished in connection with Defendants' work or operations.

15. Plaintiff had not invited or given permission to Defendants to send faxes.

16. There is no reasonable means for Plaintiff (or any other Class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

17. On information and belief, Defendants faxed the same or similar unsolicited

facsimiles to Plaintiff to more than fifty (50) other persons without first receiving the recipients' express permission or invitation.

18. Defendants' facsimiles did not display a proper opt out notice as required by 64 C.F.R. 1200.

**<u>COUNT I</u>**

**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

19. Plaintiff, on behalf of itself and all others similarly situated, incorporates Paragraphs 1 through 18 as though fully set forth herein, as and for its Paragraph 19.

20. In accordance with Fed. R. Civ. P. 23, Plaintiff brings Count I pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain prior express permission or invitation to send those faxes, (4) with whom Defendants did not have an established business relationship (the "Class"), and (5) which did not display a proper opt out notice.

Excluded from the Class are Defendants, their officers, directors, employees, agents, and the members of the Judiciary.

21. A class action is warranted because:

22. <u>Numerosity [Fed. R. Civ. P. 23(A)(1)]</u>. The class includes more than fifty (50) persons and, therefore, is so numerous that individual joinder would be impracticable.

23. <u>Commonality [Fed. R. Civ. P. 23(A)(2)]</u>. Common questions of law and fact apply to the claims of all class members, including but not limited to the following:

(i) Whether Defendants sent unsolicited fax advertisements;

(ii) Whether Defendants' facsimiles advertised the commercial availability of property, goods, or services;

(iii) The manner and method Defendants used to compile or obtain the list of fax numbers to which they sent Exhibit A and other unsolicited faxed advertisements;

(iv) Whether Defendants faxed advertisements without first obtaining the recipients' express permission or invitation;

(v) Whether Defendants violated the provisions of 47 U.S.C. § 227;

(vi) Whether Plaintiff and the other class members are entitled to statutory damages;

(vii) Whether Defendants should be enjoined from faxing advertisements in the future;

(viii) Whether the Court should award treble damages; and

(ix) Whether Exhibit A and the other advertisements displayed the proper opt out notice required by 64 C.F.R. 1200.

24. <u>Typicality [Fed. R. Civ. P. 23(a)(3)]</u>. Plaintiff's claims are typical of the claims of all class members. Plaintiff received a facsimile sent by or on behalf of Defendants that advertised Defendants' goods and services during the Class Period. Plaintiff is making the same claims and seeks the same relief for itself and all class members based on the same federal statute, and Defendants have acted in the same or in a similar manner with respect to Plaintiff and all the class members.

25. Fair and Adequate Representation [Fed. R. Civ. P. 23(a)(4)]. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the Class.

26. Predominance and Superiority [Fed. R. Civ. P. 23(b)(3)]. Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions. As discussed above, common legal issues predominate because the class members' claims arise under the same federal statute, *i.e.* 47 U.S.C. § 227. Common fact issues also predominate. Rule 23(b)(3) also requires that a class action be the superior method for adjudicating the claims. Certifying a class is the "superior" way where, as here, the class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

27. The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227(b)(1).

28. The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

29. The TCPA provides:

> 3. Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> > (A) An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> >
> > (B) An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> >
> > (C) Both such actions.

30. The Court, in its discretion, can treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

31. Defendants violated 47 U.S.C. § 227, *et seq.* by sending advertising faxes (such as Exhibit A) to Plaintiff and the other members of the Class without first obtaining their prior express invitation or permission and by not displaying the proper opt out notice required by 64 C.F.R. 1200.

32. The TCPA is a strict liability statute, so Defendants are liable to Plaintiff and the other class members even if their actions were only negligent.

33. Defendants knew or should have known that (a) Plaintiff and the other class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods or services, (b) that Plaintiff and the other class members did not have an established business relationship, and (c) that Exhibit A is an advertisement.

34. Defendants' actions caused damages to Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in

the printing of Defendants' faxes. Moreover, Defendants' faxes used Plaintiff's fax machine, cost Plaintiff time that was wasted receiving, reviewing and routing Defendants' unauthorized faxes that otherwise would have been spent on Plaintiff's business activities, and unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone.

WHEREFORE, Plaintiff, AVENTURA CHIROPRACTIC CENTER, INC., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, MED WASTE MANAGEMENT LLC and JOHN DOES 1-10, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award $500.00 in damages for each violation of the TCPA;

C. That the Court enter an injunction prohibiting Defendants from engaging in the statutory violations at issue in this action; and

D. That the Court award costs and such further relief as the Court may deem just and proper, but in any event, not more than $75,000.00 per individual, inclusive of all damages and fees.

## <u>COUNT II</u>

## CONVERSION

35. Plaintiff, on behalf of itself and all others similarly situated, incorporates Paragraph 3, and 6 through 17 as though fully set forth herein, as and for its Paragraph 35.

36. In accordance with Fed. R. Civ. P. 23, Plaintiff brings Count II for conversion under the common law for the following Class of persons:

> All persons who on or after a date of four years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendants.

37. A class action is proper in that:

(a) On information and belief, the Class consists of fifty or more persons and is so numerous that joinder of all members is impracticable.

(b) There are questions of fact or law common to the Class predominating over questions affecting only individual Class members, including:

(i) Whether Defendants engaged in a pattern of sending unsolicited faxes;

(ii) The manner and method Defendants used to compile or obtain the list of fax numbers to which they sent Exhibit A and other unsolicited faxes; and

(iii) Whether Defendants committed the tort of conversion.

38. Plaintiff will fairly and adequately protect the interests of the other Class members. Plaintiff has retained counsel who is experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the Class.

39. A class action is an appropriate method for adjudicating this controversy fairly and effectively. The interest of the individual Class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

40. By sending Plaintiff and other Class members unsolicited faxes, Defendants improperly converted their fax machines, toner and paper to their own use. Defendants also converted Plaintiff's employees' time to Defendants' own use.

41. Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other Class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

42. By sending the unsolicited faxes, Defendants permanently misappropriated the Class members' fax machines, toner, paper, and employee time to Defendants' own use. Such misappropriation was wrongful and without authorization.

43. Defendants knew or should have known that their misappropriation of paper, toner and employee time was wrongful and without authorization.

44. Plaintiff and the other Class members were deprived of the use of their fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each Class member thereby suffered damages as a result of their receipt of unsolicited faxes from Defendants.

45. Each of Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because multiple persons employed by Plaintiff were involved in receiving, routing and reviewing Defendants' unauthorized faxes. Defendants knew or should have known employees' time is valuable to Plaintiff.

46. Defendants' actions caused damages to Plaintiff and the other members of the Class because their receipt of Defendants' unsolicited faxes caused them to lose paper and toner as a result. Defendants' actions prevented Plaintiff's fax machine from being used for

Plaintiff's business purposes during the time Defendants were using Plaintiff's fax machine for Defendants' unauthorized purpose. Defendants' actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendants' unauthorized faxes, and that time would otherwise have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, AVENTURA CHIROPRACTIC CENTER, INC., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, MED WASTE MANAGEMENT LLC and JOHN DOES 1-10, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the Class, and appoint Plaintiff's counsel as counsel for the Class;

B. That the Court enter judgment finding Defendants unlawfully converted the fax machines of Plaintiff and the members of the Class and are liable to Plaintiff and the members of the Class for damages arising from their conversion;

C. That the Court award damages for each act of conversion;

D. That the Court enter an injunction prohibiting Defendants from engaging in the statutory violations at issue in this action; and

E. That the Court award costs, including reasonable attorneys' fees, and such further relief as the Court may deem just and proper, but in any event, not more than $75,000.00 per individual, inclusive of all damages and fees.

Respectfully submitted,

AVENTURA CHIROPRACTIC CENTER, INC., individually and as the representative of a class of similarly-situated persons

By: /s/ Ryan M. Kelly

Ryan M. Kelly (FL Bar #90110)
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501

AND

Gregory S. Weiss
Leopold Law, P.A.
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401

Philip A. Bock
BOCK & HATCH, LLC
134 North LaSalle Street, Suite 1000
Chicago, IL 60602
Telephone: (312) 658-5500
Facsimile: (312) 658-5555

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

AVENTURA CHIROPRACTIC CENTER, INC., individually and on behalf of all others similarly situated,

Plaintiff, Case No.

v.

MED WASTE MANAGEMENT LLC, a New York limited liability company, and JOHN DOES 1-10,

Defendants.

**CLASS ACTION COMPLAINT**

Plaintiff, AVENTURA CHIROPRACTIC CENTER, INC. ("Plaintiff"), brings this action on behalf of itself and all other persons similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendants, MED WASTE MANAGEMENT LLC and JOHN DOES 1-10 (collectively, "Defendants").

**PRELIMINARY STATEMENT**

1. This case is a consumer class action related to Defendants' practice of faxing unsolicited advertisements.

2. The federal Telephone Consumer Protection Act, 47 U.S.C. § 227, prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's

prior express invitation or permission. The TCPA provides a private right of action and provides statutory damages of $500.00 per violation.

3. Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

4. On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against the Defendants under the TCPA and for Common Law Conversion.

5. Plaintiff seeks an award of statutory damages, individually and on behalf of the Class, for each violation of the TCPA and for damages under common law conversion.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

7. Venue in this district is proper because Defendants committed a statutory tort in Florida and within this judicial district.

## PARTIES

8. On information and belief, Plaintiff is a Florida corporation with its principal place of business in Miami, Florida.

9. On information and belief, Defendant, MED WASTE MANAGEMENT LLC, is a New York limited liability company, organized under the laws of the State of New York with its principal place of business in Brooklyn, New York.

10. Defendants, JOHN DOES 1-10, will be identified in discovery but are not presently known.

**FACTS**

11. On or about May 12, 2010 and/or May 14, 2010, Defendants transmitted by telephone facsimile machine a facsimile to Plaintiff. A copy of that facsimile is attached hereto as Exhibit A.

12. Defendants created or made Exhibit A which Defendants knew or should have known is a good or product which Defendants intended to and did in fact distribute to Plaintiff and the other members of the class.

13. Defendants sent the same form facsimile to the entire class. Defendants' facsimile was successfully sent to Plaintiff and more than 50 other recipients.

14. Exhibit A is a part of Defendants' work or operations to market Defendants' goods or services which was performed by Defendants and on behalf of Defendants. Therefore, Exhibit A constitutes material furnished in connection with Defendants' work or operations.

15. Plaintiff had not invited or given permission to Defendants to send faxes.

16. There is no reasonable means for Plaintiff (or any other Class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

17. On information and belief, Defendants faxed the same or similar unsolicited facsimiles to Plaintiff to more than fifty (50) other persons without first receiving the recipients' express permission or invitation.

18. Defendants' facsimiles did not display a proper opt out notice as required by 64 C.F.R. 1200.

**COUNT I**

**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

19. Plaintiff, on behalf of itself and all others similarly situated, incorporates Paragraphs 1 through 18 as though fully set forth herein, as and for its Paragraph 19.

20. In accordance with Fed. R. Civ. P. 23, Plaintiff brings Count I pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain prior express permission or invitation to send those faxes, (4) with whom Defendants did not have an established business relationship (the "Class"), and (5) which did not display a proper opt out notice.

Excluded from the Class are Defendants, their officers, directors, employees, agents, and the members of the Judiciary.

21. A class action is warranted because:

22. Numerosity [Fed. R. Civ. P. 23(A)(1)]. The class includes more than fifty (50) persons and, therefore, is so numerous that individual joinder would be impracticable.

23. Commonality [Fed. R. Civ. P. 23(A)(2)]. Common questions of law and fact apply to the claims of all class members, including but not limited to the following:

(i) Whether Defendants sent unsolicited fax advertisements;

(ii) Whether Defendants' facsimiles advertised the commercial availability of property, goods, or services;

(iii) The manner and method Defendants used to compile or obtain the list of fax numbers to which they sent Exhibit A and other unsolicited faxed advertisements;

(iv) Whether Defendants faxed advertisements without first obtaining the recipients' express permission or invitation;

(v) Whether Defendants violated the provisions of 47 U.S.C. § 227;

(vi) Whether Plaintiff and the other class members are entitled to statutory damages;

(vii) Whether Defendants should be enjoined from faxing advertisements in the future;

(viii) Whether the Court should award treble damages; and

(ix) Whether Exhibit A and the other advertisements displayed the proper opt out notice required by 64 C.F.R. 1200.

24. Typicality [Fed. R. Civ. P. 23(a)(3)]. Plaintiff's claims are typical of the claims of all class members. Plaintiff received a facsimile sent by or on behalf of Defendants that advertised Defendants' goods and services during the Class Period. Plaintiff is making the same claims and seeking the same relief for itself and all class members based on the

same federal statute, and Defendants have acted in the same or in a similar manner with respect to Plaintiff and all the class members.

25. <u>Fair and Adequate Representation [Fed. R. Civ. P. 23(a)(4)]</u>. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the Class.

26. <u>Predominance and Superiority [Fed. R. Civ. P. 23(b)(3)]</u>. Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions. As discussed above, common legal issues predominate because the class members' claims arise under the same federal statute, *i.e.* 47 U.S.C. § 227. Common fact issues also predominate. Rule 23(b)(3) also requires that a class action be the superior method for adjudicating the claims. Certifying a class is the "superior" way where, as here, the class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

27. The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227(b)(1).

28. The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is

transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

29. The TCPA provides:

> 3. Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> > (A) An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> >
> > (B) An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> >
> > (C) Both such actions.

30. The Court, in its discretion, can treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

31. Defendants violated 47 U.S.C. § 227, *et seq.* by sending advertising faxes (such as Exhibit A) to Plaintiff and the other members of the Class without first obtaining their prior express invitation or permission and by not displaying the proper opt out notice required by 64 C.F.R. 1200.

32. The TCPA is a strict liability statute, so Defendants are liable to Plaintiff and the other class members even if their actions were only negligent.

33. Defendants knew or should have known that (a) Plaintiff and the other class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods or services, (b) that Plaintiff and the other class

members did not have an established business relationship, and (c) that Exhibit A is an advertisement.

34. Defendants' actions caused damages to Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, Defendants' faxes used Plaintiff's fax machine, cost Plaintiff time that was wasted receiving, reviewing and routing Defendants' unauthorized faxes that otherwise would have been spent on Plaintiff's business activities, and unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone.

WHEREFORE, Plaintiff, AVENTURA CHIROPRACTIC CENTER, INC., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, MED WASTE MANAGEMENT LLC and JOHN DOES 1-10, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award $500.00 in damages for each violation of the TCPA;

C. That the Court enter an injunction prohibiting Defendants from engaging in the statutory violations at issue in this action; and

D. That the Court award costs and such further relief as the Court may deem just and proper, but in any event, not more than $75,000.00 per individual, inclusive of all damages and fees.

## COUNT II

## CONVERSION

35. Plaintiff, on behalf of itself and all others similarly situated, incorporates Paragraph 3, and 6 through 17 as though fully set forth herein, as and for its Paragraph 35.

36. In accordance with Fed. R. Civ. P. 23, Plaintiff brings Count II for conversion under the common law for the following Class of persons:

> All persons who on or after a date of four years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendants.

37. A class action is proper in that:

(a) On information and belief, the Class consists of fifty or more persons and is so numerous that joinder of all members is impracticable.

(b) There are questions of fact or law common to the Class predominating over questions affecting only individual Class members, including:

(i) Whether Defendants engaged in a pattern of sending unsolicited faxes;

(ii) The manner and method Defendants used to compile or obtain the list of fax numbers to which they sent Exhibit A and other unsolicited faxes; and

(iii) Whether Defendants committed the tort of conversion.

38. Plaintiff will fairly and adequately protect the interests of the other Class members. Plaintiff has retained counsel who is experienced in handling class actions and

claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the Class.

39. A class action is an appropriate method for adjudicating this controversy fairly and effectively. The interest of the individual Class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

40. By sending Plaintiff and other Class members unsolicited faxes, Defendants improperly converted their fax machines, toner and paper to their own use. Defendants also converted Plaintiff's employees' time to Defendants' own use.

41. Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other Class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

42. By sending the unsolicited faxes, Defendants permanently misappropriated the Class members' fax machines, toner, paper, and employee time to Defendants' own use. Such misappropriation was wrongful and without authorization.

43. Defendants knew or should have known that their misappropriation of paper, toner and employee time was wrongful and without authorization.

44. Plaintiff and the other Class members were deprived of the use of their fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each Class member thereby suffered damages as a result of their receipt of unsolicited faxes from Defendants.

45. Each of Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because multiple persons employed by Plaintiff were involved in receiving, routing and

reviewing Defendants' unauthorized faxes. Defendants knew or should have known employees' time is valuable to Plaintiff.

46. Defendants' actions caused damages to Plaintiff and the other members of the Class because their receipt of Defendants' unsolicited faxes caused them to lose paper and toner as a result. Defendants' actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the time Defendants were using Plaintiff's fax machine for Defendants' unauthorized purpose. Defendants' actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendants' unauthorized faxes, and that time would otherwise have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, AVENTURA CHIROPRACTIC CENTER, INC., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, MED WASTE MANAGEMENT LLC and JOHN DOES 1-10, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the Class, and appoint Plaintiff's counsel as counsel for the Class;

B. That the Court award damages for each unauthorized fax received by Plaintiffs;

C. That the Court award costs of suit; and

D. That the Court award such further relief as the Court may deem just and proper, but in any event, not more than $75,000.00 per individual, inclusive of all damages and fees.

Respectfully submitted,

AVENTURA CHIROPRACTIC CENTER, INC.,
individually and as the representative of a class of
similarly-situated persons

By: /s/ Gregory S. Weiss

Gregory S. Weiss
Leopold Law, P.A.
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401

AND

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: (847) 368-1500

Philip A. Bock
BOCK & HATCH, LLC
134 North LaSalle Street, Suite 1000
Chicago, IL 60602
Telephone: (312) 658-5500

EXHIBIT A

# MedWaste
MANAGEMENT

**GUARANTEED!**
**20% SAVINGS**

- GREAT SERVICE
- ECONOMICAL RATES
- NO SURCHARGES
- NO EXTRA FEES
- FLEXIBLE SERVICE CONTRACTS
- ACCOMMODATING SCHEDULE
- ACCURATE RECORD KEEPING
- ALL SUPPLIES INCLUDED
- COURTESY CALL ONE DAY PRIOR TO PICKUP

---

Call us today to find out how WE CAN SAVE YOU MONEY, and provide you with reliable disposal of your Medical Waste.

Call Today: **888-431-6386**

# CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form isrequired for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**
AVENTURA CHIROPRACTIC CENTER, INC., et al.

**DEFENDANTS**
MED WASTE MANAGEMENT LLC and JOHN DOES 1-10

**(b)** County of Residence of First Listed Plaintiff: Miami-Dade County, FL
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Kings County, NY
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Ryan M. Kelly (FL Bar #90110) - ANDERSON+WANCA
3701 Algonquin Road, Suite 760, Rolling Meadows, IL 60008
Tel: (847) 368-1500

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [X] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (excl. vet.)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Inj.

PERSONAL INJURY
- [ ] 362 Personal Injury— Med. Malpractice
- [ ] 365 Personal Injury — Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 ADA—Employment
- [ ] 446 ADA — Other
- [ ] 440 Other Civil Rights

**PRISONER PETITIONS**
- [ ] 510 Motions to Vacate Sentence
Habeas Corpus:
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**FORFEITURE/PENALTY**
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt.Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 810 Selective Service
- [ ] 850 Security/Commodity/Exch.
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes
- [X] 890 Other Statutory Actions

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

47 U.S.C. Sec. 227 - Violation of the Telephone Consumer Protection Act

## VII. PREVIOUS BANKRUPTCY MATTERS (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter perviously adjudicated by a judge of this Court. Use a separate attachment if necessary)

## VIII. REQUESTED IN COMPLAINT:

- [X] CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [X] No

## IX. This case

- [X] **is not a refiling of a previously dismissed action.**
- [ ] **is a refiling of case number __________, previously dismissed by Judge __________**

DATE 5/4/12

SIGNATURE OF ATTORNEY OF RECORD
s/Ryan M. Kelly

Case 1:26-cv-21695-CMA Document 1-3 Entered on FLSD Docket 05/04/2026 Page 1 of 2

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

AVENTURA CHIROPRACTIC CENTER, INC., et al.
*Plaintiff*

v.

MED WASTE MANAGEMENT LLC, et al.
*Defendant*

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Avraham Prager - Reg. Agent
c/o Med Waste Management LLC
1860 52nd Street, Apt. 1E
Brooklyn, NY 11204

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Ryan M. Kelly (FL BAR #90110)
ANDERSON+WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ________________

________________
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ____________________
was received by me on *(date)* ____________ .

❒ I personally served the summons on the individual at *(place)* ____________________
____________________ on *(date)* ____________ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* ____________
____________________ , a person of suitable age and discretion who resides there,
on *(date)* ____________ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* ____________________ , who is
designated by law to accept service of process on behalf of *(name of organization)* ____________
____________________ on *(date)* ____________ ; or

❒ I returned the summons unexecuted because ____________________ ; or

❒ Other *(specify)*:
.

My fees are $ ________ for travel and $ ________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

____________________
*Server's signature*

____________________
*Printed name and title*

____________________
*Server's address*

Additional information regarding attempted service, etc:

Print Save As... Reset

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 12-21695-CIV-ALTONAGA/Simonton**

**A AVENTURA CHIROPRACTIC CENTER, INC.**,

Plaintiff,

v.

**MED WASTE MANAGEMENT LLC**, *et al.*,

Defendants.
_________________________________/

**ORDER**

**THIS CAUSE** came before the Court for a hearing on May 10, 2013, on Plaintiff, A Aventura Chiropractic Center, Inc.'s ("Aventura['s]") Motion for Class Certification ("Motion") [ECF No. 101], filed March 29, 2013. The Court has carefully considered the parties' written submissions, the arguments presented, and applicable law. For the reasons explained below, the Court finds certification of Aventura's proposed class is not appropriate and denies the Motion.

## I. BACKGROUND

### A. Plaintiff's Allegations

In its Second Amended Class Action Complaint ("Complaint") [ECF No. 30], Aventura, a Florida resident, alleges Opal Management LLC ("Opal") owns the website for New York-based[1] Defendant Med Waste Management LLC ("Med Waste") and has common ownership with Med Waste. (*See* Compl. ¶¶ 8–10). Defendant Avrohom Prager ("Prager") is a manager and officer of Opal and owns and controls Opal and Med Waste. (*See id.* ¶¶ 11, 12). On May 12 and 14, 2010, Defendants transmitted by telephone facsimile machine a facsimile to Aventura,

[1] Defendants do not challenge the existence of diversity jurisdiction.

which did not contain a proper opt out notice as required by 47 C.F.R. section 64.1200(a)(3)(iii) (2010).[2] (*See id.* ¶¶ 14, 21). Defendants sent the same facsimile, marketing Defendants' goods or services, to more than fifty other recipients. (*See id.* ¶¶ 16, 17). Aventura never gave Defendants permission to send the fax, and moreover, neither it nor other potential class members have reasonable means to avoid receiving unauthorized faxes. (*See id.* ¶¶ 18, 19).

On these facts Aventura states two claims for relief. In Count I, entitled "Telephone Consumer Protection Act, 46 U.S.C. § 227," Aventura sues on behalf of itself and the following class: all persons who were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services on behalf of Defendants; from whom Defendants did not first obtain express permission or invitation to send the faxes; with whom Defendants did not have an established business relationship; and which faxes did not display a proper opt out notice. (*See id.* ¶ 23 (quoting 47 U.S.C. § 227)). The Telephone Consumer Protection Act ("TCPA") prohibits the use of telephone facsimile machines, computers, or other devices to send unsolicited advertisements to telephone facsimile machines. (*See id.* ¶ 30 (quoting 47 U.S.C. § 227(b)(1))). An "'unsolicited advertisement'" is "'any material advertising the commercial availability or quality of any property, goods, or services, which is transmitted to any person without that person's [prior] express invitation or permission.'" (*Id.* ¶ 31 (quoting 47 U.S.C. § 227(a)(5))).[3] The TCPA allows for a private right of action to recover $500 for each violation, as well as discretionary treble damages. (*See id.* ¶¶ 32, 33). Defendants violated the TCPA by sending advertising faxes to Aventura and the other members of the class without first obtaining their express permission and by not displaying the proper opt out notice. (*See id.* ¶ 34). On these facts, Aventura seeks an order that it be allowed to maintain the action as a class

[2] The Complaint incorrectly cites to "64 C.F.R. 1200." (*Id.* ¶ 21).

[3] The Complaint incorrectly cites to "47 U.S.C. § 227(a)(4)." (*Id.* ¶ 21).

action, an award of $500 in damages for each TCPA violation, an injunction prohibiting Defendants from engaging in these statutory violations, and further relief not to exceed $75,000 per individual. (*See id.* p. 9).

In Count II for "Conversion" Aventura alleges by sending it and other class members unsolicited faxes, Defendants improperly converted the class members' fax machines, toner and paper, as well as the class members' employees' time, to Defendants' own use. (*See id.* ¶ 43). Aventura similarly prays that the case be maintained as a class action, damages for each act of conversion not to exceed $75,000 per individual, an injunction prohibiting future violations, costs and fees. (*See id.* p. 12).

**B. Class Certification Record**[4]

*i. Facts Highlighted by Aventura*

The Motion proposes the following class definition: "All Persons who were sent one or more facsimiles in May 2010 from 'MedWaste Management' with the phone number '888-431-6386' and offering 'Guaranteed 20% Savings.'" (Mot. 1). According to Aventura, Defendants' advertisements were sent to approximately 60,000 unique facsimile numbers in Florida, New York, New Jersey, and neighboring areas. Plaintiff gleans this information from the deposition of Robert Martino of the company AdverFax, which sells fax lists and fax systems. Pursuant to a contractual arrangement, in November 2009, Defendants purchased from AdverFax a list of 40,000 fax numbers for medical businesses in the states mentioned. AdverFax took the 40,000 numbers sold and merged those with another 20,000 numbers Defendants already had,

[4] "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule — that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc. . . . [S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original; internal quotation marks and citation omitted; alteration added).

Case 1:12-cv-21695-CMA Document 111 Entered on FLSD Docket 05/21/13 11:45:36 Page 4 of 17


presumably obtained from another fax list provider similar to Adverfax. Defendants paid Martino $1,000 for the 40,000 fax numbers and a monthly fee of $100 for servicing the fax system used to send faxes to the 60,000 numbers on the combined list.

During Defendants' fax campaign, Martino was called on ten to fifteen occasions to assist in scheduling the times the faxes would be sent. According to Aventura, the number of faxes sent equals the number appearing on the list. In response to the question, "Do you have any information as to the quantity of faxes he [Prager] sent out?," Martino responded, "Just what is on that list, probably, is all I am aware of." (Dep. of Robert Martino, p. 21:22–25 [ECF No. 101-2]). Defendants would also send faxes to the numbers on the list over and over again, re-using the list to send multiple faxes to each number on the list with the assistance of a fax software program known as ActiveFax. Prior express permission was never given by the targeted companies before the faxes were sent. In other words, Defendants ordered a wholly blind solicitation. The list obtained from Martino in discovery identifies the potential class members and the advertisements they were sent. Lastly, the advertisements sent by Defendants by facsimile, all unsolicited and identical, did not contain required language regarding a recipient's ability to unsubscribe.

In contrast to Martino's deposition testimony, Prager states it was Martino who sent the fax advertisements on behalf of Med Waste. At Prager's deposition, the following exchange took place:

Q. Do you have an understanding of what he [Martino] did with it after he received it?
A. I can tell you what he told me he would do.
Q. Which was?
A. He would fax it to people.

(Dep. of Avrohom Prager, 48:23–49:5 [ECF No. 108-1]) (counsel's objections deleted). Each man states the other is guilty of sending the fax advertisements.

Aventura's fax number is admittedly not on the list of 60,000 numbers. But that list of 60,000 numbers — which Aventura suggests should be used as the basis to identify class members — is the final version of the list of fax numbers Martino compiled for Prager. On a hard drive obtained by Aventura, multiple files exist containing earlier versions of the list of faxes, and Aventura's fax number appears on three of the files along with the rest of the numbers. According to Aventura, the reason for the omission of the Aventura number from the final version is that Aventura requested that its number be removed from the fax list, and this is confirmed by the final list. Furthermore, Aventura suggests a computer reconciliation of the versions of the list may be made to determine the full universe of fax numbers Defendants' advertisement was sent to before any notice to the class is sent out.

*ii. Facts Highlighted by Defendants*

Defendants take issue with the factual record portrayed by Aventura. Defendants insist the agreement Med Waste had with AdverFax was simply for the purchase of a list of 43,480 facsimile numbers and for the installation and servicing of certain facsimile software. Med Waste did not contract with AdverFax or Martino to disseminate the facsimiles. As to the final list, Martino could not confirm what it represented and was unclear about the origin of the 20,000 additional numbers, speculating Defendants purchased those additional numbers from FaxVantage. Defendants also state Martino denied sending facsimiles on behalf of Defendants, and Prager denied sending them too. According to Defendants, there is no connection between the list and Med Waste and/or Prager.

The facsimile advertisements Aventura has produced indicating were received by it on May 12 and/or May 14, 2010, do not show the date and/or time of transmission. Although these dates are alleged in the Amended Complaint, Aventura in fact has no information corroborating these precise dates of receipt. Further, Aventura's principal does not even know when they were received.

In addition to the blast faxing accomplished with the assistance of AdverFax, Med Waste utilized a program known as "eFax" to disseminate copies of Med Waste's advertisement to its customers or potential customers, but only when these requested information about Med Waste's services. Aventura's proposed class makes no distinction between the members who received facsimiles from Med Waste as part of the alleged "blast faxing" campaign and those who received solicited facsimiles. Admittedly, Prager did send Med Waste's advertisement to Martino of AdverFax.

According to Defendants, "the evidence reflects that Defendants did *not* send facsimiles to the numbers on this list, and there is no evidence to the contrary." (Mem. of Law in Opp'n, 7 [ECF No. 107] (emphasis in original)). Because Aventura has no evidence that facsimiles were actually sent to any of the numbers on the list, Defendants assert the list is meaningless.

## II. STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2550 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "Questions concerning class certification are left to the sound discretion of the district court." *Cooper v. Southern Co.*, 390 F.3d 695, 711 (11th Cir. 2004) (citing *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1386 (11th Cir. 1998)), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006). With

this "great power comes great responsibility; the awesome power of a district court must be 'exercised within the framework of [Federal Rule of Civil Procedure] 23.'" *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)). Thus, to be entitled to class certification, the party seeking certification must have standing and meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as the requirements of at least one subsection of Federal Rule of Civil Procedure 23(b). *See Klay*, 382 F.3d at 1250.

Rule 23(a) "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart*, 131 S. Ct. at 2550. Under Rule 23(a), the party seeking class certification has the burden of showing that the four requirements of numerosity, commonality, typicality, and adequacy of representation are satisfied. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). Rule 23(a) provides one or more members of a class may sue as representative on behalf of all members if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

The class must also satisfy one of the three additional requirements of Rule 23(b). Aventura asserts a class is appropriate under Rule 23(b)(3). Rule 23(b)(3) provides certification is available if the Court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance inquiry . . . is far more demanding than Rule 23(a)'s commonality requirement." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (citation and internal

quotation marks omitted).

In examining whether the party seeking certification has satisfied the requirements of Rule 23, the Eleventh Circuit has counseled that "[a]lthough the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 n.15 (11th Cir. 2003) (citation omitted). Indeed, the Supreme Court recently acknowledged "'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 161 (1982)).

## III. ANALYSIS

### A. The Telephone Consumer Protection Act

The TCPA makes it unlawful to "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" unless certain exceptions apply. 47 U.S.C. § 227(b)(1)(C). A fax is an "unsolicited advertisement" if it advertises "the commercial availability or quality of any property, goods, or services" and is transmitted without the recipient's "prior express invitation or permission." *Id.* § 227(a)(5). Where the "unsolicited advertisement is from a sender with an established business relationship with the recipient," or "the sender obtained the number of the telephone facsimile machine through -- the voluntary communication of such number . . . from the recipient of the unsolicited advertisement, or a directory, advertisement, or site on the Internet to which the

recipient voluntarily agreed to make available its facsimile number for public distribution," and the "unsolicited advertisement contains a notice meeting the" statutory requirements, no violation occurs. *Id.* § 227(b)(1)(C)(i)–(iii) (numeration omitted).

A "telephone facsimile machine" is equipment having the capacity "(A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." *Id.* § 227(a)(3). A "person or entity" may bring "an action based on a violation" to "enjoin such violation," "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater," or "both such actions." *Id.* § 227(b)(3)(A)–(C). The TCPA does not preclude class relief. *See Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'ns, L.P.*, 329 F. Supp. 2d 789, 803 (M.D. La. 2004).

**B. Class Certification**

Defendants raise several objections to Aventura's request for certification of a TCPA class.[5] First, Defendants challenge the proposed class definition, asserting it is overly broad in that it uses the entire month of May 2010 as the applicable time period covering the offending conduct, whereas Aventura has only identified (and with meager factual support according to Defendants), the dates of May 12 and May 14, 2010 as the dates on which it received the facsimiles. Any class definition should be so limited as well, argue Defendants. Furthermore, the class definition does not distinguish between recipients who consented to receiving facsimile advertisements and those who did not; as to this defect there is presumably no cure. Also, any class definition should limit class membership to those who owned the facsimile machines that received the fax advertisements. Last, Defendants assert any class should be limited to Florida

[5] Aventura does not seek certification of a class on its conversion claim.

residents.

Second, Defendants assert that as Aventura has no evidence that Defendants actually sent facsimiles to the numbers on the list, Aventura cannot establish numerosity on the basis of its singular receipt of advertisements from Med Waste. Third, Defendants challenge Aventura's showing as to commonality, again stating that individual questions exist as to whether each fax was unsolicited, whether Defendants had existing business relationships with facsimile recipients which would make the challenged conduct legal, and the absence of evidence that facsimiles were actually sent as there is no fax log showing transmissions or expert opinion on the subject. Defendants challenge Aventura's showing as to typicality, given that Aventura's number is not even on the final list. Defendants also maintain Aventura cannot fairly and adequately protect the interests of the class as its evidence on this requirement is meager, Aventura's Rule 30(b)(6) representative was charged with commission of a fraud crime to which he pleaded guilty, and Plaintiff's counsel has in the past been found by at least one other court to have engaged in unprofessional conduct and "questionable conduct" in mailing out certain TCPA class solicitation letters. (Mem. in Opp'n, 15). Finally, Defendants challenge Aventura's ability to satisfy Rule 23(b)(3).

The Court limits its discussion to Defendants' objections to Aventura's proposed class definition, as those objections prove fatal to the requested certification. "[A] plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (internal quotation marks and citations omitted). The adequacy of the class definition may be considered either before analyzing the Rule 23(a) requirements, or as a part of the numerosity inquiry. *See, e.g., Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003)

Case 1:12-cv-21695-CMA Document 111 Entered on FLSD Docket 05/21/13 11:45:36 Page 11 of 17


(analyzing class definition as a separate question prior to analyzing the Rule 23(a) prerequisites) (citing *Mauldin v. Wal-Mart Stores, Inc.*, No. 01-CV-2755, 2002 WL 2022334, at *5 n.2 (N.D. Ga. Aug. 23, 2002) (court noted that adequacy of class definition may be considered as part of numerosity inquiry although courts have found it to be a separate question)).

As stated, Aventura proposes a class defined as "All persons who were sent one or more facsimiles in the month of May 2010 from Med Waste with the phone number 888-431-6386 offering 'Guaranteed 20% Savings.'" Defendants' objection to the month of May as the operative period rather than the two specific dates in May that Aventura alleges (but does not know whether) it received the Med Waste advertisements does not raise a defect in the proposed definition. Martino testified that it would take around fifteen days to send 60,000 faxes; consequently, a definition that isolates two particular days of the month, as Defendants suggest, is inconsistent with the evidence gathered in the case. Selecting the month of May 2010 provides an "objective standard" by which membership in the class can be ascertained. *Neumont v. Monroe Cnty., Fla.*, 198 F.R.D. 554, 557 (S.D. Fla. 2000) (internal quotation marks and citation omitted).

The next objection Defendants raise to the proposed definition, to which they assert there is no cure, *see Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (defect in definition where plaintiff "has simply incorporated the language of the statutory prohibition into its class definition"), is that it does not distinguish between recipients who may have consented to the advertisements and those who did not. The issue of consent has been successfully raised in other cases to prevent certification of a TCPA class, and similarly works here to bar certification. To prevail on its TCPA claim, Aventura must show Med Waste used a telephone facsimile machine, computer or other device to send a facsimile; the facsimile was unsolicited;

and the facsimile contained an advertisement. *See Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 805 (N.D. Ill. 2008) (citation omitted). Consent to the receipt of advertisements may be by express invitation or by permission in writing or otherwise. *See* 47 U.S.C. § 227(a)(5).

In *Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318 (5th Cir. 2008), the court addressed the different outcomes where consent has been raised as an issue in opposition to requested certification of a TCPA class. In its review of the case law, the *Biopay* court sought to identify the factor or factors that guided courts' decisions to grant or deny certification where defendants raised the issue of consent:

> In *Forman v. Data Transfer, Inc.*, Forman moved for the certification of a class composed of "all residents and businesses who . . . received unsolicited facsimile advertisements" within a given period. 164 F.R.D. 400, 402 (E.D. Pa. 1995). The *Forman* court, in denying class certification, noted that the gravamen of Forman's complaint was not a "common course of conduct" by Data Transfer but "a series of individual transmissions under individual circumstances, each of which is an alleged violation of the statute." *Id.* at 404. . . .
>
> In contrast, in *Kavu v. Omnipak Corp.*, Kavu moved for the certification of a class composed of "[a]ll persons who received an unsolicited advertisement . . . via facsimile from [Omnipak]" within a given period. 246 F.R.D. 642, 645 (W.D. Wash. 2007). . . . [T]he *Kavu* court determined that in its case the question of consent presented would not require "individual evidence." *Id.* [at 647]. This was true because Omnipak had obtained all of the fax recipients' fax numbers from a single purveyor of such information and because, given this fact, Kavu was able to propose a novel, class-wide means of establishing the lack of consent based on arguably applicable federal regulations. *Id.* (citing 47 C.F.R. § 64.1200(a)(3)(ii)(B), which indicates that if a "sender obtains the facsimile number from a [commercial database], the sender must take reasonable steps to verify that the recipient agreed to make the number available for distribution"). The common question in *Kavu* was thus whether the inclusion of the recipients' fax numbers in the purchased database indicated their consent to receive fax advertisements, and there were therefore no questions of individual consent. *Id.*; *see also Hinman v. M and M Rental Ctr.*, 2008 WL 927910, at *4 (N.D. Ill. Apr. 7, 2008) (granting class certification on similar grounds).

*Id.* at 327–28 (some alterations added). In *Biopay* the court concluded that while TCPA claims are not unsuitable for class resolution, "the unique facts of each case generally will determine

whether certification is proper." *Id.* at 328. Under the particular facts of *Biopay*, the issue of consent posed an obstacle to class certification because recipients' fax numbers were collected over time and from a variety of sources, necessitating individual inquiries of the recipients to determine which transmissions were consented to and which were not. *Id.*

Similar to the review conducted in *Biopay*, the court in *Saf-T-Gard International, Inc. v. Wagener Equities, Inc.*, contrasted the contours of a successful consent defense to class certification to an unsuccessful consent defense. 251 F.R.D. 312 (N.D. Ill. 2008). The *Saf-T-Gard International* court noted that in *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 489360, at *3 (N.D. Ill. Feb. 20, 2008), for example, the proposed class definition was found to be indefinite because the issue of consent would require the court to probe on a case-by-case basis into the merits of the case and the relationship between the plaintiff and defendants. *See Saf-T-Gard International*, 251 F.R.D. at 314. *Hinman* was the contrasting example, for there, a "leads" list complied by a third party was used to send out thousands of faxes, and given the nature of such an organized program of fax advertising, consent likely presented a common issue rather than an individual one. *Saf-T-Gard International*, 251 F.R.D. at 314–15 (citing *Hinman*, 545 F. Supp. 2d at 806–07). Similar to *Hinman* were the facts developed in *Saf-T-Gard International*, where faxes were sent on defendant's behalf to tens of thousands of recipients unknown to the defendant. *Id.* at 315.

*CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009), found class certification appropriate where there was no evidence that defendants "commingled fax logs for different clients," *id.* at 142, and "it appear[ed] that defendants were not involved in the collection of the fax numbers at all but rather contracted . . . to conduct the operation," *id.* at 143. Because defendants "took no steps to verify consent but rather simply placed the order for the

fax broadcast," *id.*, whether recipients consented to the fax advertisements did not present questions requiring individualized proof. Similarly, in *Manno v. Healthcare Revenue Recovery Group, LLC*, No. 11-61357, 2013 WL 1283881, at *8 (S.D. Fla. Mar. 26, 2013), a TCPA case addressing restrictions on debt collectors' phone communications similar to the statutory restrictions on fax advertising, because records collected in discovery showed putative class members did not communicate with the defendant before the defendant called them to collect debts, "there is no way those class members could have provided consent." Consequently, "the Court will not have to inquire as to whether each putative class member may be subject to an independent consent defense." *Id.*

In contrast, other courts found that the issue of consent "would have to be determined on an individual basis at trial" where class treatment was sought in suits bringing TCPA claims over debt collectors' communications with debtors. *See Hicks v. Client Servs., Inc.*, No. 07-61822-CIV, 2008 WL 5479111, at *8 (S.D. Fla. Dec. 11, 2008); *see also Balthazor v. Cent. Credit Servs., Inc.*, No. 10-62435, 2012 WL 6725872 at *4 (S.D. Fla. Dec. 27, 2012) ("Resolution of each putative class member's TCPA claim would necessarily involve an individual assessment of whether each class member consented to receive telephone calls on their cellular telephone." (footnote call number omitted)).

As the unique facts of each case will guide the determination of whether individualized questions regarding consent will make class certification inappropriate, the Court now turns to the present record. First, Aventura has been able to confirm that Defendants purchased a list of fax numbers from Martino numbering approximately 40,000, and these numbers are commingled in a list of approximately 60,000 numbers. Assuming from the shifting testimony of Martino and Prager that faxes were sent by one or the other of these men to the numbers on that list (or a

variation of that list), this would appear to make this case similar to the cases where consent did not pose a hurdle to class treatment because the identities of the fax recipients were purchased from a third party. But while Defendants have not shown that any of the parties owning the numbers on that list gave consent to receiving fax advertisements from Med Waste, Defendants presented evidence that many customers or potential customers asked for information about Med Waste, and some of those may be among the 40,000 numbers purchased, which consist of numbers for companies likely to use Med Waste's services.

More problematic for Aventura is that the universe of potential class members also includes approximately 20,000 other owners of numbers *perhaps* acquired by Defendants from another fax advertising company; although Martino's testimony on this point is not certain. It is not altogether clear what the additional 20,000 numbers represent, nor how they were gathered by Prager before being given to Martino. Further, according to Defendants, Prager sent Med Waste's advertisement to Med Waste's business associates, family, friends, and Martino, and disseminated the advertisements by facsimile to customers and potential customers who requested information about Med Waste's services. The individualized inquiry necessitated by the element of consent is not erased merely by Aventura's assertion that much of the activity targeting customers took place through Med Waste's eFax program rather than through blast-faxing. The combination of the 40,000 purchased numbers with the 20,000 "other" numbers whose origin is unknown does not support the conclusion that individual questions regarding consent will not arise should a class be certified. And Aventura has not proposed a way to narrow the list to the 40,000 acquired from Martino's company and cross-check that Med Waste customers or potential customers (of whom there is no written list) do not appear on that narrowed list.

Similar to consent, the TCPA contains an "established business relationship" safe harbor provision, 47 U.S.C. section 227(b)(1)(C) (the "EBR Safe Harbor"), pursuant to which a sender may send an otherwise "unsolicited advertisement" where several criteria are satisfied, including that "the unsolicited advertisement is from a sender with an established business relationship with the recipient," *id.* § 227(b)(1)(C)(i), and "the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D)," *id.* § 227(b)(1)(C)(iii). Again, Defendants have presented evidence that they sent facsimile advertisements to their customers and potential customers. While Aventura challenges the sufficiency of the notice required to satisfy the EBR Safe Harbor in Med Waste's advertisements, whether Defendants satisfy the EBR Safe Harbor as to each of the potential class members is an individualized question precluding class treatment.

Given the insurmountable problem posed by the list of fax numbers presented by Aventura as identifying the universe of potential class members, and whether any of the owners of those numbers consented to receipt of the fax advertisements or had established business relationships with Defendants, the Court does not address the remaining objections to the proposed class definition.

## IV. CONCLUSION

"A court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." *Metabolife Int'l Inc.*, 218 F.R.D. at 269 (citations omitted). Because certification of the class proposed by Aventura will require the Court to examine whether any of the owners of the numbers on the 60,000 list of fax numbers either consented to receipt of Defendants' fax advertisements or had an established business relationship with Aventura, class treatment does not offer a superior method for dealing

with the TCPA claim raised in the Amended Complaint. It is therefore **ORDERED AND ADJUDGED** that Plaintiff, A Aventura Chiropractic Center, Inc.'s Motion for Class Certification **[ECF No. 101]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 21st day of May, 2013.

Cecilia M. Altonaga

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record