# EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| A AVENTURA CHIROPRACTIC CENTER, INC., individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | Case No. |
| v. | ) | |
| JAMES RIVER INSURANCE COMPANY and MED WASTE MANAGEMENT, LLC, a New York limited liability company, | ) | |
| Defendants. | ) | |

**<u>COMPLAINT FOR DECLARATORY RELIEF</u>**

Now comes plaintiff A Aventura Chiropractic Center, Inc. ("A Aventura" or "Plaintiff") and seeks a declaration that the insurance policy issued by Defendant James River Insurance Company ("James River") to Med Waste Management, LLC ("Med Waste") obligates James River to defend and indemnify Med Waste in the lawsuit brought by A Aventura and the class it represents against Med Waste. In support, A Aventura alleges as follows:

**<u>NATURE OF ACTION</u>**

1. This is an action for declaratory relief.

2. A Aventura seeks a declaration by this Court concerning the rights and obligations under the insurance policies issued by James River to Med Waste.

**<u>PARTIES</u>**

3. Plaintiff is a Florida corporation with principal place of business in Florida.

4. On information and belief, James River is a Virginia insurance company with its principal place of business in Virginia.

5. Med Waste is a New York limited liability company with principal place of business in New York

**JURISDICTION AND VENUE**

6. Jurisdiction is proper pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000. Moreover, A Aventura is the representative of a certified class who settled the underlying action with Med Waste for a total of $10,000,000.00. Therefore, 28 U.S.C. §1332(d) applies.

7. Venue is proper in this Court because the Underlying Action took place in this Court and therefore a substantial part of the events giving rise to this action occurred in this judicial district.

**THE UNDERLYING ACTION**

8. On May 4, 2012, A Aventura filed a civil class action in this Court captioned *A Aventura Chiropractic Center, Inc. v. Med Waste Management, LLC*, Case No. 1:12-CV-21695 (the "Underlying Action"). The operative pleading in the Underlying Action is the Second Amended Complaint (the "Underlying Complaint"). The Underlying Complaint is attached as Exhibit A.

9. In the Underlying Action, A Aventura seeks relief on behalf of itself and a class of similarly situated plaintiffs who also received unsolicited facsimiles from Med Waste.

10. The Underlying Complaint alleged that Med Waste violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and common law conversion by sending unsolicited facsimiles to Plaintiff and at least 50 others.

11. The Underlying Complaint alleged that Med Waste knew or should have known that (a) Plaintiff and the other class members had not given express invitation or permission for

Med Waste or anybody else to fax advertisements about Med Waste's goods or services, (b) that Plaintiff and the other class members did not have an established business relationship, and (c) that the fax is an advertisement.

12. The Underlying Complaint further alleges that Med Waste knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization.

13. The Underlying Complaint further alleges that Med Waste was liable to Plaintiff even if its actions were only negligent.

14. Med Waste tendered the defense of the Underlying Action to James River, and James River declined the tender and disclaimed coverage. James River's denial correspondence is attached as Exhibit B.

15. On July 3, 2013, the Court certified the following class in the Underlying Action: "All persons who were sent one or more facsimiles in May 2010 from 'Med Waste Management' with the phone number '888-431-6386' and offering 'Guaranteed 20% Savings.'" The class certification order is attached as Exhibit C.

16. On October 1, 2013, Plaintiff and Med Waste reached a classwide settlement to resolve the Underlying Action.

**Med Waste's James River Policies**

17. Upon information and belief, James River issued insurance policies that provided liability coverage to Med Waste (the "Policies"). Upon information and belief, one such policy is numbered 00041766-0 and covers the period from January 13, 2010 through January 13, 2011 (the "Policy"). The Policy is attached as Exhibit D.

18. To the extent that discovery in this action establishes that there are additional policies, or that there are different, or additional, terms in the Policies, Plaintiff reserves the right to amend its Complaint to reflect the new information or evidence.

**COVERAGE FOR THE CLAIMS IN THE UNDERLYING ACTION**

19. Upon information and belief, the Policies offer coverage for damages because of "property damage" and "advertising injury." The "property damage" coverage includes both coverage under the policy's general aggregate limits and "products-completed operations" coverage, which has a separate policy limit.

**I. Property Damage (Including Products-Completed)**

20. Upon information and belief, the Policies offer coverage to Med Waste for its liability for property damage "caused by an 'occurrence' that takes place in the 'coverage territory'" during the policy period.

21. Upon information and belief, the Policies define property damage as "a. Physical injury to or destruction of tangible property, including all resulting use of that property. … or b. Loss of use of tangible property that is not physically injured. …"

22. Upon information and belief, the Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions."

23. Upon information and belief, the Policies define "coverage territory" as including "a. The United States of America…"

24. Plaintiff and the other members of the class received unsolicited facsimiles from Med Waste during the policy periods of the Policies.

25. The unsolicited facsimiles were sent by Med Waste and received by Plaintiff and the other putative class members within the United States.

Case 1:23-cv-01357-JMM Document 1 Filed 05/28/26 FLSD Docket 10/08/2013 Page 5 of 8

26. The unsolicited facsimiles Plaintiff and the other putative class members received physically injured their personal property, including but not limited to fax toner and paper.

27. The unsolicited facsimiles Plaintiff and the other putative class members received caused them to lose the use of their personal property, including but not limited to the use of their fax machines during the fax transmissions.

28. To the extent not sent with a specific intent to wrongfully take possession of Plaintiff's and other class members' property, or to violate the TCPA, the unsolicited facsimiles meet the policy definition of "accident"—which, on information and belief, the Policies do not define.

29. Upon information and belief, the Policies offer coverage to Med Waste for its liability for property damage both included and not included within the "products-completed operations hazard."

30. Upon information and belief, the Policies define "products-completed operations hazard" as including all "'property damage' arising out of 'your product' or 'your work' except products that are still in your physical possession or work that has not yet been completed or abandoned. The…'property damage' must occur away from premises you own or rent…."

31. Upon information and belief, the Policies define "your product" as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by (a) you; [or] (b) others trading under your name...."

32. Upon information and belief, the Policies' definition of "your product" explicitly "[i]ncludes: (1) [w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of" "your product."

33. Upon information and belief, the Policies define “your work” as “(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations.”

34. Upon information and belief, the Policies’ definition of “your work” explicitly “[i]ncludes: (1) [w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of” “your work.”

35. The property damage caused by Med Waste’s unsolicited facsimiles occurred at the premises of Plaintiff and the other class members.

36. The unsolicited facsimiles were goods distributed by Med Waste or someone acting in Med Waste’s name.

37. Med Waste’s fax program was part of its operations and was undertaken by Med Waste or on its behalf.

38. The unsolicited facsimiles were materials furnished in connection with Med Waste’s operations.

39. The unsolicited facsimiles contained representations made about fitness, quality, durability, and/or performance of Med Waste’s goods.

40. Therefore, property damage caused by the unsolicited facsimiles is covered under the Policies’ products-completed operations hazard.

**II. Advertising Injury**

41. Upon information and belief, the Policies offer coverage to Med Waste for its liability for advertising injury “caused by an ‘occurrence’ committed in the ‘coverage territory’ during the policy period” that was “committed in the course of advertising your goods, products or services.”

42. Plaintiff repeats and realleges the allegations contained in Paragraphs 21-23.

43. Upon information and belief, the Policies define “occurrence” in the context of “advertising injury” as “the commission of an offense, or a series of similar or related offenses, which results in…‘advertising injury.’”

44. Upon information and belief, the Policies define “advertising injury” as including “injury ... arising out of … [o]ral or written publication of material that violates a person’s right of privacy.”

45. Med Waste’s transmission of unsolicited facsimiles arose out of its business.

46. Med Waste’s transmission of unwanted unsolicited facsimiles to Plaintiff and the other putative class members constitutes the publication of material that violates Plaintiff’s and the other putative class members’ right of privacy.

47. The contentions of A Aventura in Paragraph 44 are, on information and belief, denied by James River who, in turn, contends that Med Waste is not entitled to defense or indemnity under the Policies in the Underlying Action. A Aventura, in turn, denies the contrary contentions of James River and each of them.

46. By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or Order of this Court. This Court has the power to declare and adjudicate the rights and liabilities of the parties.

WHEREFORE, Plaintiff, A AVENTURA CHIROPRACTIC CENTER, INC., individually and as the representative of a certified class, prays that this Court enter an order as follows:

A) Declaring that the Policies required James River to defend Med Waste in the Underlying Action;

Case 1:13-cv-23670-JEM Document 1 Entered on FLSD Docket 10/08/2013 Page 8 of 8

B) Declaring that the Policies require James River to indemnify Med Waste for a judgment entered against it in the Underlying Action; and

C) Awarding A Aventura, individually and on behalf of the class, its costs and such further relief as the Court deems appropriate.

By: /s Ryan M. Kelly
Ryan M. Kelly Florida Bar No.90110

ANDERSON + WANCA
Ryan M. Kelly
Brian J. Wanca (*of counsel*)
David M. Oppenheim (*of counsel*)
Jeffrey A. Berman (*of counsel*)
3701 Algonquin Rd., Suite 760
Rolling Meadows, IL 60008
(847) 436-0598 (phone)
(847) 368-1501 (fax)

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

A AVENTURA CHIROPRACTIC CENTER, INC., individually and on behalf of all others similarly situated,

Plaintiff,

v.

MED WASTE MANAGEMENT LLC, a New York limited liability company, AVROHOM PRAGER, MEIR SINGER, JONHATHAN SCHLESINGER, and JOHN DOES 1-10,

Defendants.

Case No. 1:12-cv-21695

Judge Cecilia M. Altonaga

Magistrate Andrea M. Simonton

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiff, A AVENTURA CHIROPRACTIC CENTER, INC. ("Plaintiff"), brings this action on behalf of itself and all other persons similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendants, MED WASTE MANAGEMENT LLC, AVROHOM PRAGER, MEIR SINGER, JONHATHAN SCHLESINGER, and JOHN DOES 1-10 (collectively, "Defendants").

**PRELIMINARY STATEMENT**

1. This case is a consumer class action related to Defendants' practice of faxing unsolicited advertisements.

2. The federal Telephone Consumer Protection Act, 47 U.S.C. § 227, prohibits a

person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission. The TCPA provides a private right of action and provides statutory damages of $500.00 per violation.

3. Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

4. On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against the Defendants under the TCPA and for Common Law Conversion.

5. Plaintiff seeks an award of statutory damages, individually and on behalf of the Class, for each violation of the TCPA and for damages under common law conversion.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

7. Venue in this district is proper because Defendants committed a statutory tort in Florida and within this judicial district.

**PARTIES**

8. On information and belief, Plaintiff is a Florida corporation with its principal

place of business in Miami, Florida.

9. On information and belief, Defendant OPAL MANAGEMENT LLC, was and is at all relevant times, a New Jersey limited liability company which owns the website for Defendants MED WASTE MANAGEMENT LLC, and has a primary place of business in Lakewood, New Jersey. Defendants OPAL MANAGEMENT LLC has common ownership with Defendant MED WASTE MANAGEMENT LLC.

10. On information and belief, Defendant, MED WASTE MANAGEMENT LLC, is a New York limited liability company, organized under the laws of the State of New York with its principal place of business in Brooklyn, New York.

11. Defendants AVRONHOM PRAGER, MEIR SINGER, JONHATHON SCHLESINGER (collectively individual Defendants) are members, managers, and chief executive officers of Defendants OPAL MANAGEMENT LLC.

12. On information and belief, the individual Defendants are owners and control Defendants OPAL MANAGEMENT LLC and MED WAST MANAGEMENT LLC, who approved, authorized, and participated in the scheme to broadcast advertisements by facsimile (a) by directing a list to be purchased or assembled , (b) directing and supervising employees to set up computers and software to send thousands of advertisements by fax, (c) creating or approving this form of advertisements to be sent, (d) determining the number and frequency of the facsimile transmissions, and (e) approving or paying employees to send the advertisements by facsimile.

13. Defendants, JOHN DOES 1-10, will be identified in discovery but are not presently known.

## FACTS

14. On or about May 12, 2010 and/or May 14, 2010, Defendants transmitted by telephone facsimile machine a facsimile to Plaintiff. A copy of that facsimile is attached hereto as Exhibit A.

15. Defendants created or made Exhibit A which Defendants knew or should have known is a good or product which Defendants intended to and did in fact distribute to Plaintiff and the other members of the class.

16. Defendants sent the same form facsimile to the entire class. Defendants' facsimile was successfully sent to Plaintiff and more than 50 other recipients.

17. Exhibit A is a part of Defendants' work or operations to market Defendants' goods or services which was performed by Defendants and on behalf of Defendants. Therefore, Exhibit A constitutes material furnished in connection with Defendants' work or operations.

18. Plaintiff had not invited or given permission to Defendants to send faxes.

19. There is no reasonable means for Plaintiff (or any other Class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

20. On information and belief, Defendants faxed the same or similar unsolicited facsimiles to Plaintiff to more than fifty (50) other persons without first receiving the recipients' express permission or invitation.

21. Defendants' facsimiles did not display a proper opt out notice as required by 64 C.F.R. 1200.

**COUNT I**

**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

22. Plaintiff, on behalf of itself and all others similarly situated, incorporates Paragraphs 1 through 18 as though fully set forth herein, as and for its Paragraph 19.

23. In accordance with Fed. R. Civ. P. 23, Plaintiff brings Count I pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain prior express permission or invitation to send those faxes, (4) with whom Defendants did not have an established business relationship (the "Class"), and (5) which did not display a proper opt out notice.

Excluded from the Class are Defendants, their officers, directors, employees, agents, and the members of the Judiciary.

24. A class action is warranted because:

25. Numerosity [Fed. R. Civ. P. 23(A)(1)]. The class includes more than fifty (50) persons and, therefore, is so numerous that individual joinder would be impracticable.

26. Commonality [Fed. R. Civ. P. 23(A)(2)]. Common questions of law and fact apply to the claims of all class members, including but not limited to the following:

(i) Whether Defendants sent unsolicited fax advertisements;

(ii) Whether Defendants' facsimiles advertised the commercial availability of property, goods, or services;

(iii) The manner and method Defendants used to compile or obtain the list of fax numbers to which they sent Exhibit A and other unsolicited faxed advertisements;

(iv) Whether Defendants faxed advertisements without first obtaining the recipients' express permission or invitation;

(v) Whether Defendants violated the provisions of 47 U.S.C. § 227;

(vi) Whether Plaintiff and the other class members are entitled to statutory damages;

(vii) Whether Defendants should be enjoined from faxing advertisements in the future;

(viii) Whether the Court should award treble damages; and

(ix) Whether Exhibit A and the other advertisements displayed the proper opt out notice required by 64 C.F.R. 1200.

27. Typicality [Fed. R. Civ. P. 23(a)(3)]. Plaintiff's claims are typical of the claims of all class members. Plaintiff received a facsimile sent by or on behalf of Defendants that advertised Defendants' goods and services during the Class Period. Plaintiff is making the same claims and seeks the same relief for itself and all class members based on the same federal statute, and Defendants have acted in the same or in a similar manner with respect to Plaintiff and all the class members.

28. Fair and Adequate Representation [Fed. R. Civ. P. 23(a)(4)]. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the

Class.

29. Predominance and Superiority [Fed. R. Civ. P. 23(b)(3)]. Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions. As discussed above, common legal issues predominate because the class members' claims arise under the same federal statute, *i.e.* 47 U.S.C. § 227. Common fact issues also predominate. Rule 23(b)(3) also requires that a class action be the superior method for adjudicating the claims. Certifying a class is the "superior" way where, as here, the class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

30. The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227(b)(1).

31. The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

32. The TCPA provides:

> 3. Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

> (A) An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) Both such actions.

33. The Court, in its discretion, can treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

34. Defendants violated 47 U.S.C. § 227, *et seq.* by sending advertising faxes (such as Exhibit A) to Plaintiff and the other members of the Class without first obtaining their prior express invitation or permission and by not displaying the proper opt out notice required by 64 C.F.R. 1200.

35. The TCPA is a strict liability statute, so Defendants are liable to Plaintiff and the other class members even if their actions were only negligent.

36. Defendants knew or should have known that (a) Plaintiff and the other class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods or services, (b) that Plaintiff and the other class members did not have an established business relationship, and (c) that Exhibit A is an advertisement.

37. Defendants' actions caused damages to Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, Defendants' faxes used Plaintiff's fax machine, cost Plaintiff time that was wasted receiving, reviewing and routing Defendants'

unauthorized faxes that otherwise would have been spent on Plaintiff's business activities, and unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone.

WHEREFORE, Plaintiff, A AVENTURA CHIROPRACTIC CENTER, INC., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, MED WASTE MANAGEMENT LLC, AVROHOM PRAGER, MEIR SINGER, JONHATHAN SCHLESINGER, and JOHN DOES 1-10, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award $500.00 in damages for each violation of the TCPA;

C. That the Court enter an injunction prohibiting Defendants from engaging in the statutory violations at issue in this action; and

D. That the Court award costs and such further relief as the Court may deem just and proper, but in any event, not more than $75,000.00 per individual, inclusive of all damages and fees.

**<u>COUNT II</u>**

**CONVERSION**

38. Plaintiff, on behalf of itself and all others similarly situated, incorporates Paragraph 3, and 6 through 16 as though fully set forth herein, as and for its Paragraph 34.

39. In accordance with Fed. R. Civ. P. 23, Plaintiff brings Count II for conversion under the common law for the following Class of persons:

> All persons who on or after a date of four years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendants.

40. A class action is proper in that:

(a) On information and belief, the Class consists of fifty or more persons and is so numerous that joinder of all members is impracticable.

(b) There are questions of fact or law common to the Class predominating over questions affecting only individual Class members, including:

(i) Whether Defendants engaged in a pattern of sending unsolicited faxes;

(ii) The manner and method Defendants used to compile or obtain the list of fax numbers to which they sent Exhibit A and other unsolicited faxes; and

(iii) Whether Defendants committed the tort of conversion.

41. Plaintiff will fairly and adequately protect the interests of the other Class members. Plaintiff has retained counsel who is experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the Class.

42. A class action is an appropriate method for adjudicating this controversy fairly and effectively. The interest of the individual Class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

43. By sending Plaintiff and other Class members unsolicited faxes, Defendants improperly converted their fax machines, toner and paper to their own use. Defendants also

Case 1:12-cv-21695-CMA Document 30 Entered on FLSD Docket 07/27/2012 Page 11 of 13

converted Plaintiff's employees' time to Defendants' own use.

44. Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other Class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

45. By sending the unsolicited faxes, Defendants permanently misappropriated the Class members' fax machines, toner, paper, and employee time to Defendants' own use. Such misappropriation was wrongful and without authorization.

46. Defendants knew or should have known that their misappropriation of paper, toner and employee time was wrongful and without authorization.

47. Plaintiff and the other Class members were deprived of the use of their fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each Class member thereby suffered damages as a result of their receipt of unsolicited faxes from Defendants.

48. Each of Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because multiple persons employed by Plaintiff were involved in receiving, routing and reviewing Defendants' unauthorized faxes. Defendants knew or should have known employees' time is valuable to Plaintiff.

49. Defendants' actions caused damages to Plaintiff and the other members of the Class because their receipt of Defendants' unsolicited faxes caused them to lose paper and toner as a result. Defendants' actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the time Defendants were using Plaintiff's fax machine for Defendants' unauthorized purpose. Defendants' actions also cost Plaintiff employee

time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendants' unauthorized faxes, and that time would otherwise have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, A AVENTURA CHIROPRACTIC CENTER, INC., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, MED WASTE MANAGEMENT LLC, AVROHOM PRAGER, MEIR SINGER, JONHATHAN SCHLESINGER, and JOHN DOES 1-10, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the Class, and appoint Plaintiff's counsel as counsel for the Class;

B. That the Court enter judgment finding Defendants unlawfully converted the fax machines of Plaintiff and the members of the Class and are liable to Plaintiff and the members of the Class for damages arising from their conversion;

C. That the Court award damages for each act of conversion;

D. That the Court enter an injunction prohibiting Defendants from engaging in the statutory violations at issue in this action; and

E. That the Court award costs, including reasonable attorneys' fees, and such further relief as the Court may deem just and proper, but in any event, not more than $75,000.00 per individual, inclusive of all damages and fees.

Respectfully submitted,

A AVENTURA CHIROPRACTIC CENTER, INC., individually and as the representative of a class of similarly-situated persons

By: /s/ Ryan M. Kelly

Ryan M. Kelly (FL Bar #90110)
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501

AND

Gregory S. Weiss
Leopold Law, P.A.
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401

Case 1:12-cv-21695-CMA Document 30-1 Entered on FLSD Docket 07/27/2012 Page 1 of 2

# EXHIBIT A

# MedWaste MANAGEMENT

**GUARANTEED! 20% SAVINGS**

- GREAT SERVICE
- ECONOMICAL RATES
- NO SURCHARGES
- NO EXTRA FEES
- FLEXIBLE SERVICE CONTRACTS
- ACCOMMODATING SCHEDULE
- ACCURATE RECORD KEEPING
- ALL SUPPLIES INCLUDED
- COURTESY CALL ONE DAY PRIOR TO PICKUP

Call us today to find out how WE CAN SAVE YOU MONEY, and provide you with reliable disposal of your Medical Waste.

Call Today: **888-431-6386**

Case 1:13-cv-23608-KMM Document 1-2 Entered on FLSD Docket 10/08/2013 Page 1 of 10

# EXHIBIT B

Pnum Amo:
886-9432

**Fran Tedesco**

**From:** Bullock, Angela
**Sent:** Tuesday, July 17, 2012 10:47 AM
**To:** frant@brooks-ins.com
**Subject:** New Loss AAventura Chiropractic Center v. Med Waste Management LLC Policy No. 00014303 DOL 5-12-10 James River Claim No. 00014303

Fran,

This will acknowledge receipt of this lawsuit. It appears that the allegations are not covered under the James River Policy as the matter involves a violation of the Telephone Consumer Protection Act and Conversion. The insured may wish to contact his personal counsel to protect his interest in this case.

James River specifically reserves all of its rights and remedies under the policy, and under the statutes, and common law. No action taken by James River in this matter should be construed as a waiver by or estoppel of these rights and remedies or any of the terms, conditions, exclusions, or limitations of the policy.

Thank you,

Angela Bullock
Senior Claims Examiner
James River Insurance Company
6641 West Broad Street Suite 300
Richmond, VA 23230
Fax: 804-420-1058
Phone: 804-289-2155
angela.bullock@jamesriverins.com

Closed
7/17/12

Phil: 9mo. 886-9422

JAMES RIVER INSURANCE

July 24, 2012

**Certified Mail – Return Receipt Requested 7012 0470 0001 3160 2981**

Abraham Prager
Medwaste Management LLC
1860 52nd Street #1E
Brooklyn, NY 11251

Closed 7/24/12

**RE: ACKNOWLEDGMENT OF LAWSUIT AND DENIAL OF COVERAGE**

| | |
|---|---|
| **Insured:** | **Medwaste Management LLC** |
| **Policy No.:** | **00041766-0** |
| **Policy Term:** | **01/13/2010 to 01/13/2011** |
| **Case of:** | ***A Aventura Chiropractic Center, Inc. v. Med Waste Management LLC, et al.*** |
| **Venue:** | **United States District Court for the Southern District of Florida** |
| **Case No.:** | **1:12-cv-21695-CMA** |
| **Our File No.:** | **00014303** |

Dear Mr. Prager:

James River Insurance Company ("James River") was recently notified of the captioned lawsuit, which was filed by Aventura Chiropractic Center ("Aventura") against Med Waste Management LLC ("Med Waste") on May 4, 2012. Having compared the allegations of the complaint with the terms of the captioned policy, James River disclaims coverage based upon the policy's TCPA exclusion, amongst others detailed below.

**THE COMPLAINT**

On May 4, 2012, Aventura filed a class-action complaint against Med Waste in the United States District Court for the Southern District of Florida, Fort Lauderdale Division, in an action bearing Case No. 1:12-cv-21695. The complaint alleged that on or about May 12, 2010 and May 14, 2010, Med Waste faxed unsolicited advertisements to more than fifty unknown recipients. Based upon these allegedly improper fax transmissions, Aventura pleads two counts on behalf of itself and others that are similarly situated. The first count is for violations of the Telephone Consumer Protection Act ("TCPA"). Aventura seeks statutory damages for Med Waste's violations, including treble damages. The second count is for common law conversion. Aventura alleges that the TCPA violations had the affect of improperly converting the plaintiffs' fax machines, toner and paper.

Med Waste failed to respond to the complaint. Consequently, the clerk entered a default against it on June 12, 2012. Over a month after the default, James River was first notified of the lawsuit on July 16, 2012.

## THE POLICY

James River issued a Commercial General Liability Policy to "Medwaste Management LLC" as the Named Insured, under Policy No. 00041766-0, with coverage effective from January 13, 2010 through January 13, 2011. The principal coverage form is Form **CG 00 01 10 01**, titled **"Commercial General Liability Coverage Form."** In pertinent part, the form provides:

> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. **Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" for "bodily injury" or "property damage" to which this insurance does not apply...
>
> 2. **Exclusions**
>
> This insurance does not apply to:
>
> a. **Expected Or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured...
>
> **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> 1. **Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for which this insurance does not apply....
>
> 2. **Exclusions**
>
> This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

SECTION V – DEFINITIONS ...

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement". ...

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

The policy also contains Form **AP2029US 11-05**, which is titled **"Combined Policy Exclusions."** In pertinent part, the form provides:

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The following exclusions are added to this policy:

DUTY TO DEFEND EXCLUSION

Where there is no coverage under this policy, there is no duty to defend.

The policy also contains Form **AP2111US 11-05**, which is titled **"Exclusion – Punitive Damages."** This form provides:

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

COMBINED POLICY EXCLUSIONS, DAMAGES LIMITATION EXCLUSION is deleted in its entirety and replaced with the following:

Damages mean a monetary judgment, award, or settlement. Damages do not include:

a. Civil or criminal fines, sanctions or penalties, whether imposed pursuant to statute or otherwise; or

b. Judgments or awards arising from acts or omissions deemed uninsurable by law; or

c. Punitive or exemplary damages and the multiplied portion of multiplied damages....

The policy also contains Form **CG 00 67 03 05**, titled **"Exclusion – Violation of Statutes that Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information."** This form provides in pertinent part:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

2. **Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law....

B. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

2. **Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law....

**DISCLAIMER**

Under Coverage A – Bodily Injury and Property Damage Liability, James River disclaims coverage to the extent that the lawsuit seeks neither "bodily injury" nor "property damage," as required for coverage under the insuring agreement. Aventura simply alleges economic damages based on Med Waste's statutory violations. James River also disclaims to the extent that the bodily injury or property damage, if any, is excluded by the Expected or Intended Injury, Exclusion 2.a. In Paragraph 31, Aventura alleges that Med Waste sent advertising faxes to the class members without first obtaining prior express invitation or permission. A natural and reasonable consequence

of sending a fax without invitation or permission is that the recipient's toner and paper are temporarily misappropriated, resulting in foreseeable lost use.

Under Coverage B – Personal and Advertising Injury Liability, James River disclaims coverage to the extent that the lawsuit does not seek damages because of "personal and advertising injury," as required for coverage under the insuring agreement.

Under both coverage parts, James River also disclaims coverage because the policy excludes coverage for injury arising directly or indirectly out of alleged TCPA violations (Form **CG 00 67 03 05**). All of the allegations in the complaint involve damages flowing from Med Waste's violation of the statute involving unsolicited faxes.

Also under both parts of the policy, James River disclaims coverage under the duty to defend exclusion (Form **AP2029US 11-05**) as well as the exclusion for punitive damages (Form **AP2111US 11-05**).

Last, James River disclaims coverage to the extent that it did not timely receive notice of the pending action. Under Section IV – Commercial General Liability Conditions, 2. Duties In The Event of Occurrence, Offense, Claim Or Suit, Med Waste was obligated to immediately notify James River of the action. Instead, suit was filed in May 2012 and James River was first notified two months later after a default had already been entered.

## RESERVATION OF RIGHT TO AMEND

Nothing in this letter should be construed as a waiver or surrender of the policy terms, limitations, exclusions, conditions or agreements. Nor should this letter be considered an exhaustive recitation of all the potential coverage issues or provisions of the policy that might apply. James River's decision to deny coverage is based strictly on the information made available at this time. By this disclaimer, James River does not waive or intend to waive any of its rights, nor does it waive any of the terms, conditions or provisions of the policy. James River specifically reserves all of its rights and remedies under the policy, as well as under statutes and common law.

While James River regrets that this incident does not fall within the purview of coverage, it is its intent to provide coverage that is available under the policy. If any of the information summarized in this letter is erroneous for any reason or if you otherwise have additional information that you would like James River to consider, or if our understanding of any aspect of this claim is erroneous for any reason, please immediately forward it to our attention so we can reconsider our position.

Finally, we encourage you to tender this claim to any other insurers that might provide coverage for this matter. Please feel free to contact me at (804) 289-2155 should you have any questions regarding this claim. I can also be reached via email at Angela.Bullock@jamesriverins.com.

**Medwaste Management LLC**
**July 24, 2012**
**Page 8 of 8**

Sincerely,

Angela Bullock

Angela Bullock
Senior Claims Examiner
James River Insurance Company

**Applicable in Florida and Idaho**

**Any person who knowingly and with the intent to injure, defraud or deceive any Insurance Company files Statement of Claim containing any false, incomplete or misleading information is guilty of a felony.***
***In Florida – Third Degree Felony**

**Applicable in Arkansas, Delaware, District of Columbia, Kentucky, Louisiana, Maine, Michigan, New Jersey, New Mexico, New York, North Dakota, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington and West Virginia**

**Any person who knowingly and with intent to defraud any insurance company or another person, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact, material thereto, commits a fraudulent insurance act, which is a crime, subject to criminal prosecution and [NY: substantial] civil penalties. In DC, LA, ME, TN VA and WA insurance benefits may also be denied.**

cc: Pearl Ilowitz
Prime Insurance Agency
960 E. County Line Rd
Lakewood, NJ 08701

Fran Tedesco
Brooks Insurance Group
70 Bridge Plaza Drive
Manalapan, New Jersey 07726

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 12-21695-CIV-ALTONAGA/Simonton**

**A AVENTURA CHIROPRACTIC CENTER, INC.**,

Plaintiff,

v.

**MED WASTE MANAGEMENT LLC**, *et al.*,

Defendants.
_________________________________________/

## ORDER

**THIS CAUSE** came before the Court on Plaintiff, A Aventura Chiropractic Center, Inc.'s ("Aventura['s]") Motion to Reconsider the Court's Order Denying Plaintiff's Motion for Class Certification ("Reconsideration Motion") [ECF No. 114], filed May 31, 2013. The Court has carefully reviewed the parties' written submissions[1] and applicable law.

## I. INTRODUCTION

Aventura states the Court previously denied its Motion for Class Certification ("Class Certification Motion") [ECF No. 101] on a single ground: the potential that Defendants, Med Waste Management LLC and Avrohom Prager (collectively "Med Waste"), either had a prior business relationship with or had consented to receive faxes from some of the class members presented individual issues precluding class certification. (*See* Mot. 1). Aventura goes on to elaborate on why it believes the Court's analysis on this "single ground" for certification denial was wrong, relying in part on an Eighth Circuit decision, *Nack v. Walburg*, 715 F.3d 680 (8th

[1] Defendants filed a Memorandum of Law in Opposition to Plaintiff's Motion to Reconsider Denial of Class Certification ("Reconsideration Response") [ECF No. 117] on June 17, 2013, and Plaintiff filed a Reply Memorandum . . . ("Reconsideration Reply") [ECF No. 118] on June 24, 2013.

Cir. 2013), issued the same day as the Order denying Aventura class certification, as well as on a new declaration from Robert Martino on this point. (*See generally* Recons. Mot.). Aventura's Reconsideration Motion is predicated upon the invalidity of Med Waste's uniform opt-out notice contained in the offending facsimiles, which Aventura maintains does not satisfy the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.* ("TCPA"); this identical defect in all the facsimiles in question according to Aventura removes any individualized issues of concern to the Court in denying class certification. Med Waste insists the Court should not reconsider its class certification denial on the grounds that Aventura does not satisfy the standard for reconsideration, an opt-out notice is not required for solicited facsimiles, and there are other impediments to class certification in any event. (*See generally* Recons. Resp.). The Court addresses the parties' arguments below.

## II. STANDARD

The reconsideration decision is granted only in extraordinary circumstances and is "committed to the sound discretion of the district judge." *Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*, 434 F. Supp. 2d 1286, 1301 (M.D. Fla. 2006) (quoting *Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985)) (internal quotation marks omitted). "It is an improper use of the motion to reconsider to ask the Court to rethink what the Court already thought through — rightly or wrongly." *Lobegeiger v. Celebrity Cruises, Inc.*, 869 F. Supp. 2d 1356, 1361 (S.D. Fla. 2012) (quoting *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)) (internal quotation marks omitted). Furthermore, motions to reconsider are not "designed to permit losing parties to prop up arguments previously made[,] [] to inject new ones, []or to relieve a party of the consequences of its original, limited presentation." *Zodiac Grp., Inc. v. Axis Surplus Ins. Co.*, No. 12-80299-Civ, 2013 WL 357825, at *1 (S.D. Fla. Jan. 29, 2013) (citation and internal quotation marks omitted).

Thus, "[c]ourts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d 1340, 1343 (S.D. Fla. 2007) (quoting *Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993)) (internal quotation marks omitted). "[W]here a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion." *Carnival Corp. v. Rolls-Royce PLC*, No. 08-23318-CIV, 2010 WL 1854099, at *1 (S.D. Fla. May 3, 2010) (citation and internal quotation marks omitted). Further, "[i]n order to demonstrate clear error, the party must do more than simply restate its previous arguments, and any arguments the party failed to raise in the earlier motion will be deemed waived." *Vila v. Padron*, No. 04-20520-CIV, 2005 WL 6104075, at *1 (S.D. Fla. Mar. 31, 2005) (citation omitted).

## III. ANALYSIS

Aventura satisfies the foregoing reconsideration standard. Aventura has shown with new evidence and a clarification of a key provision of the TCPA that reconsideration of the class certification denial decision is warranted. The Court explains.

In the Order denying class certification ("May 21 Order") [ECF No. 111], the Court summarized the factual background in this TCPA suit, wherein Aventura seeks to represent a class of persons in Florida, New York, and New Jersey; who were sent telephone facsimile messages in May 2010 of material advertising Defendants' services; from whom Defendants did not first obtain express permission to send the faxes; with whom Defendants did not have an established business relationship; and which faxes did not display a proper opt-out notice. (*See id.* 1–6). The Court summarized the standard governing Federal Rule of Civil Procedure 23

class certification, and the law applicable to the TCPA. (*See id.* 6–9). The Court does not repeat that background here and assumes the reader is familiar with it.

Confronted with several objections raised by Med Waste to class certification, the Court focused on concerns with Plaintiff's proposed class definition, finding those "fatal to the requested certification." (*Id.* 10). The Court was particularly troubled with a class definition that did not distinguish between recipients who may have consented to the advertisements from Med Waste and those who did not. (*See id.* 11). Similarly, the Court was concerned that application of the established business relationship safe harbor provision, 47 U.S.C. section 227(b)(1)(C) (the "EBR Safe Harbor"), would involve individualized questions not suitable for class treatment. (*See id.* 15–16). For these two reasons, the Court denied class certification and did not reach some of Med Waste's additional arguments in opposition to class certification. (*See id.* 16).

In the Reconsideration Motion, Aventura makes the case that it matters not whether Med Waste had the consent of, or an established business relationship with, the recipients of its faxed advertisements, because the advertisements all failed to contain the requisite opt-out notice, making the consent/EBR issues essentially irrelevant. In this regard, it appears that Aventura is amending its proposed class definition to remove the consent/EBR issues from the equation. (*See* Recons. Reply 7 ("Plaintiff's claim is that Defendants sent fax advertisements that did not contain the proper [opt-]out [notice]. Whether Defendants had consent to send these faxes or whether Defendants had an EBR with certain members of the class is immaterial to this issue.")). The Court thus turns to the law and facts provided in the Reconsideration Motion regarding the opt-out language and looks to see whether certification is now appropriate under the Rule 23 standards.

The TCPA prohibits the "use [of] any . . . device to send, to a telephone facsimile machine, an unsolicited advertisement, unless . . . the unsolicited advertisement contains a notice meeting the requirements under paragraph 2(D)." 47 U.S.C. § 227(b)(1)(C) & (C)(iii). The notice must be conspicuous, provide a domestic telephone number, and identify a cost-free mechanism for the recipient to opt-out of receiving future unsolicited advertisements. *Id.* § 227(b)(2)(D)(i), (iv)(I)–(II). Regulations promulgated under the statute "extend[] the opt-out notice requirement to solicited as well as unsolicited fax advertisements." *Nack*, 715 F.3d at 683 (citing 47 C.F.R. § 64.1200(a)(3)(iv)). In *Nack* the court concluded that "the regulation as written requires the senders of fax advertisements to employ the above-described opt-out language even if the sender received prior express permission to send the fax." *Id.* at 685. As Aventura urges in its Reconsideration Motion, individualized inquiries are no longer a concern as the sole issue in ascertaining class membership is whether in solicited and unsolicited advertisements the required opt-out language was included. *See Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 561 (C.D. Cal. 2012) ("[T]he single determination as to whether the opt-out notice complied with the statute and regulations promulgated thereunder 'will resolve an issue that is central to the validity of each one of the [class members'] claims in *one stroke*.'" (emphasis and second alteration in original) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

Robert Martino's declaration [ECF No. 114-1], attached to the Reconsideration Motion, provides record support for Aventura's contention that Defendants did not include the required opt-out language in their faxed advertisements. And as Aventura emphasizes, Defendants have presented no evidence of a single advertisement containing the required language.

Med Waste repeats several additional arguments why class certification should be denied, arguments raised in its opposition to the Class Certification Motion and not addressed in the May

21 Order. (*See* Recons. Resp. 14–15). The Court addresses these objections now briefly. Med Waste asserts Aventura has failed to establish numerosity or commonality under Federal Rules of Civil Procedure 23(a)(1) and (a)(2), respectively, because it has not shown Defendants actually sent facsimiles to the numbers provided on the list relied on by Aventura in its Class Certification Motion. (*See id.* 14). Martino testified he sold Avrohom Prager a list containing thousands of fax numbers, which Prager used to send faxes. Aventura is "not required to allege the exact number or identity of the class members." *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909, at *4 (N.D. Ill. Oct. 14, 2009) (internal quotation marks and citation omitted).

Med Waste also challenges Aventura's ability to establish typicality, as Aventura's own facsimile number does not appear on the list of fax numbers Aventura relies on. (*See* Recons. Resp. 14). Typicality under Rule 23(a)(3) is satisfied if a plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claim of the other class members, and if the claims are based on the same legal theory. *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 653 (S.D. Fla. 2012) (citations omitted). As explained by Aventura in its Reply ("Class Certification Reply") [ECF No. 109] in support of its Class Certification Motion and at the May 10, 2013 oral argument on that motion, the Aventura fax number does appear on earlier versions of the list of numbers, confirming that multiple fax blasts were sent out by Med Waste and resolving any concerns about typicality under Federal Rule of Civil Procedure 23(a)(3). Aventura satisfies typicality as the course of conduct that produced its TCPA claim also produced the claims of the proposed class. Furthermore, the accuracy of the fax logs goes to the weight of the evidence rather than its admissibility. *Holtzman*, 2009 WL 3334909, at *3 (citation omitted).

Med Waste also challenges Aventura's showing on its ability to adequately prosecute this action and its choice of counsel under Rule 23(a)(4). (*See* Recons. Resp. 14). These

arguments fail to persuade. Aventura has supplied an adequate explanation regarding a prior dispute Aventura's Rule 30(b)(6) witness had with billing the Medicare program (*see* Class Cert. Reply 6), and has put forward information concerning the number of times Plaintiff's counsel has been found to be adequate to pursue TCPA claims similar to those raised here (*see id.* 5 (citing cases)).

Med Waste next asserts Aventura has failed to satisfy the more exacting requirements of Rule 23(b)(3), repeating that individual questions predominate over class-wide questions, and that Aventura fails to show a class action is a superior method for adjudication given that individual trials on the consent issue will need to be held for each class member. (*See* Recons. Resp. 14–15). These last arguments ignore the effect of the holding in *Nack* and the disappearance of the individualized concerns regarding consent and EBR Safe Harbor wrought by *Nack* and the reconstituted class definition. With consent and application of the EBR Safe Harbor being eliminated as criteria that serve to define (and defeat) the class, the singular issue of the absence of the correct opt-out language does not portend individual trials or individualized inquiries.

Med Waste also objects to a class that includes recipients in New York and New Jersey, insisting the class be limited to Florida residents; and it also asserts the class should be limited to owners of fax machines. (*See* Recons. Resp. 15 n.8; Class Cert. Resp. 19–20). With regard to the former issue, Med Waste relies on Florida Statute section 768.734(1)(a), which provides: "In any action asserting the right to class action status, the claimant class having capacity to sue shall be limited to residents of this state at the time of the alleged misconduct . . . ." As Aventura correctly points out in its Class Certification Reply, in making this argument Med Waste ignores Florida Statute section 768.734(1)(b)2, which states: "In addition, the claimant class may include nonresidents if the conduct giving rise to the claim occurred in or emanated from this state." The

conduct giving rise to the TCPA claim arose in Florida; indeed, Martino and Adverfax, who were hired to provide the list of numbers and create the offending facsimiles, are located in Florida.

With regard to the latter issue, that is, that the class should be limited to owners of the fax machines, at oral argument Med Waste relied upon recent opinions by U.S. District Judge Sean Cox, wherein he concludes based on a review of the legislative history of the TCPA, that "the person or entity that owned the fax machine that received the unsolicited fax advertisement at issue is the person or entity with standing to assert a TCPA claim." *Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, No. 09-14444, 2013 WL 1789273, at *16 (E.D. Mich. Apr. 26, 2013); *see also APB Assocs., Inc. v. Bronco's Saloon, Inc.*, No. 09-14959, 2013 WL 1789275, at *16 (E.D. Mich. Apr. 26, 2013) (same). The Court in *Holtzman*, when earlier provided with a proposed class definition by Aventura's same counsel, of all persons who "owned or paid for some portion of the machine to which the fax was sent," found such language could prompt multiple claims from a singular fax transmission and modified the proposed definition. 2009 WL 3334909 at *1, *6. Because the TCPA allows for recovery for actual monetary loss or $500 for each violation, whichever is greater, *see* 47 U.S.C. § 227(b)(3), the court in *Holtzman* omitted the ownership component from the class definition when it certified a class of persons who were sent offending facsimiles. 2009 WL 3334909 at *6–7.

Given the decision in *Holtzman*, the Court understands Aventura's reluctance to seek certification of a class of fax machine owners. Furthermore, based upon a reading of the statutory text of the TCPA, the Court does not find the ownership requirement identified by Judge Cox to be an impediment to certification on the basis of lack of standing. While Judge Cox concluded the statute's purpose was to address the cost of the paper and ink incurred by the owners of fax machines and loss of use of the machines, the record here is silent on who incurred

costs arising from Med Waste's non-compliant fax advertisements, be they users of the fax machines and/or the actual owners. The undersigned agrees that to define class membership by ownership is problematic, resulting in both over and under inclusiveness. Defining the class as those to whom Med Waste sent the offending facsimiles is a concrete way to identify Med Waste's intended recipients and obviates the need for considering multiple ownership of fax machines or instances where the owners themselves may not have experienced a loss upon receipt of a non-compliant fax advertisement. Defining the class in this way is also consistent with the text of the TCPA.

## IV. CONCLUSION

Aventura proposed in its Class Certification Motion that the Court certify the following class: "All persons who were sent one or more facsimiles in May 2010 from 'Med Waste Management' with the phone number '888-431-6386' and offering 'Guaranteed 20% Savings.'" (Class Cert. Mot. 1). The Court so orders.

Being fully advised, it is

**ORDERED AND ADJUDGED** that the Reconsideration Motion **[ECF No. 114]** is **GRANTED**.

**DONE AND ORDERED** in Miami, Florida, this 3rd day of July, 2013.

Cecilia M. Altonaga

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

# EXHIBIT D

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**JAMES RIVER INSURANCE COMPANY**
**6641 WEST BROAD STREET, SUITE 300**
**RICHMOND, VA 23230**

**POLICY NUMBER**
**00041766-0**

**1. NAMED INSURED AND MAILING ADDRESS:**

Medwaste Management LLC
1852 52nd Street, #1E
Brooklyn, NY 11204

**PRODUCER:** 20303

Brooks Insurance Group
70 Bridge Plaza Drive
Manalapan, NJ 07726

**2. POLICY PERIOD:** From 01/13/2010 to 01/13/2011 12:01 A.M. Standard Time at your Mailing Address above.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS IN THE APPLICATION(S) AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| LIMITS OF INSURANCE | | | |
|---|---|---|---|
| EACH OCCURRENCE LIMIT | $ | 1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ | 50,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | | Excluded | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $ | 1,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | $ | 2,000,000 | |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $ | 2,000,000 | |

**RETROACTIVE DATE (CG 00 02 ONLY)**

THIS POLICY IS ON A CLAIMS-MADE AND REPORTED BASIS WHICH PROVIDES LIABILITY COVERAGE ONLY IF A CLAIM IS FIRST MADE AND REPORTED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.

RETROACTIVE DATE: NONE

(ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES)

**DESCRIPTION OF BUSINESS**

FORM OF BUSINESS: Limited Liability Co

BUSINESS DESCRIPTION: Waste Pick Up and Transport

| ALL PREMISES YOU OWN, RENT OR OCCUPY | |
|---|---|
| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| 1 | 1852 52nd Street, Brooklyn, NY 11204 |

**CLASSIFICATION AND PREMIUM**

| LOCATION NUMBER | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE $ | ADVANCE PREMIUM $ |
|---|---|---|---|---|---|
| 1 | Truckers | 99793 | Payroll 20,000 | 125.00 | 2,500.00 |
| | | TOTAL PREMIUM (SUBJECT TO AUDIT) | | | $ 2,500.00 |
| If checked, premium shown is flat and not subject to audit ☐ | | Company Fee | | | $ 100.00 |
| TOTAL SHOWN IS PAYABLE: | | AT INCEPTION | | | $ 2,600.00 |
| | | | | | |
| AUDIT PERIOD (IF APPLICABLE) | | FREQUENCY: | | | |

| ENDORSEMENTS |
|---|
| ENDORSEMENTS ATTACHED TO THIS POLICY: |
| See attached schedule A – Schedule of Forms |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

# SCHEDULE A

FORMS AND ENDORSEMENTS THAT APPLY TO THIS POLICY:

**POLICY NO. 00041766-0**

| FORM NUMBER | DESCRIPTION |
|---|---|
| MC0001US-0509 | Commercial General Liability Declarations |
| GC0001US-0304 | Schedule A |
| CG0001-1001 | Commercial General Liability Coverage Form |
| AP0100US-0403 | Privacy Policy |
| AP1013US-1005 | Premium Audit Conditions Amended |
| AP2016US-0205 | Exclusion - USL&H and Maritime Law |
| AP2029US-1105 | Combined Policy Exclusions |
| AP2031US-1105 | Insured Versus Insured - Exclusion |
| AP2032US-1108 | Employers Liability - Exclusion |
| AP2034US-1106 | Injury to Independent Contractors and Subcontractors - Exclusion |
| AP2036US-1105 | Absolute Pollution and Pollution Related Liability - Exclusion |
| AP2044US-0606 | Assault and Battery Exclusion |
| AP2102US-0403 | Communicable Disease Exclusion |
| AP2103US-0607 | Minimum Policy Premium |
| AP2104US-0208 | Common Policy Conditions |
| AP2106US-0504 | Absolute Auto, Aircraft and Watercraft Exclusion |
| AP2107US-0403 | Binding Arbitration |
| AP2111US-1105 | Exclusion - Punitive Damages |
| AP2112US-0804 | Terrorism Exclusion |
| AP5027R-0107 | Rejection of Coverage for Certified Acts of Terrorism Coverage (Pursuant to Terrorism Risk Insurance Act) |
| AP5036US-0109 | New York Amendatory Endorsement - Notice Provisions |
| CG0067-0305 | Exclusion - Violation of Statutes that Govern E-mails, Fax, Phone Calls or Other Methods of Sending Material or Information |
| CG2136-0196 | Exclusion - New Entities |
| CG2139-1093 | Contractual Liability Limitation |
| CG2167-0402 | Fungi or Bacteria Exclusion |
| GC2128US-0403 | Exclusion - Liquor Liability |
| GC2131US-0403 | Fiduciary Exclusion |
| GC2149US-0608 | Independent Contractors and Subcontractors Limitation |
| IL0021-0702 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| MC2105US-1005 | Deductible Endorsement |
| MC2118US-0403 | Exclusion - Misdelivery |
| MC2126US-1207 | Premium Base Endorsement |
| MC2139US-0403 | Exclusion - Coverage C - Medical Payments |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.


© ISO Properties, Inc., 2000

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © ISO Properties, Inc., 2000 

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

 © ISO Properties, Inc., 2000 

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

 © ISO Properties, Inc., 2000 

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

 © ISO Properties, Inc., 2000 

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

Case 1:13-cv-23608-KMM Document 1-4 Entered on FLSD Docket 10/03/2013 Page 13 of 58



**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:
   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;
   b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and
   c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   a. Insureds;
   b. Claims made or "suits" brought; or
   c. Persons or organizations making claims or bringing "suits".
2. The General Aggregate Limit is the most we will pay for the sum of:
   a. Medical expenses under Coverage **C**;
   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
   c. Damages under Coverage **B**.
3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".
4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.
5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:
   a. Damages under Coverage **A**; and
   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".
6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.
7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.
2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**
   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
      (1) How, when and where the "occurrence" or offense took place;
      (2) The names and addresses of any injured persons and witnesses; and
      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

 © ISO Properties, Inc., 2000 

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

 © ISO Properties, Inc., 2000 

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

 © ISO Properties, Inc., 2000 

# James River Insurance Company

## Privacy Policy

**We do not sell customer information to nonaffiliated third parties, and we do not share customer information with nonaffiliated third parties except those parties who perform contractual services for us, and parties to which we are authorized to provide information by law.** In addition, when we provide information to affiliates or non-affiliates, we limit those disclosures to information about your transactions and experiences with us and to disclosures otherwise permitted by law. You do not need to take any action to prevent us from selling or sharing information we obtain about you.

**We use security measures and training in our effort to protect the customer information we collect.** We protect the information we obtain about you by maintaining physical, electronic and procedural safeguards.

**We collect the following types of information about you when you purchase or use our products and services.** Most of the information that we obtain about you comes directly from you, such as through the insurance applications you submit when requesting insurance products. These applications and other inquiries we make of you allow us to learn information that we may use to contact you in the future, such as your name, address, telephone number and e-mail address. In addition, insurance applications and other information you provide enables us to determine the type and value of your insured property, the types of insurance coverages you have or in which you might be interested, and similar information.

If you visit an Internet site that we maintain, we might request or obtain information that will enable us to identify you as a registered user, such as your name, a user identification name, a password, password reminders, and your Internet service provider. We might use a "cookie" to retain some of this information. We also might obtain information about your operating system, web browser and similar information to enable us to improve the operation of our site.

When we consider products and services in which you may be interested, we often review information that we have about your past transactions with us or our affiliates, such as your existing or former policy coverages, premiums and payment history. In addition, we may learn information about your transactions with nonaffiliated third parties, including the types of products or services you obtained from them and your experiences with them. Finally, we may obtain other information from third parties that has a bearing upon your eligibility for the products or services you seek from us. This information may include your credit report or information about your creditworthiness, or other information maintained by consumer reporting agencies.

**We provide customer information only to our affiliates and to nonaffiliates that must protect your customer information.**

**We also may provide information as mentioned in this notice to nonaffiliated third parties that perform services for us or perform functions on our behalf, such as marketing and research, or to other financial institutions with which we have joint agreements for activities such as marketing. By law, our contracts with these parties must prevent them from using the information they receive about you except as described in this notice.**

Finally, we may share customer information as permitted by applicable law. This means that we will share information with parties as necessary to affect, administer, or enforce transactions that you request. For example, we might provide information to a company that processes, prints and mails our insurance policies to you, or to a company that adjusts claims under your policies. We also might disclose customer information to other entities specified by law, such as insurance advisory organizations, our attorneys and accountants, consumer reporting agencies, or civil and regulatory authorities. Federal law sets the limitations on these types of disclosures.

**We strive to keep our records as accurate as possible.** We attempt to maintain accurate records about you and we will gladly make appropriate corrections when you notify us. Of course, we do not control the accuracy of information gathered and provided by third parties, and you may need to notify third parties directly if you believe that any information we received from them is inaccurate. You may request the name and address of any consumer-reporting agency from which we obtain a report on you. You then may contact that consumer-reporting agency to request a copy of the report it makes or to advise of any changes to the information they maintain and report.

We will provide one copy of this Privacy Policy to joint contract holders. Please share this information with everyone covered under your policy or contract.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PREMIUM AUDIT CONDITIONS AMENDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE

**SECTION IV–COMMERCIAL GENERAL LIABILITY CONDITIONS,** Item 5. Premium Audit, is deleted and replaced with the following:

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request. We have the right, but not the obligation, to conduct a physical audit of records needed for premium computation after the expiration of this policy.

**d.** Your refusal to maintain or provide needed records, or to allow us to conduct a physical audit of needed records, will result in our developing and calculating a final audit premium based on information available to us and without your cooperation. If final premium audits calculated without your cooperation result in additional premium, you are obligated to pay such additional premium.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - USL&H AND MARITIME LAW

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE
COMMERCIAL EXCESS LIABILITY COVERAGE

This insurance does not apply to "bodily injury" or "property damage" arising out of:

1. Any obligation for which any Insured or any carrier as your insurer may be held liable under any worker's compensation, unemployment compensation or disability benefits law, Jones Act, The United States Longshoremen And Harbor Workers Act, the Outer Continental Shelf Lands Act, Death on the High Seas Act, and any amendments or regulations pursuant thereto, or, under any similar law or act;
2. "Bodily injury" to any employee of any Insured arising out of and in the course of his employment by any Insured, or to any obligation of any Insured to indemnify another because of damages arising out of injury, which would otherwise be covered by any of the acts or similar laws in 1. above; or
3. "Bodily Injury" or "property damage" assumed under any contract for actions arising from any acts or similar laws in 1. above.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMBINED POLICY EXCLUSIONS

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The following exclusions are added to this policy:

**ABSOLUTE ASBESTOS, LEAD OR SILICA EXCLUSION**

Injury or damages, including any claim or suit, arising out of, resulting from, caused or contributed to by Asbestos, Lead or Silica is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of same, including but not limited to any:

a. "Bodily injury", "personal and advertising injury", "property damage" or damages of any type, arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances of or from Asbestos, Lead or Silica in any form, or from any goods, products or structures containing same, or "property damage" or devaluation of property arising from any form of same; or

b. Existence of Asbestos, Lead, or Silica, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same; or

c. Loss, cost, expense, fines and/or penalties arising out of any (1) request, demand, order, governmental authority or directive or that of any private party or citizen action that any insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of Asbestos, Lead, or Silica, or (2) any litigation or administrative procedure in which any insured or others may be involved as a party in response to the effects or alleged effects of Asbestos, Lead, or Silica; or

d. Supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same or in any way responding to or assessing the effects of same; or

e. Actual or alleged Asbestosis, Lead poisoning, Silicosis or any other similar condition.

This exclusion applies regardless of whether:

a. Injury or damage claimed is included within the "products/completed operations hazard" of the policy; or

b. An alleged cause for the injury or damage is the insured's negligent hiring, placement, training, supervision, retention, act, error or omission.

**CLAIM(S) IN PROGRESS EXCLUSION**

a. This policy does not apply to "bodily injury", "personal and advertising injury" or "property damage" which begins or takes place before the inception date of coverage, whether such "bodily injury", "personal and advertising injury" or "property damage" is known to an insured, even though the nature and extent of such damage or injury may change and even though the damage may be continuous, progressive, cumulative, changing or evolving, and even though the "occurrence" causing such "bodily injury", "personal and advertising injury" or "property damage" may be or may involve a continuous or repeated exposure to substantially the same general harm.

b. All "property damage" to units of or within a single project or development, and arising from the same general type of harm, shall be deemed to occur at the time of damage to the first such unit, even though the existence, nature and extent of such damage or injury may change and even though the "occurrence" causing such "property damage" may be or involve a continuous or repeated exposure to substantially the same general harm which also continues or takes place (in the case of repeated exposure to the substantially the same general harm) during the policy term.

**DISCRIMINATION EXCLUSION**

Discrimination charges, of any kind, actual and alleged, are not covered under this policy, nor are any expenses or obligation to share damages with or repay another who must pay damages from same.

**EMPLOYMENT-RELATED PRACTICES EXCLUSION**

Employment-Related Practices, regardless of allegations, are not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, including but not limited to:

a. Refusal to employ any person or termination of employment of any person; or

b. Any employment-related practices, policies, acts or omissions, including but not limited to coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation, or discrimination; or

c. Consequential "bodily injury" or "personal and advertising injury" as a result of a. or b.

**CLASSIFICATION LIMITATION EXCLUSION**

The coverage provided by this policy applies only to those operations specified in the applications(s) for insurance on file with the Company and described under the description of operations or classification on the declarations of the policy.

**DAMAGES LIMITATION EXCLUSION**

Damages mean a monetary judgment, award, or settlement. Damages do not include:

a. Civil or criminal fines, sanctions or penalties, whether imposed pursuant to statute or otherwise; or
b. Judgments or awards arising from acts or omissions deemed uninsurable by law; or
c. The restitution of consideration or expense paid to you for professional services rendered or which should have been rendered; or
d. Disputed fees or any actual or alleged personal profit or advantage to which you are not legally entitled; or
e. Equitable or non-pecuniary relief.

**DUTY TO DEFEND EXCLUSION**

Where there is no coverage under this policy, there is no duty to defend.

**PROFESSIONAL LIABILITY EXCLUSION**

Professional liability, malpractice, errors, omissions, or acts of any type including rendering or failure to render any type of professional service is not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, unless such coverage is specifically endorsed onto this policy.

**WAR RISK EXCLUSION**

If this policy includes a war exclusion, such exclusion is deleted and replaced with the following exclusion:

This Company shall not be liable for loss caused directly or indirectly by:

a. Hostile or warlike action in time of peace or war, including any action in hindering, combating or defending against an actual, impending or expected attack by:

(1) Any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or

(2) Military, naval or air forces; or

(3) An agent of such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such hostile or warlike action by such a government, power, authority or forces.

b. Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

Case Document 1-4 Entered on FLSD Docket 05/28/2026 Page 27 of 58



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INSURED VERSUS INSURED – EXCLUSION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

This insurance does not apply to "bodily injury", "personal and advertising injury" or "property damage" or any other claim for damages brought by any insured covered by this policy against any other insured that has ownership interest in, is operated, controlled, or managed by or is a subsidiary of any such insured.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYER'S LIABILITY – EXCLUSION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The Employer's Liability exclusion under **SECTION I—2. Exclusions**, of this policy is deleted and replaced with the following:

This insurance does not apply to any claim, suit, cost or expense arising out of "bodily injury" to:

a. Any employee of any insured arising out of and in the course of:

   (1) Employment by any insured; or,
   (2) Performing duties related to the conduct of any insured's business; or

b. The spouse, child, parent, brother, sister or relative of that employee as a consequence of Paragraph a. above.

This exclusion applies:

a. Whether any insured may be liable as an employer or in any other capacity; and/or
b. To any obligation to share damages with or repay someone else who must pay damages because of the injury; and/or
c. To liability assumed under any "insured contract".

Wherever the word "employee" appears above, it shall mean any member, associate, "leased worker", "temporary worker" or any person or persons loaned to or volunteering services to you.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INJURY TO INDEPENDENT CONTRACTORS AND SUBCONTRACTORS – EXCLUSION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

This insurance does not apply to "bodily injury", "personal and advertising injury" or "property damage" sustained by any of "your" independent contractors/subcontractors, or any employee, "leased worker", "temporary worker" or volunteer help of same.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

Case 1:13-cv-23608-KMM Document 1-4 Entered on FLSD Docket 10/08/2013 Page 30 of 58



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE POLLUTION AND POLLUTION RELATED LIABILITY – EXCLUSION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The following exclusion is added to this policy. If the policy already includes a pollution exclusion or a pollution-related exclusion, such exclusion(s) is(are) deleted and replaced with the following:

Pollution/environmental impairment/contamination is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising out of or alleged to have arisen out of same. All liability and expense arising out of or related to any form of pollution, whether intentional or otherwise and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any insured or any other person or entity is excluded throughout this policy.

This insurance does not apply to any damages, claim, or suit arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" including but not limited to any:

a. "Bodily injury", "personal and advertising injury", "property damage", or damages for the devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space, or any other type injury or expense; or

b. Any loss, cost, expense, fines and/or penalties arising out of any (1) request, demand, order, governmental authority or directive or that of any private party or citizen action that any insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess same, the effects of "pollutants", environmental impairments, contaminants or (2) any litigation or administrative procedure in which any insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or placement of "pollutants", environmental impairments, or contaminants into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.

This exclusion applies regardless of whether:

a. Injury or damage claimed is included within the "products-completed operations hazard" of the policy; or

b. An alleged cause for the injury or damage is the insured's negligent hiring, placement, training, supervision, retention, act, error or omission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

The following definition is added to the policy. If the policy already includes a definition of "pollutants" such definition is deleted and replaced with the following:

"Pollutants" mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or "waste". "Waste" includes medical waste, biological infectants, and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASSAULT AND BATTERY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended to add the following:

**Assault and Battery**

This insurance does not apply to damages or expenses due to "bodily injury", "property damage" or "personal and advertising injury" arising out of, resulting from, or in connection with:

**(1)** Assault or battery, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of you, any insured, any person, or any causes whatsoever;

**(2)** The failure to suppress or prevent assault or battery by you, any insured, or any person;

**(3)** The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or the failure to warn of the dangers of the environment which could contribute to assault or battery;

**(4)** The negligent employment, investigation, hiring, supervision, training, or retention of any person;

**(5)** The use of any force to protect persons or property whether or not the "bodily injury", "property damage", or "personal and advertising injury" was intended from the standpoint of the insured or committed by or at the direction of any insured; or

**(6)** The failure to render or secure medical treatment or care necessitated by any assault or battery.

Assault includes, but is not limited to, assault, sexual abuse, sexual assault, intimidation, sexual harassment, verbal abuse, and any threatened harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of you, any insured, any person, or any causes whatsoever.

Battery includes, but is not limited to, battery, sexual abuse, sexual battery, sexual molestation, and any actual harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of you, any insured, any person, or any causes whatsoever.

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, paragraph a.** is deleted in its entirety and replaced with the following:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by one or more insureds even if the "bodily injury" or "property damage":

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**(1)** Is of a different kind, quality, or degree than initially expected or intended; or

**(2)** Is sustained by a different person, entity, real or personal property than initially expected or intended.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

This Policy does not apply to any claim or suits based on or directly or indirectly arising out of or resulting from:

1. Any form of communicable disease; or
2. Any sexually transmitted disease; or
3. Any form of inhalation, absorption or contact; or
4. Acquired Immunodeficiency Syndrome, or Human Immunodeficiency Virus, or exposure to another having the same, or to substances or materials contaminated with the same; or
5. Failure by an insured to perform services which were either intended to or assumed to prevent communicable diseases or their transmission to others; or
6. Fear of contracting Acquired Immunodeficiency Syndrome, Human Immunodeficiency Virus, or any other communicable disease; or
7. The negligent:
   a. employment,
   b. investigation,
   c. placement,
   d. supervision,
   e. reporting to the proper authorities or failure to so report,
   f. hiring,
   g. training or
   h. retention

   of a person for whom any insured is or ever was responsible and whose conduct is excluded in 1. through 6. above.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINIMUM POLICY PREMIUM

This endorsement modifies and amends insurance provided under the following:

ALL COVERAGE PARTS

This endorsement sets forth the minimum earned premium for the policy. The minimum earned premium for this policy is calculated in accordance with the following:

1. The minimum premium for the policy period is 100% of the total policy premium as shown on the policy declarations page plus any premium adjustment by endorsements and any additional premium developed by audit.

2. Audits that indicate a return premium will not reduce the minimum as stated in paragraph 1.

3. If the insured cancels this policy and the policy <u>is not</u> subject to audit, the return premium will be 90% of the unearned policy premium; however in no event will the Company retain less than **25%** of the minimum premium shown in paragraph 1. above.

4. If the insured cancels this policy and the policy <u>is</u> subject to audit, the earned premium will be determined by final audit, however in no event will it be less than **25%** of the minimum premium as described in paragraph 1. above.

5. If the Company cancels the policy for any reason, other than for non-payment of premium, then the insured will be returned the full amount of the unearned premium without any minimum premium restrictions.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMON POLICY CONDITIONS

All Coverage Parts in this policy are subject to the following Conditions.

**1. CANCELLATION AND NON-RENEWAL**

A. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

B. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

C. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

D. Notice of cancellation will state the effective date of cancellation. The policy will end on that date.

E. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata unless cancellation is due to non payment of premium, in which case the refund may be less than pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

F. If notice is mailed, proof of mailing will be sufficient proof of notice.

If we elect not to renew this policy, we shall mail written notice to the First Named Insured at the address shown in the Declarations. Such written notice of non-renewal shall be mailed at least 30 days prior to the end of the policy term.

**2. CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**3. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

**4. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this policy unless:

A. There has been full compliance with all of the terms of this policy; and

B. No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity the same be commenced within twelve (12) months next after discovery by the insured of the occurrence which gives rise to the claim, provided however, that if by the laws of the state within which this policy is issued each limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such state. We will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance.

**5. REPRESENTATIONS**

By accepting this policy, you agree:

A. The statements in the Declarations are accurate and complete;

B. Those statements are based upon representations you made to us; and

C. We have issued this policy in reliance upon your representations.

**6. SERVICE OF SUIT**

It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the Company's President, or his nominee, at the address shown on the Declarations page of this policy, and that in any suit instituted against any one of them upon this policy, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the request of the insured to give a written undertaking to the insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, this Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**7. TERMS, CONDITIONS AND PREMIUM**

On each renewal, continuation, anniversary of the effective date of the policy or on an annual basis, the Company will determine the rate and premium and/or amend the terms and conditions in accordance with the rates and rules then in effect.

**8. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In Witness Whereof, this Company has executed and attested these presents; but this policy shall not be valid unless signed by duly authorized representatives of this Company.

***SECRETARY*** ***PRESIDENT***

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE
# AUTO, AIRCRAFT AND WATERCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE (CG 00 01 10 01 and CG 00 02 10 01)

1. **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, paragraph **g.** is deleted and replaced with the following:

   **g. Aircraft, Auto Or Watercraft**
   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading" which includes the handling and placing of persons by an insured into, onto or from an "auto".

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

2. **SECTION IV –COMMERCIAL GENERAL LIABILITY CONDITIONS of form CG 00 01 10 01, 4. Other Insurance,** paragraph **b. Excess Insurance,** subparagraph **(1)(d)** is deleted.

3. **SECTION IV –COMMERCIAL GENERAL LIABILITY CONDITIONS of form CG 00 02 10 01, 4. Other Insurance,** paragraph **b. Excess Insurance,** subparagraph **(1)(e)** is deleted.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BINDING ARBITRATION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

Should we and the insured disagree as to the rights and obligations owed by us under this policy, including the effect of any applicable statutes or common law upon the contractual obligations otherwise owed, either party may make a written demand that the dispute be subjected to binding arbitration.

When such a request is made, The American Arbitration Association shall be used, with each party selecting an arbitrator from the list of qualified arbitrators for insurance coverage disputes provided by that Association. The two chosen arbitrators shall select a third arbitrator from the same list; if they cannot agree to a selection, The American Arbitration Association shall make the selection for them. Each party shall bear the costs of its arbitrator and shall share equally the costs of the third arbitrator and of the arbitration process. A decision agreed to by two of the arbitrators will be binding.

In the event you prevail in the arbitration and we promptly offer to you arbitration costs and reasonable attorney fees incurred in connection therewith, in addition to the disputed contract benefit, you shall have no right to sue us for breach of implied covenants or unreasonable withholding of contract benefits.

To the extent that we prevail in the arbitration, the arbitrators may award us any expenses and/or damages incurred or paid under reservation of rights in excess of our contract obligations as determined by the arbitrators.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PUNITIVE DAMAGES

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

COMBINED POLICY EXCLUSIONS, DAMAGES LIMITATION EXCLUSION is deleted in its entirety and replaced with the following:

Damages mean a monetary judgment, award, or settlement. Damages do not include:

a. Civil or criminal fines, sanctions or penalties, whether imposed pursuant to statute or otherwise; or
b. Judgments or awards arising from acts or omissions deemed uninsurable by law; or
c. The restitution of consideration or expense paid to you for professional services rendered or which should have been rendered; or
d. Disputed fees or any actual or alleged personal profit or advantage to which you are not legally entitled; or
e. Punitive or exemplary damages and the multiplied portion of multiplied damages; or
f. Equitable or non-pecuniary relief.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The coverage under this policy does not apply to any loss, injury, claim or damage arising directly or indirectly out of or relating to:

1. Any act of "terrorism"; or
2. Any action authorized by a government authority or agency for the purpose of preventing or minimizing the consequences of any act or threat of "terrorism".

"Terrorism" means an activity by an individual acting alone, or individuals acting as a part of a group, that involves any violent act, including the threat of any activity or preparation for an activity that:

1. Causes either:
   a. Damage to property;
   b. Injury to person(s); or
   c. Loss of income or increased expense; and

2. Appears to be intended to:
   a. Intimidate or coerce a civilian population;
   b. Disrupt any segment of an economy;
   c. Influence the policy of a government by intimidation or coercion;
   d. Affect the conduct of a government by destruction, assassination, kidnapping or hostage-taking; or
   e. Advance a political, religious or ideological cause; or

3. Involves the use, release, dispersal, discharge, escape or application of:
   a. Nuclear materials, or directly results in nuclear reaction or radiation or radioactive contamination; or
   b. Pathogenic or poisonous biological or chemical materials.

"Terrorism" shall also include any incident determined to be such by any official, department or agency that has been specifically authorized by federal statute to make such a determination.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# REJECTION OF COVERAGE FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT)

**SCHEDULE**

| |
|---|
| THE INSURED WAS OFFERED AND |
| HAS DECLINED TERRORISM COVERAGE ON THIS POLICY |

In accordance with the federal Terrorism Risk Insurance Act, this notice confirms that you were offered and have rejected coverage for terrorist acts certified under that Act.


Includes copyrighted material of ISO Properties, Inc. 2006, used with permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK AMENDATORY ENDORSEMENT—NOTICE PROVISIONS

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

With respect to Policies delivered in New York State, the following provisions are added to this Policy:

**A.** Failure to give notice to us as required under this Policy shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**B.** With respect to "bodily injury" claims, provided that "bodily injury" is covered by this Policy, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

**(1)** Brings an action to declare the rights of the parties under the policy; and

**(2)** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

 © ISO Properties, Inc., 2004 

**COMMERCIAL GENERAL LIABILITY**
**CG 21 36 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – NEW ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **4.** of **Section II**, WHO IS AN INSURED does not apply.

 Copyright, Insurance Services Office, Inc., 1994 

**COMMERCIAL GENERAL LIABILITY**
**CG 21 39 10 93**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINITIONS Section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement.

 Copyright, Insurance Services Office, Inc., 1992 

COMMERCIAL GENERAL LIABILITY
CG 21 67 04 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc., 2001 

Case 1:13-cv-24608-KMM Document 1-4 Entered on FLSD Docket 12/18/2013 Page 48 of 58



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - LIQUOR LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE

**SECTION I – COVERAGES**
**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**2. Exclusions c. Liquor Liability** is deleted and replaced with the following:

The coverage under this policy does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of:

1. Causing or contributing to the intoxication of any person;
2. The furnishing of alcoholic beverages to anyone under the legal drinking age or the influence of alcohol;
3. Any statute, ordinance or regulation relating to sales, gift, distribution or use of alcoholic beverages;
4. Any act or omission by any insured, any employee of the any insured, patrons, members, associates, volunteers or any other person providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol; or
5. The negligent hiring, employment, training, placement or supervision of any person doing work for or otherwise acting on behalf of the Insured.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FIDUCIARY EXCLUSION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

This policy does not apply to any claim arising out of the:

1. Coercion, conversion or misappropriation of others' funds or property;
2. Any dishonest, fraudulent, criminal, malicious acts or omissions of the insured, partner or employee or any person for whom you are legally responsible; or
3. Any activities or operations performed in the capacity of a fiduciary.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDEPENDENT CONTRACTORS AND SUBCONTRACTORS LIMITATION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

Coverage provided under this policy for "bodily injury", "personal and advertising injury" or "property damage" caused by acts of independent contractors/subcontractors contracted by you or on your behalf shall not apply unless the contractor/subcontractor contracted by you or on your behalf maintains insurance coverage and limits of insurance equal to or greater than the insurance coverage and limits of insurance provided by this policy and naming you as an Additional Insured.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

 © ISO Properties, Inc., 2001 

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2001 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Coverage** | **Amount and Basis of Deductible** PER CLAIM | or PER OCCURRENCE |
|---|---|---|
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Personal & Advertising Injury | $ | $ |
| OR | | |
| Damage To Premises Rented To You | $ | $ |
| OR | | |
| Medical Payments | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability and/or Personal & Advertising Injury Liability, and/or Damage To Premises Rented To You and/or Medical Payments Combined | $1,000 | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury", "property damage" or "personal and advertising injury" or medical expenses however caused):

**A.** Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal and/or Advertising Injury, Medical Payments or any other coverages provided by this policy to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages. The deductible amounts stated above will include loss payments, adjustments, investigative and legal fees and costs, all whether or not loss payment is made.

**B.** We may select a deductible amount on either a per claim or a per "occurrence" basis. Our selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:
   a) Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";
   b) Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage";

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

c) Under Personal & Advertising Injury Liability, to all damages sustained by any one person or organization because of "personal and advertising injury";

d) Under Damage To Premises Rented To You, all damages to any one premises while rented to you, because of "property damage";

e) Under Medical Payments, to all medical expenses sustained by any one person; or

f) Under Bodily Injury Liability and/or Property Damage Liability and/or Personal & Advertising Injury Liability, and/or Damage To Premises Rented To You, and/or Medical Payments Coverages Combined, to all injury, damage and medical expenses sustained by any one person or organization

as the result of any one "occurrence" or "offense".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", "person" includes an organization.

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

a) Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

b) Under Property Damage Liability Coverage, to all damages because of "property damage";

c) Under Personal & Advertising Injury Liability, to all damages because of "personal and advertising injury";

d) Under Damage To Premises Rented To You, all damages to any one premises while rented to you, because of "property damage";

e) Under Medical Payments, to all medical expenses because of an accident; or

f) Under Bodily Injury Liability and/or Property Damage Liability and/or Personal & Advertising Injury Liability, and/or Damage To Premises Rented To You, and/or Medical Payments Coverages Combined, to all injury, damage and medical expenses

as the result of any one "occurrence" or "offense", regardless of the number of persons or organizations who sustain damages because of that "occurrence" or "offense".

**C.** The terms of this insurance, including those with respect to:

1. Our right and duty to defend any "suits" seeking those damages; and

2. Your duties in the event of an "occurrence," claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION –MISDELIVERY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Under **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Paragraph **2 – EXCLUSIONS** and **Section 1, Coverage B PERSONAL INJURY AND ADVERTISING INJURY LIABILITY, paragraph 2** – Exclusions, the following exclusion is added.

This insurance does not apply to:

"Bodily Injury", "Personal and Advertising Injury", "Property Damage" or, any injury, loss or damage arising out of:

1. The delivery of any product into the wrong receptacle or to the wrong address; or

2. The erroneous delivery of one product for another.

Operations shall be deemed complete even though improperly or defectively performed at the wrong address, or even though further operations may be required pursuant to a service or maintenance agreement.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PREMIUM BASE ENDORSEMENT

One or more of the following symbols may be entered under the Premium Base column of the Declarations. These symbols designate the base used for determining your premium. The following is a definition of these symbols when used as a premium base.

Symbol Definition

**"Area" means:** The total number of square feet of floor space at the insured premises, computed as follows:

For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:

1. Courts and mezzanine types of floor openings.
2. Portions of basements or floors where 50% or more of the area is used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air-conditioning equipment.
3. For tenants, determine the area they occupy in the same manner as for the entire buildings.

The rates apply per 1,000 square feet of area.

**"Total Cost" means:**

The total cost of all work let or sublet in connection with each specific project including:

1. The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work.
2. All fees, bonuses or commissions made, paid or due.

The rates apply per $1,000 of total cost.

**"Admissions" means:**

The total number of persons, other than employees or the named insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

The rates apply per admission.

**"Payroll" means:**

1. Remuneration which includes money or substitutes for money.
2. Payroll includes:
   a. Commissions, bonuses, pay for holidays, vacations or periods of illness;
   b. Extra pay for overtime.
   c. Payments by en employer or amounts otherwise required by law to be paid by employees to statutory insurance or pension plans, such as Federal Social Security Act;

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

d. Payment to employees on any basis other than time worked, such as piece work, profit sharing or incentive plans;
e. Payment or allowance for hand tools or power tools used by hand provided by employees and used in their work or operations for the insured;
f. The rental value of an apartment or a house provided for an employee based on comparable accommodations;
g. Value of meals and lodging other than an apartment or house received by employees as part of their pay;
h. The value of store certificates, merchandise, credits or any other substitute for money received by employees as part of their pay;
i. The payroll of all drivers, mobile equipment operators and their helpers, whether or not the operators are designated or licensed to operate automobiles. If the operators and their helpers are provided to the insured along with equipment hired under contract and their actual payroll is not known, use 1/3 of the total amount paid out by the insured for the hire of the equipment;
j. The payroll of executive officers and individual insureds and co-partners;
k. Fees paid to employment agencies for temporary personnel provided to the insured;

1. Payroll does not include:

a. Tips and other gratuities received by employees;
b. Payments by an employer to group insurance or group pension plans for employees in accordance with the manuals in use by us;
c. The value of special rewards for individual invention or discovery;
d. Dismissal or severance payments except for time worked or accrued vacation;

The rates apply per $1,000 of payroll.

**"Gross Sales" or "Receipts" means:**

1. The gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:
   a. All goods or products, sold or distributed;
   b. Operations performed during the policy period;
   c. Rentals; and
   d. Dues or fees.
2. Inclusions
   The following items shall not be deducted from gross sales:
   a. Foreign exchange discounts;
   b. Freight allowance to customers;
   c. Total sales of consigned goods and warehouse receipts;
   d. Trade or cash discounts;
   e. Bad debts; and
   f. Repossession of items sold on installments (amount actually collected.)
3. Exclusions
   The following items shall be deducted from gross sales:
   a. Sales or excise taxes which are collected and submitted to a governmental division;
   b. Credits for repossessed merchandise and products returned.
   c. Allowances for damaged and spoiled goods;
   d. Finance charges for items sold on installments;
   e. Freight charges on sales if freight is charged as a separate item on customers invoice; and

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **ALL PREMISES AND CLASSIFICATIONS** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section **I** – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

# CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form isrequired for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**

A AVENTURA CHIROPRACTIC CENTER, INC., et al.

**DEFENDANTS**

JAMES RIVER INSURANCE COMPANY and MED WASTE MANAGEMENT LLC

**(b)** County of Residence of First Listed Plaintiff Miami-Dade County, FL
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant ______
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Ryan M. Kelly (FL Bar #90110) - ANDERSON+WANCA
3701 Algonquin Road, Suite 760, Rolling Meadows, IL 60008
Tel: (847) 368-1500

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- [X] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (excl. vet.)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Inj.

PERSONAL INJURY
- [ ] 362 Personal Injury—Med. Malpractice
- [ ] 365 Personal Injury — Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**OTHER STATUTES**
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 810 Selective Service
- [ ] 850 Security/Commodity/Exch.
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**CIVIL RIGHTS**
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 ADA—-Employment
- [ ] 446 ADA — Other
- [ ] 440 Other Civil Rights

**PRISONER PETITIONS**
- [ ] 510 Motions to Vacate Sentence
- Habeas Corpus:
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt.Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

## VII. PREVIOUS BANKRUPTCY MATTERS

(For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter perviously adjudicated by a judge of this Court. Use a separate attachment if necessary)

## VIII. REQUESTED IN COMPLAINT:

[X] CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [X] No

## IX. This case

[X] **is not a refiling of a previously dismissed action.**

[ ] **is a refiling of case number ______, previously dismissed by Judge ______**

DATE 10/8/13

SIGNATURE OF ATTORNEY OF RECORD
s/Ryan M. Kelly

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

A AVENTURA CHIROPRACTIC CENTER, INC.
*Plaintiff*

v.

JAMES RIVER INSURANCE COMPANY and MED WASTE MANAGEMENT LLC,
*Defendant*

Civil Action No. 1:13-cv-23580

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*

JAMES RIVER INSURANCE COMPANY
6641 West Broad Street, Sutie 300
Richmond, VA 23230

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Ryan M. Kelly (FL BAR #90110)
ANDERSON+WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: 10/04/2013

*Signature of Clerk or Deputy Clerk*

Case 1:13-cv-23580-KMM Document 1-1 Entered on FLSD Docket 12/30/2013 Page 2 of 2

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No. 1:13-cv-23580

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ______________________________
was received by me on *(date)* ____________________ .

❒ I personally served the summons on the individual at *(place)* ______________________________
______________________________ on *(date)* ______________ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* ______________
______________________________ , a person of suitable age and discretion who resides there,
on *(date)* ______________ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* ______________________________ , who is
designated by law to accept service of process on behalf of *(name of organization)* ______________
______________________________ on *(date)* ______________ ; or

❒ I returned the summons unexecuted because ______________________________ ; or

❒ Other *(specify)*:
.

My fees are $ __________ for travel and $ __________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| A AVENTURA CHIROPRACTIC CENTER, INC.<br>*Plaintiff*<br>v.<br>JAMES RIVER INSURANCE COMPANY and MED WASTE MANAGEMENT LLC,<br>*Defendant* | ) | Civil Action No. 1:13-cv-23580 |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*

MED WASTE MANAGEMENT LLC
c/o Avraham Prager, Reg. Agent
2860 52nd Street, Apt. 1E
Brooklyn, NY 11204

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Ryan M. Kelly (FL BAR #90110)
ANDERSON+WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: 10/04/2013

_______________________________
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No. 1:13-cv-23580

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ______________________
was received by me on *(date)* ______________ .

❒ I personally served the summons on the individual at *(place)* ______________________
______________________ on *(date)* ______________ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* ______________
______________________ , a person of suitable age and discretion who resides there,
on *(date)* ______________ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* ______________________ , who is
designated by law to accept service of process on behalf of *(name of organization)* ______________
______________________ on *(date)* ______________ ; or

❒ I returned the summons unexecuted because ______________________ ; or

❒ Other *(specify)*:
.

My fees are $ __________ for travel and $ __________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________
*Server's signature*

______________________
*Printed name and title*

______________________
*Server's address*

Additional information regarding attempted service, etc: