# EXHIBIT A

| | |
|---|---|
| RUPAN TRIKHA, NITI TRIKHA, BHAVNA CHHABRIA, GANDOTRA INVESTMENTS LLC, NUVIEW TRUST CO FBO MAYUR DALAL IRA, R&R DHARIA LLC, RAJESH DHARIA, MANISH GANDHI REVOCABLE TRUST 2002, MANISH GANDHI, CORY CONNIFF, MVP PARK INTERNATIONAL INC., UK MANAGEMENT AND INVESTORS GROUP, LLC, SHETAL PATEL, SHASHI GOEL, PREM GOEL, NUVIEW TRUST CO FBO MAHESH CHHABRIA, KAVITA KALRA, VIJAY SINGHAL, YOGINI PATEL, NUVIEW TRUST CO FBO MAHESH CHHABRIA, NUVIEW TRUST COMPANY FBO MAHESH CHHABRIA IRA, NUVIEW TRUST COMPANY FBO MAYUR DALAL ROLLOVER IRA, NUVIEW TRUST CO FBO CORY CONNIFF IRA, NUVIEW TRUST CO CUSTODIAN FBO SATISH PATEL IRA, NUVIEW TRUST CO FBO MANJIT BAINS IRA, NUVIEW TRUST CO FBO MRINAL MALI IRA, RAMESH THAKKAR, MANJULA THAKKAR, MADHAVI DALAL, CRP INVESTORS GROUP LLC, and MRINAL MALI,<br><br>Plaintiff,<br><br>v.<br><br>AVROHOM PRAGER a/k/a SHAYA PRAGER and SHULAMIT PRAGER<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>OCEAN COUNTY<br><br>Docket No. OCN-L<br><br><u>Civil Action</u> |

**COMBINED BRIEF ON BEHALF OF PLAINTIFFS IN SUPPORT OF (I) MOTION TO PROCEED SUMMARILY ON THE VERIFIED COMPLAINT, AND (II) ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINTS AND PRELIMINARY INJUNCTIVE RELIEF**

GIORDANO, HALLERAN & CIESLA, P.C.
Adam Garcia, Esq. (140512015)
Timothy J. DeHaut, Esq. (029912009)
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701-6777
(732) 741-3900
Attorneys for Plaintiffs

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 2

STATEMENT OF FACTS ........ 4

LEGAL ARGUMENT ........ 5

I. THE COURT SHOULD SUMMARILY ENTER JUDGMENT IN FAVOR OF PLAINTIFFS ON ALL COUNTS OF THE VERIFIED COMPLAINT. ........ 5

A. ACTION TO ENFORCE GUARANTY – LIBERTY 1100 (FIRST COUNT). ........ 5

B. ACTION TO ENFORCE GUARANTY - RIVERSIDE RICHMOND (SECOND COUNT). ........ 8

C. ACTION TO ENFORCE GUARANTY - WOOD AVE (THIRD COUNT). ........ 10

II. THE COURT SHOULD RESTRAIN AND ENJOIN DEFENDANTS FROM CONVEYING, ENCUMBERING OR DISPOSING OF ASSETS PENDING FINAL ADJUDICATION OF THE VERIFIED COMPLAINT IN ORDER TO PRESERVE THE *STATUS QUO*. ........ 11

A. PLAINTIFFS CLAIMS REST ON SETTLED LAW AND HAVE A REASONABLE PROBABILITY OF SUCCEEDING ON THE MERITS. ........ 14

B. IRREPARABLE HARM IS LIKELY IF DEFENDANTS ARE NOT RESTRAINED AND ENJOINED FROM CONVEYING, ENCUMBERING OR DISPOSING ASSETS. ........ 14

C. BALANCING THE HARDSHIPS OF THE PARTIES FAVORS GRANTING THE REQUESTED INJUNCTIVE RELIEF. ........ 17

CONCLUSION ........ 19



#10810075v1

# TABLE OF AUTHORITIES

**Cases**

*Apollo Technologies Corp. v. Centrosphere Indus Corp.*, 805 *F.Supp.* 1157 (D.N.J. 1992) ... 13

*Atlantic Coast Demolition and Recycling, Inc. v. Board of Chosen Freeholders of Atlantic County*, 893 *F.Supp.* 301 (D.N.J. 1995) ... 12

*Bellisfield v. Holcombe*, 102 *N.J. Eq.* 20 (Ch. 1927) ... 5

*Borough of Princeton v. Bd. of Chosen Freeholders of County of Mercer*, 333 *N.J. Super.* 310 (App. Div. 2000) ... 6

*Boylan v. Borough of Point Pleasant Beach*, 410 *N.J. Super.* 564 (App. Div. 2009) ... 5, 6

*Camden Bd. of Educ. v. Alexander*, 181 *N.J.* 187 (2004) ... 6

*Citizens Coach Co. v. Camden Horse R.R. Co.*, 29 *N.J. Eq.* 299 (E. & A. 1878) ... 14

*Community Hosp. Group Inc. v. More*, 365 *N.J. Super.* 84 (App. Div. 2003) ... 15

*Crowe v. DeGioia*, 90 *N.J.* 126 (1982) ... passim

*Ctr. 48 Ltd. P'ship v. May Dept. Stores Co.*, 355 *N.J. Super.* 390 (App. Div. 2002) ... 5, 6

*Elliott v. Kiesewetter*, 98 *F.3d* 47 (3d Cir. 1996) ... 15

*Feraiullo v. Manno*, 1 *N.J.* 105 (1948) ... 13

*Gerardi v. Pelullo*, 16 *F.3d* 1363 (3d Cir. 1994) ... 15

*Goldstein v. Deichl*, 2006 *N.J. Super. Unpub. LEXIS* 3012 (Unpub. App. Div. 2006) ... 16

*Green v. Piper*, 80 *N.J. Eq.* 288 (Ch. 1912) ... 12

*Haines v. Burlington County Bridge Commission*, 1 *N.J. Super*. 163 (App. Div. 1949) ... 13

*Hoffman-La Roche Inc. v. Weissbard*, 11 *N.J.* 541 (1953) ... 15

*Housatonic Bank & Trust Co. v. Fleming*, 234 N.J. Super. 79 (App. Div. 1989) ... 6

*Hoxworth v. Blinder, Robinson & Co.*, 903 *F.2d* 186 (3d Cir. 1990) ... 15

*Levchuk v. Jovich*, 372 *N.J. Super.* 149 (Law Div. 2004) ... 5

*Marsellis-Warner Corp. v. Rabens*, 51 *F. Supp. 2d* 508 (D.N.J. 1999) ... 15

*Mt. Holly State Bank v. Mt. Holly Washington Hotel, Inc.*, 202 *N.J. Super.* 506 (App. Div. 1987) ... 6

*Naylor v. Harkins*, 11 *N.J.* 435 (1953) ... 13

*Peters v. Public Serv. Corp.*, 132 *N.J. Eq.* 500 (Ch. Div. 1942) ... 12

*Phoenix Pinelands Corp. v. Davidoff*, 467 *N.J. Super.* 532 (App. Div. 2021) ... 5

*Price v. N.J. Manufacturers Ins. Co.*, 182 *N.J.* 519 (2005) ... 5

*Sheahan v. Upper Greenwood Lake Prop. Owners Ass'n*, 36 *N.J. Super.* 133 (App. Div. 1955) .......... 15

*Sherman v. Stern*, 93 *N.J. Eq.* 626 (E. & A. 1922) .......... 14

*Standard Refinery Union v. Esso Standard Oil Co.*, 31 *N.J. Super.* 548 (App. Div. 1954) .......... 6

*Subcarrier Communications, Inc. v. Day*, 299 *N.J. Super.* 634 (App. Div. 1997) .......... 12

*Sunbeam Corp. v. Windsor-Fifth Ave.*, 14 *N.J.* 222 (1953) .......... 13

*Washington Commons v. Jersey City*, 416 *N.J. Super.* 555 (App. Div. 2010) .......... 5

*Waste Mgmt. of New Jersey, Inc. v. Morris Cty. Mun. Utilities Auth.*, 433 *N.J. Super.* 445 (App. Div. 2013) .......... 13

*Weinstein v. Township of Franklin, New Jersey*, 898 *F.Supp.* 271 (D.N.J. 1995 .......... 12

**Other Authorities**

Restat. 2d of Contracts, § 360 .......... 13

*Rules Governing the Courts*, comment on *R.* 4:67-1 (2023 ed.) .......... 5

**Rules**

*R.* 4:52-1 .......... 11, 12

*R.* 4:52-1(a) .......... 2

*R.* 4:67 .......... 5

*R.* 4:67-1(b) .......... 2, 4, 5

*R.* 4:67-2(b) .......... 2, 4

*R.* 4:67-5 .......... 4, 5

Plaintiffs, RUPAN TRIKHA, NITI TRIKHA, BHAVNA CHHABRIA, GANDOTRA INVESTMENTS LLC, NUVIEW TRUST CO FBO MAYUR DALAL IRA, R&R DHARIA LLC, RAJESH DHARIA, MANISH GANDHI REVOCABLE TRUST 2002, MANISH GANDHI, CORY CONNIFF, MVP PARK INTERNATIONAL INC., UK MANAGEMENT AND INVESTORS GROUP, LLC, SHETAL PATEL, SHASHI GOEL, PREM GOEL, NUVIEW TRUST CO FBO MAHESH CHHABRIA, KAVITA KALRA, VIJAY SINGHAL, YOGINI PATEL, NUVIEW TRUST CO FBO MAHESH CHHABRIA, NUVIEW TRUST COMPANY FBO MAHESH CHHABRIA IRA, NUVIEW TRUST COMPANY FBO MAYUR DALAL ROLLOVER IRA, NUVIEW TRUST CO FBO CORY CONNIFF IRA, NUVIEW TRUST CO CUSTODIAN FBO SATISH PATEL IRA, NUVIEW TRUST CO FBO MANJIT BAINS IRA, NUVIEW TRUST CO FBO MRINAL MALI IRA, RAMESH THAKKAR, MANJULA THAKKAR, MADHAVI DALAL, CRP INVESTORS GROUP LLC, and MRINAL MALI (collectively, "*Plaintiffs*" or "*Preferred Members*"), file this combined brief of law in support of their (i) motion to proceed summarily on the verified complaint ("*Verified Complaint*") filed June 24, 2024 (the "*Motion*"), and (ii) order to show cause to restrain defendants AVROHOM PRAGER a/k/a SHAYA PRAGER ("*Avrohom*") and SHULAMIT PRAGER ("*Shulamit*", together with Avrohom, "*Defendants*" or "*Guarantors*") from conveying, encumbering or dissipating assets pending final adjudication of the Verified Complaint (the "*OSC*").[1]

---

[1] Plaintiffs submit this combined brief addressing both the Motion and OSC because the issues are intertwined; and, moreover, consideration of the OSC requires consideration of the arguments advanced in support of the Motion.

**PRELIMINARY STATEMENT**

Because there are no genuine issues as to the material facts, and because this matter is one which may be disposed of in its entirety without the need for any discovery or testimony, this Court should proceed summarily pursuant to *R.* 4:67-1(b), and Plaintiffs move pursuant to *R.* 4:67-2(b) for entry of an order to proceed summarily on the return date. Further, because Defendants are engaged in a concerted scheme to shield and conceal their assets from Plaintiffs, in contravention of their express disclosure obligations, Plaintiffs also file an emergent application by order to show cause pursuant to *R.* 4:52-1(a) to restrain and enjoin Defendants from conveying, encumbering or dissipating their assets pending final adjudication of the Verified Complaint, so as to maintain the *status quo*.

As set forth in the Verified Complaint, Plaintiffs commenced this action to recover not less than $9,987,500 Defendants owe to Plaintiff. As detailed therein, Plaintiffs contributed a total of $26,000,000 to fund extensive renovations at three properties, namely, "*Liberty"*, "*Riverside Richmond*" and "*Wood Ave*" (collectively, the "*Projects*"), owned by Defendant-controlled entities. In considerations of such contributions, Plaintiffs were to receive monthly preferred returns until such time as the contributions were redeemed in full, which was to occur within a fixed period. By executing certain guaranty agreements, Defendants unconditionally, absolutely and irrevocably guaranteed to Plaintiffs the punctual, prompt and complete payment of such monies. Although the preferred returns were initially paid, in late-fall 2023 the payments faltered and then ceased altogether. To date, Plaintiffs are collectively owed at least $9,987,500; and Defendants are responsible to make such payment to Plaintiffs pursuant to their personal guarantees in favor of Plaintiffs.

In adjudicating this matter, the Court need do little more than apply and enforce the unambiguous terms of three nearly identical guaranty agreements each executed by Defendants.



#10810075v1

To that end, each agreement contains Defendants averment that a preferred capital contribution was made; that Defendants would derive substantial economic benefits from such contribution; and that the guaranty was given to induce the contribution and was in consideration thereof. Further, by executing the guaranties, Defendants averred that they "unconditionally, absolutely and irrevocably guarantee[] … the punctual, prompt and complete payment" of the preferred returns and capital redemption, which were delineated in the contemporaneously executed operating agreement amendments memorializing the preferred capital contributions; and waived any obligation on the part of Plaintiffs to exhaust other remedies before presentment of an action such as this to enforce Defendants' guaranty.

In addition to the unambiguous terms of the guarantees which indisputably establish Defendants' joint and several obligation to pay the preferred returns and capital redemption, it is also indisputable that certain preferred returns and capital redemption has not been paid despite being due. As detailed in the Verified Complaint, Plaintiffs repeatedly noticed Defendants that preferred returns and capital redemption were unpaid. Despite Defendants' acknowledgment that such preferred returns and/or capital redemption was (and remain) unpaid, Defendants have simply failed and refused to remit the monies due and owing to Plaintiffs.

Not only have Defendants failed to make remittances to Plaintiffs, they have also failed and refused to provide Plaintiffs with personal financial disclosures as expressly required in the guaranties. As noted in the Verified Complaint, the guarantees each required that Defendants furnish to Plaintiffs "information with respect to the business, properties, operations or condition, financial or otherwise, of [Defendants] as [Plaintiffs] may from time-to-time reasonably request". Although Plaintiffs have made no less than four requests of Defendants to furnish such personal financial information – in November, 2023 and January, February and June 2024 –

Defendants have failed and refused to provide such information, and have instead shielded and concealed their assets, in dereliction of the guarantees' express requirements, in order to undermine and frustrate Plaintiffs' security for their $26,000,000 capital contribution in the Project and entities controlled by Defendants.

Accordingly, Plaintiffs bring the Motion pursuant to *R.* 4:67-1(b), on notice to Defendants and made returnable after July 31, 2024 (the date of expiration of Defendants' time to respond to the Verified Complaint, Defendants having been served on June 26, 2024) in accordance with *R.* 4:67-2(b), for an order to proceed summarily in accordance with *R.* 4:67-5 on the return date thereof, as the facts are not in dispute and can be decided without discovery or testimony (or minimal testimony). In addition, given that Defendants are engaged in concerted scheme to shield and conceal their assets from Plaintiffs, and in order to preserve the *status quo*, Plaintiffs also bring an emergent application by way of order to show cause to temporarily restrain Defendants from conveying, encumbering or dissipating their assets pending the return date of the Motion, and otherwise preliminarily enjoin Defendants from conveying, encumbering or dissipating their assets until such time as the Court enters final judgment.

## STATEMENT OF FACTS

The facts set forth in detail in the Verified Complaint and exhibits thereto are adopted by reference in lieu of repetition and in the interest of judicial economy. All citations to exhibits refer to the exhibits appended to the Verified Complaint.

## LEGAL ARGUMENT

### I. THE COURT SHOULD SUMMARILY ENTER JUDGMENT IN FAVOR OF PLAINTIFFS ON ALL COUNTS OF THE VERIFIED COMPLAINT.

A party may proceed in a summary manner in any action (other than matrimonial actions and actions in which unliquidated monetary damages are sought), provided it appears to the Court, on notice to the other parties, "that it is likely that the matter may be completely disposed of in a summary manner". *R.* 4:67-1(b). The material facts regarding this action cannot be disputed and therefore this matter is appropriate for a *R.* 4:67 summary action; such actions being designed "to accomplish the salutary purpose of swiftly and effectively disposing of matters which lend themselves to summary treatment". *See* Pressler, *Rules Governing the Courts*, comment on *R.* 4:67-1 (2023 ed.) (citing *Washington Commons v. Jersey City*, 416 *N.J. Super.* 555, 564 (App. Div. 2010); *Price v. N.J. Manufacturers Ins. Co.*, 182 *N.J.* 519, 528 (2005); *Levchuk v. Jovich*, 372 *N.J. Super.* 149, 158 (Law Div. 2004).

Because there are no genuine issues as to the material facts, and because this matter is one which may be disposed of without the need for any discovery or testimony, pursuant to *R.* 4:67-1(b), this Court should proceed summarily on the return date in the manner provided under *R.* 4:67-5.

#### A. Action to Enforce Guaranty – Liberty 1100 (First Count).

Guarantees are contracts, to which many of the usual tenets of contract formation and interpretation apply. *See, e.g., Ctr. 48 Ltd. P'ship v. May Dept. Stores Co.*, 355 *N.J. Super.* 390, 405–06 (App. Div. 2002). '"[I]n constructing a contract the cardinal rule is to ascertain the intention of the parties'". *Phoenix Pinelands Corp. v. Davidoff*, 467 *N.J. Super.* 532, 647 (App. Div. 2021) (quoting *Bellisfield v. Holcombe*, 102 *N.J. Eq.* 20, 21-23 (Ch. 1927)); *accord Boylan v. Borough of Point Pleasant Beach*, 410 *N.J. Super.* 564 (App. Div. 2009). "The court's goal is



#10810075v1

to ascertain the intention of the parties to the contract as revealed by the language used, taken as an entirety, … the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain". *Id.* (citing *Borough of Princeton v. Bd. of Chosen Freeholders of County of Mercer*, 333 *N.J. Super*. 310, 325 (App. Div. 2000). Guaranty agreements, like other contracts "must be read in light of commercial reality and in accordance with the reasonable expectations of persons in the business community involved in transactions of the type involved". *Ctr. 48 Ltd. P'ship*, 355 *N.J. Super.* at 405 (citing *Mt. Holly State Bank v. Mt. Holly Washington Hotel, Inc.*, 202 *N.J. Super*. 506, 511 (App. Div. 1987)). A "[guarantee] agreement should be interpreted according to its clear term so as to effect the objective expectations of the parties". *Id.* at 406 (citing *Housatonic Bank & Trust Co. v. Fleming*, 234 N.J. Super. 79, 82 (App. Div. 1989). "[C]ourt[s] will not write a new contract for the parties or vary, enlarge, alter or distort its terms for the benefit of one to the detriment of the other under the guise of judicial interpretation". *Camden Bd. of Educ. v. Alexander*, 181 *N.J.* 187 (2004) (quoting *Standard Refinery Union v. Esso Standard Oil Co.*, 31 *N.J. Super*. 548, 552 (App. Div. 1954)).

Here, in giving effect to the expressed intention of the parties, as revealed in the language of the Liberty 1100 Guaranty, the Court must find that Defendants are liable to Liberty 1100 Preferred Members for not less than the Liberty 1100 Arrears, plus any monies accruing after the date of filing of the Verified Complaint or otherwise due under the Liberty 1100 Guaranty. By executing the Liberty 1100 Guaranty, Avrohom and Shulamit, collectively as the "*Liberty 1100 Guarantors*", "unconditionally, absolutely and guarantee[d] to the [Liberty 1100] Preferred Members the punctual, prompt and complete payment of the [Liberty 1100] Preferred Return … and the Redemption [of the Liberty 1100 Preferred Capital Contribution]", and further acknowledged that the "purpose and intent of the [Liberty 1100] Guaranty [is] that the



#10810075v1

obligations of the Guarantor hereunder … is absolute, irrevocable and unconditional ***under any and all circumstances***". *See* Exhibit 3 (Liberty 1100 Guaranty), at ¶¶ 1, 5 (emphasis added).

Moreover, the Liberty 1100 Guaranty expressly provided the Liberty 1100 Preferred Members were entitled to enforce the Liberty 1100 Guaranty without first resort to Liberty 1100 VA Dr Member LLC: "[Liberty 1100] Guarantor[s] waive[] any and all legal requirements that may require [the Liberty 1100] Preferred Members to institute any action or proceedings at law or in equity against [Liberty 1100 VA Dr Member LLC], or anyone else, or exhaust its remedies against [Liberty 1100 VA Dr Member LLC], or anyone else in respect of the [Liberty 1100] Preferred Capital Contribution or in respect of any other security held by [the Liberty 1100 Preferred Members] as a condition precedent to brining an action against [the Liberty 1100] Guarantor[s] upon this Guaranty". *See* Exhibit 3 (Liberty 1100 Guaranty), at ¶ 4.

Because it cannot be reasonably disputed both that (i) the Liberty 1100 Preferred Members made the Liberty 1100 Preferred Capital Contribution in the amount of $10,500,000, as same was expressly acknowledged by Defendants in executing the Liberty 1100 First Amendment and Liberty 1100 Guaranty, *see* Exhibit 2 (Liberty 1100 First Amendment), at ¶ 3 & Exhibit 3 (Liberty 1100 Guaranty), at "Preliminary Statement", and that (ii) the Liberty 1100 Preferred Returns due pursuant to the Liberty 1100 Guaranty have not been paid to the Liberty 1100 Preferred Members since January 2024, *see* Exhibit 1 (Ledger), as the Liberty 1100 Preferred Members repeatedly noted to Defendants and demanded payment, *see* Exhibit 8 (February 6, 2024 Default Notice), Exhibit 9 (February 18, 2024 Default Notice) & Exhibit 11 (May 17, 2024 Default Notice), the Liberty 1100 Preferred Members are entitled to judgment against Defendants on the First Count of the Verified Complaint in the amount of the Liberty 1100 Arrears, which were in the amount of $787,500 as of the date of filing of the Verified

Complaint, *see* Exhibit 1 (Ledger) plus all subsequent preferred returns accruing thereafter, together with reasonable attorneys' fees and costs incurred by the Liberty 1100 Preferred Members in bringing this action, *see* Exhibit 3 (Liberty 1100 Guaranty), at ¶ 9(b), which the Court should enter summarily as no amount of discovery or testimony will change those indisputable facts.

**B. Action to Enforce Guaranty - Riverside Richmond (Second Count).**

In addition to judgment in favor of the Liberty 1100 Preferred Members on the First Count of Verified Complaint brought to enforce the Liberty 1100 Guaranty, for the same reasons, the Court should also summarily enter judgment in favor of the Riverside Richmond Preferred Members on the Second Count of the Verified Complaint brought to enforce the virtually identical Riverside Richmond Guaranty.

As detailed in the Verified Complaint, like the Liberty 1100 Guaranty, under the Riverside Richmond Guaranty, Avrohom and Shulamit, collectively as the "*Riverside Richmond Guarantors*", "unconditionally, absolutely and guarantee[d] to the [Riverside Richmond Preferred] Members[2] the punctual, prompt and complete payment of (i) the outstanding Redemption … and (ii) the preferred return which is due and payable on the [Riverside Richmond Preferred Capital Contribution]", further acknowledged that the "purpose and intent of the [Riverside Richmond] Guaranty [is] that the obligations of the Guarantor hereunder … is absolute, irrevocable and unconditional ***under any and all circumstances***", and also waived any

---

[2] The Riverside Richmond Guaranty defines the contribution made in Riverside Richmond Member LLC pursuant to the Riverside Richmond First Amendment as the "*PE Investment*", and those making such PE Investment as the "*PE Members*", whereas the Riverside Richmond First Amendment identifies such contribution as the "*Preferred Capital Contribution*", and those making such Preferred Capital Contribution as the "*Preferred Members*". The divergent terminology is immaterial. For consistency, the Verified Complaint and this brief define the contribution in Riverside Richmond Member LLC as the "*Riverside Richmond Preferred Capital Contribution*", and those making such Riverside Richmond Preferred Capital Contribution as the "*Riverside Richmond Preferred Members*".

requirement that the Riverside Richmond Preferred Members first resort to Riverside Richmond Member LLC before enforcing the Riverside Richmond Guaranty. *See* Exhibit 5 (Riverside Richmond Guaranty), at ¶¶ 1, 4, 5 (emphasis added).

The Verified Complaint also details that the Riverside Richmond Preferred Members made the Riverside Richmond Preferred Capital Contribution in the amount $7,500,000, which Defendants acknowledged by executing the Riverside Richmond First Amendment, *see* Exhibit 4 (Riverside Richmond First Amendment), at ¶ 1 & Exhibit 5 (Riverside Richmond Guaranty), at "Preliminary Statement". Moreover, the Riverside Richmond Preferred Returns have not been paid since November 2023, *see* Exhibit 1 (Ledger), despite repeated notice to Defendants, *see* Exhibit 8 (February 6, 2024 Default Notice), Exhibit 9 (February 18, 2024 Default Notice) & Exhibit 11 (May 17, 2024 Default Notice); and the Riverside Richmond Preferred Capital Contribution was not redeemed in full by March 8, 2024 as required by the Riverside Richmond First Amendment, *see* Exhibit 4 (Riverside Richmond First Amendment), at ¶ 7 (providing that the "[Riverside Richmond] Preferred Member shall receive the [Riverside Richmond] Preferred Capital Contribution and [Riverside Richmond] Preferred Return within eighteen (18) months of the date hereof [September 8, 2022]"), which was also noticed to Defendants, *see* Exhibit 10 (February 20, 2024 Default Notice).

Accordingly, pursuant to the Riverside Richmond Guaranty, the Riverside Richmond Preferred Members are entitled to judgment against Defendants on the second count of the Verified Complaint in the amount of the Riverside Richmond Arrears, which were in the amount of $8,400,00 as of the date of filing of the Verified Complaint, *see* Exhibit 1 (Ledger), plus all subsequent preferred returns accruing thereafter, together with reasonable attorneys' fees and costs incurred by the Riverside Richmond Preferred Members in bringing this action, *see* Exhibit

5 (Riverside Richmond Guaranty), at ¶ 9(b), which the Court should enter summarily as no amount of discovery or testimony will change those indisputable facts.

**C. Action to Enforce Guaranty - Wood Ave (Third Count).**

For the same reasons, the Court should also summarily enter judgment against Defendants and in favor of the Wood Ave 194 Preferred Members on the Third Count of the Verified Complaint to enforce the Wood Ave Guaranty.

The Wood Ave 194 Guaranty, like the other guaranty agreements, provides that Avrohom and Shulamit, as the "*Wood Ave 194 Guarantors*", "unconditionally, absolutely and irrevocably guarantees to the [Wood Ave 194] Preferred Members the punctual, prompt and complete payment of the [Wood Ave 194] Preferred Return", further acknowledged that the "purpose and intent of the [Wood Ave 194] Guaranty [is] that the obligations of the Guarantor hereunder … is absolute, irrevocable and unconditional ***under any and all circumstances***", and also waived any requirement that the Wood Ave 194 Preferred Members first resort to Wood Ave 194 LLC before enforcing the Wood Ave Guaranty. *See* Exhibit 7 (Wood Ave 194 Guaranty), at ¶¶ 1, 4, 5 (emphasis added).

As also detailed in the Verified Complaint, the Wood Ave 194 Preferred Members made the Wood Ave 194 Preferred Capital Contribution in the amount of $8,000,0000, which Defendants acknowledged by executing the Wood Ave 194 First Amendment, *see* Exhibit 6 (Wood Ave 194 First Amendment), at ¶ 1 & Exhibit 7 (Wood Ave 194 Guaranty), at "Preliminary Statement". The Wood Ave 194 Preferred Returns have not been paid since November 2023, *see* Exhibit 1 (Ledger), notwithstanding that the Wood Ave 194 Preferred Members repeatedly notified Defendants of the default, *see* Exhibit 8 (February 6, 2024 Default Notice), Exhibit 9 (February 18, 2024 Default Notice) & Exhibit 11 (May 17, 2024 Default Notice).

As such, in accordance with the Wood Ave 194 Guaranty, the Wood Ave 194 Preferred Members are entitled to judgment against Defendants on the Third Count of the Verified Complaint in the amount of the Wood Ave 194 Arrears, which were in the amount of $800,000 as of the date of filing of the Verified Complaint, plus all subsequent preferred returns accruing thereafter, together with reasonable attorneys' fees and costs incurred by the Wood Ave 194 Preferred Members in bringing this action, *see* Exhibit 7 (Wood Ave 194 Guaranty), at ¶ 9(b). The Court should summarily enter judgment for the Wood Ave 194 Preferred Member as neither discovery nor testimony will change those indisputable facts.

## II. THE COURT SHOULD RESTRAIN AND ENJOIN DEFENDANTS FROM CONVEYING, ENCUMBERING OR DISPOSING OF ASSETS PENDING FINAL ADJUDICATION OF THE VERIFIED COMPLAINT IN ORDER TO PRESERVE THE *STATUS QUO.*

Because Defendants are engaged in a concerted scheme to shield and conceal their assets from Plaintiffs, in contravention of their express disclosure obligations, in order to preserve the *status quo*, Plaintiffs also bring an emergent application by way of order to show cause, seeking to restrain and enjoin Defendants from conveying, encumbering or disposing of assets pending final adjudication of the Verified Complaint.

Under *R.* 4:52-1, upon the filing of a complaint, a party may seek by order to show cause, and the Court may issue, a temporary restraining order. In addition, the Court is empowered to issue a preliminary injunction pending final adjudication of the matter. In this case, insofar as the Court should summary adjudicate the Verified Complaint on the return date of the Motion for the reasons set forth above, only temporary restraints pending the Motion return date may be necessary. However, in event the Court determines that summary adjudication is inappropriate (which it should not), Plaintiffs also seek a preliminary injunction pending final adjudication of

this matter. However, such relief will be unnecessary if the Court summary adjudicates the Verified Complaint on the Motion return date, as it should.

In deciding whether to grant injunctive relief under *R.* 4:52-1, the New Jersey Supreme Court has held that such injunction shall issue where the applicant demonstrates: (a) that an injunction is necessary to prevent substantial and irreparable harm or to preserve the *status quo*; (b) a reasonable probability of success on the merits of the underlying action, and (c) the balancing of the equities favors granting the injunction. *Crowe v. DeGioia*, 90 *N.J.* 126, 132-134 (1982). *See also Subcarrier Communications, Inc. v. Day*, 299 *N.J. Super.* 634, 638 (App. Div. 1997); *Weinstein v. Township of Franklin, New Jersey*, 898 *F.Supp.* 271 (D.N.J. 1995; *Atlantic Coast Demolition and Recycling, Inc. v. Board of Chosen Freeholders of Atlantic County*, 893 *F.Supp.* 301 (D.N.J. 1995).

"The purpose of *ad interim* restraint is to enable the court to fully deliberate and investigate the case in order that the injunction maintains the *status quo* so that the parties are in substantially the same plight when the final decree is entered as they were when the litigation began." *Peters v. Public Serv. Corp.*, 132 *N.J. Eq.* 500, 511 (Ch. Div. 1942); *Subcarrier Communications, Inc. v. Day*, 299 *N.J. Super.* 634, 639 (App. Div. 1997) ("[T]he purpose of a preliminary injunction 'is to maintain the parties in substantially the same condition when the final decree is entered as they were when the litigation began.'"). In ascertaining the relief requested, there must be no adequate remedy at law. *Green v. Piper*, 80 *N.J. Eq.* 288 (Ch. 1912). In determining the adequacy of a legal remedy, a court of equity may act if the legal remedy is illusory under the specific circumstances of a specific case. The mere fact that that the relief ultimately sought by the movant may be equated with money damages does not necessarily mean that a Court will withhold its equitable powers. *See Apollo Technologies Corp. v. Centrosphere*

*Indus Corp.*, 805 *F.Supp.* 1157, 1207-08 (D.N.J. 1992). Examination is not confined to simply terming relief as money damages; those money damages must be "adequate" under the given circumstances. *See* Restat. 2d of Contracts, § 360 (the likelihood that an award of damages could not be collected is a significant factor in determining the adequacy of the remedy.).

"'***[A] court may take a less rigid view' of the* Crowe *factors and the general rule that all factors favor injunctive relief 'when the interlocutory injunction is merely designed to preserve the status quo***.'" *Waste Mgmt. of New Jersey, Inc. v. Morris Cty. Mun. Utilities Auth.*, 433 *N.J. Super.* 445, 453 (App. Div. 2013) (emphasis added). Preliminary injunctions are intended to "prevent some threatening, irreparable mischief which should be averted pending a full and deliberate investigation of the case, and acts which destroy a complainant's business, custom and profits are in this category and authorize the issue of a preliminary injunction." *Sunbeam Corp. v. Windsor-Fifth Ave.,* 14 *N.J.* 222, 234 (1953). New Jersey courts have uniformly held that issuance of an interlocutory injunction is proper where doing so is necessary to preserve the power of the Court to grant relief. As the New Jersey Supreme Court stated in *Feraiullo v. Manno*, 1 *N.J.* 105, 108-109 (1948), "the court, having jurisdiction, will always intervene to protect the *res* from destruction, loss or impairment, so as to prevent the decree of the court, upon the merits, from becoming futile or inefficacious in operation. Particularly, this is so where it appears that the damage resulting to the complainant by a continuance of the alleged wrong may prove to be irreparable." *Accord Naylor v. Harkins*, 11 *N.J.* 435, 442-43 (1953); *Haines v. Burlington County Bridge Commission*, 1 *N.J. Super*. 163, 174 (App. Div. 1949). In this case, Plaintiff's application for a temporary restraining order and preliminary injunction pending final disposition of this matter seeks to maintain the *status quo*, preserve the available assets, and prevent any irreparable injury to Plaintiffs.



#10810075v1

**A. Plaintiffs Claims Rest On Settled Law and Have a Reasonable Probability of Succeeding On the Merits.**

As set forth above, Plaintiffs claims are not only meritorious but should be granted summarily in Plaintiffs favor on the Motion record which is not capable of good-faith dispute. Indeed, it is unquestionable that Plaintiffs made the subject capital contributions of $26,000,000; that Plaintiffs were and are entitled to certain preferred returns and capital redemption; and that despite Defendants unconditional, absolute and irrevocable guarantee that Plaintiffs would receive payment of such preferred returns and capital redemption, punctually, promptly and completely, such payments faltered and have now ceased, such that Plaintiffs are now owed not less than $9,987,500, and any additional monies hereafter accruing or otherwise due, together with attorneys' fees and costs. Accordingly, based on the facts, which are not reasonably disputed, Plaintiffs are likely to prevail on all counts of the Verified Complaint.

**B. Irreparable Harm Is Likely If Defendants Are Not Restrained and Enjoined From Conveying, Encumbering or Disposing Assets.**

In addition to establishing a reasonable probability of success on the merits – which cannot reasonably be disputed here – an applicant for injunctive relief must show that he faces immediate, substantial and irreparable injury if the requested injunction does not issue. *See Crowe*, 90 *N.J.* at 132; *Citizens Coach Co. v. Camden Horse R.R. Co.*, 29 *N.J. Eq.* 299, 303-304 (E. & A. 1878). Irreparable harm has been defined as an injury that cannot be adequately compensated in damages or for which there exists no certain pecuniary standard for the measurement of the damage. *See Sherman v. Stern*, 93 *N.J. Eq.* 626, 631 (E. & A. 1922). The inadequacy of damages as compensation may be due to the nature of the injury itself or the nature of the right or property injured. *Id.* In other words, harm may even be considered irreparable where it cannot be adequately remedied by monetary damages such that "severe personal inconvenience can constitute irreparable injury justifying the issuance of injunctive

relief." *Crowe*, 90 *N.J.* at 132-33. Accordingly, an injunction usually issues "'to prevent an anticipated or threatened injury, either to protect against a repetition of unlawful conduct or to guard against reasonably apprehended misconduct or infringement of a legal right.'" *Sheahan v. Upper Greenwood Lake Prop. Owners Ass'n*, 36 *N.J. Super.* 133, 136 (App. Div. 1955) (quoting *Hoffman-La Roche Inc. v. Weissbard*, 11 *N.J.* 541, 555 (1953). Indeed, it has been recognized that "[a]n 'after-the-fact' award of damages" may not be an adequate legal remedy. *Community Hosp. Group Inc. v. More*, 365 *N.J. Super*. 84, 100 (App. Div. 2003).

While injunctive relief is ordinarily reserved for those cases in which a money judgment will be inadequate to redress the harm to the applicant, "a money judgment which is uncollectible is not an adequate remedy at law. The 'fact that the payment of monies is involved does not automatically preclude a finding of irreparable injury.'" *Marsellis-Warner Corp. v. Rabens*, 51 *F. Supp. 2d* 508, 531 (D.N.J. 1999). The "'unsatisfiability of a money judgment can constitute irreparable injury"'. *Gerardi v. Pelullo*, 16 *F.3d* 1363, 1373 (3d Cir. 1994) (citing *Hoxworth v. Blinder, Robinson & Co.*, 903 *F.2d* 186, 205 (3d Cir. 1990)). Thus, in *Hoxworth*, where the plaintiff sought an injunction to preserve the *status quo*, the Third Circuit held "the injunction was a reasonable measure to preserve the *status quo* pending final determination … [where] there were allegations that [the defendant seller] was insolvent and its assets in danger of dissipation of depletion … [such that] the legal remedy against [the defendant seller], without recourse to the funds … would be inadequate". 903 *F.2d.* at 196; *see also Elliott v. Kiesewetter*, 98 *F.3d* 47, 57 (3d Cir. 1996) (upholding asset freeze "where the very assets subject to potential judgment will likely be dissipated without entry of the order"); *Gerardi*, 16 *F.3d.* at 1373-74 (upholding preliminary injunction restraining transfers of assets unrelated to the underlying litigation where defendants were financially unstable); *Marsellis-Warner Corp.*, 51 *F. Supp. 2d*

at 532 (upholding a preliminary injunction where "the past financial manipulation of the [d]efendants and the potential future depletion or dissipation of assets still in the possession of the [d]efendants create a real and substantial risk money damages may ultimately be unobtainable"). As the Appellate Division has held, "[p]rotecting an asset against dissipation … is an appropriate basis for issuing injunctive relief, so long as the other *Crowe v. De Gioia* elements are established", especially when the basis of the application is "to preserve the *status quo*, that is, to protect [plaintiffs'] ability to enforce a money judgment, [which] is hardly an impediment to injunctive relief". *Goldstein v. Deichl*, 2006 *N.J. Super. Unpub. LEXIS* 3012, at 8 (Unpub. App. Div. 2006), attached as Exhibit A to the Certification of Adam Garcia.

Here, it is clear that in absence of the Court's immediate intervention and interlocutory injunction, Plaintiffs' security for the $26,000,000 capital contribution – Plaintiffs' personal assets – will be dissipated to Plaintiffs' substantial detriment and irreparable harm. To that end, as detailed in the Verified Complaint, simultaneously with defaulting in their obligations under the Guaranty, and in contravention of their express disclosure obligation under the guarantees to provide to Plaintiffs upon request "information with respect to [their] business, properties, operations or condition, financial or otherwise", *see* Exhibit 3 (Liberty 1100 Guaranty), at ¶ 11; Exhibit 5 (Riverside Richmond Guaranty), at ¶ 11; Exhibit 7 (Wood Ave 194 Guaranty), at ¶ 11, Defendants immediately undertook to conceal and shield their assets from Plaintiffs. In recognition of such disclosure rights, beginning in November 2023 – shortly after the first default in the payment of preferred returns and on several occasions thereafter – and numerous times thereafter, Plaintiffs requested that Defendants provide disclosure of their personal financial condition; and continued to make such requests as provided in the guaranty agreements. *See* Exhibit 9 (February 18, 2024 Default Notice) (referring to requests on November 7, 2023,



#10810075v1

January 31, 2024 and February 2, 2024). Plaintiffs made such disclosure requests of Defendants upon the first occurrence of default in order to ensure that, minimally, the preferred returns and capital redemption remained secured by Defendants' personal guaranty, which was backed by Avrohom's representation set forth in his Statement of Financial Condition that his net worth was nearly $500,0000,000, including approximately $70,000,000 in liquidity, *see* Exhibit 15 (December 31, 2021 Statement of Financial Condition), which purported increased to approximately $80,000,000 in liquidity by 2023, *see* Exhibit 16 (January 9, 2023 Statement of Financial Conditions). Most recently, Plaintiffs made an additional request for Plaintiffs' personal financial statement – the fourth (4th) request for such information. *See* Exhibit 17 (June 18, 2024 Request for Guarantor Financial Information).

Despite Defendants' absolute obligation to provide the requested information, which was and is separate from and in addition to their obligation to pay all outstanding preferred returns and capital redemption, Defendants have persistently ignored Plaintiffs demands leaving Plaintiffs' functionally "in the dark" as to the security for their $26,000,000 contribution. The only logical conclusion to be drawn from Defendants abject and persistent failure to provide financial disclosures to Plaintiffs is that either Avrohom's prior Statement of Financial Condition was false, or that Defendants are currently placing their assets beyond the reach of collection. In either scenario, Plaintiffs risk if irreparably injury is immense.

**C. Balancing the Hardships of the Parties Favors Granting the Requested Injunctive Relief.**

The third requirement for the issuance of injunctive relief is that the harm to the applicant if the requested relief is not granted outweighs the harm to the defendants if the injunction is issued. *See Crowe*, *supra*, 90 *N.J.* at 134. Accordingly, a court must balance the hardships to determine whether its injunction is appropriate in each case. Here, the court must balance the

equities associated with Plaintiffs' interest in protecting the *status quo* while balancing Defendants' interest in being able to freely transfer away assets to the detriment of Plaintiffs (or being able to continue their record of deceit to hide and conceal those assets). In reviewing this matter, the Court should simply not allow Defendants to continue to benefit from their wrongful conduct to Plaintiffs' detriment. Plaintiffs are owed a substantial sum of money, amounting to over **$9,987,500** through June 24, 2024, and all amounts due thereafter. Defendants have continuously evaded their express obligations under the Guarantees to the detriment of Plaintiffs. Plaintiffs seek equitable relief to end the injustice that Defendants' wrongful conduct has created, and conclude their charade. These considerations weigh heavily in favor of Plaintiffs, and the Court should find that it is simply inequitable and unfair to allow Defendants to continue this course of behavior in light of the facts and circumstances of this case.

**CONCLUSION**

For such reasons, Plaintiffs respectfully submit that the Court should grant the Motion, ordering this matter to proceed summarily and conduct a "trial" on the return date of the Motion, and upon such "trial" entering final judgment in favor of Plaintiffs and against Defendants as follows:

(a) on the First Count of the Verified Complaint, partial judgment in favor of the Liberty 1100 Preferred Members and against the Liberty 1100 Guarantors, in the amount of $787,500 due under the Liberty 1100 First Amendment and the Liberty 1100 Guaranty as of the date of filing of the Verified Complaint; together with such other monies due to the Liberty 1100 Preferred Members through to the date of judgment, inclusive of but not limited to attorneys' fees and costs, in an amount to be determined on application to be submitted within seven (7) days thereof;

(b) on the Second Count of the Verified Complaint, a judgment in favor of the Riverside Richmond Preferred Members and the Riverside Richmond Guarantors, in the amount of $8,400,000 due the Riverside Richmond First Amendment and the Riverside Richmond Guaranty as of the date of filing of the Verified Complaint; together with such other monies due to the Riverside Richmond Preferred Members through to the date of judgment under the Riverside Richmond First Amendment and Riverside Richmond Guaranty, inclusive of but not limited to attorneys' fees and costs, in an amount to be determined on application to be submitted within seven (7) days thereof; and

(c) on the Third Count of the Verified Complaint, a judgment in favor of the *Wood Ave 194 Preferred Members* and against the *Wood Ave 194 Guarantors*, in the amount of $800,000 due under the *Wood Ave 194 First Amendmen*t and the *Wood Ave 194 Guaranty* as of the date of filing of the Verified Complaint; together with such other monies due to the Wood

Ave 194 Preferred Members through to the date of judgment, inclusive of but not limited to attorneys' fees and costs, in an amount to be determined on application to be submitted within seven (7) days of the date thereof; and

(d) such other and further relief in favor of Plaintiffs and against Defendants that the Court deems just and proper.

Plaintiffs further respectfully submits that the Court should enter the OSC, (i) temporarily restraining Defendants from conveying, encumbering or disposing of assets pending the return date of the Motion; and (ii) in the event the Court does not summarily adjudicate the Verified Complaint on the return date of the¶ Motion, preliminarily enjoining Defendants from conveying, encumbering or disposing of assets pending final adjudication of this action.

GIORDANO, HALLERAN & CIESLA, PC
*Attorneys for Plaintiffs*

By: */s/ Adam Garcia*
ADAM GARCIA

Dated: June 28, 2024



#10810075v1