# EXHIBIT B

| | |
|---|---|
| RUPAN TRIKHA, NITI TRIKHA, BHAVNA CHHABRIA, GANDOTRA INVESTMENTS LLC, NUVIEW TRUST CO FBO MAYUR DALAL IRA, R&R DHARIA LLC, RAJESH DHARIA, MANISH GANDHI REVOCABLE TRUST 2002, MANISH GANDHI, CORY CONNIFF, MVP PARK INTERNATIONAL INC., UK MANAGEMENT AND INVESTORS GROUP, LLC, SHETAL PATEL, SHASHI GOEL, PREM GOEL, NUVIEW TRUST CO FBO MAHESH CHHABRIA, KAVITA KALRA, VIJAY SINGHAL, YOGINI PATEL, NUVIEW TRUST CO FBO MAHESH CHHABRIA, NUVIEW TRUST COMPANY FBO MAHESH CHHABRIA IRA, NUVIEW TRUST COMPANY FBO MAYUR DALAL ROLLOVER IRA, NUVIEW TRUST CO FBO CORY CONNIFF IRA, NUVIEW TRUST CO CUSTODIAN FBO SATISH PATEL IRA, NUVIEW TRUST CO FBO MANJIT BAINS IRA, NUVIEW TRUST CO FBO MRINAL MALI IRA, RAMESH THAKKAR, MANJULA THAKKAR, MADHAVI DALAL, CRP INVESTORS GROUP LLC, and MRINAL MALI,<br><br>*Plaintiff*,<br>v.<br><br>AVROHOM PRAGER a/k/a SHAYA PRAGER and SHULAMIT PRAGER,<br><br>*Defendants*. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: OCEAN COUNTY<br><br>DOCKET NO. OCN-L-1627-24<br><br>Civil Action |

---

**BRIEF IN OPPOSITION TO PLAINTIFFS' ORDER TO SHOW CAUSE**

---

Of Counsel and on the Brief:

Adam J. Stein, Esq.
Jacob E. Lewin, Esq.
Jason R. Finkelstein, Esq.
*Attorneys for Defendants, Avrohom Prager a/k/a Shaya Prager and Shulamit Prager*

# TABLE OF CONTENTS


**PRELIMINARY STATEMENT** .......... **1**

**STATEMENT OF FACTS** .......... **3**

**ARGUMENT** .......... **3**

**I. PLAINTIFFS FAIL TO DEMONSTRATE ANY ENTITLEMENT TO RELIEF UNDER THE *CROWE* FACTORS** .......... **3**

**A. Plaintiffs Have Not Demonstrated They Will Suffer Immediate Irreparable Harm in the Absence of a Preliminary Injunction** .......... 4

i. Plaintiffs' Alleged Harm Can Be Redressed by Monetary Damages .......... 4

ii. The Injunctive Relief Sought is an Improperly Disguised Prejudgment Attachment .......... 5

iii. Plaintiffs' Alleged Irreparable Harm is Speculative in Nature .......... 7

**B. The Material Facts Are in Controversy and Plaintiffs Have Failed to Demonstrate a Likelihood of Success on the Merits** .......... **8**

**C. A Balance of the Equities Weighs in Favor of Defendants and Against the Issuance of a Preliminary Injunction** .......... **10**

**II. THE REQUESTED RELIEF IS WILDLY OVERBROAD AND NOT NARROWLY TAILORED TO PREVENT SPECIFIC THREATENED HARM** .......... **10**

**CONCLUSION** .......... **12**

# TABLE OF AUTHORITIES

**Cases**

*410 Commerce, L.L.C. v. Geologistics Americas, Inc.*,
2006 WL 33708 (Ch. Div. Feb. 10, 2006) ........ 5

*Allied Financial Corp. v. Steel Panel Sales, Corp.*,
86 N.J. Super. 65 (App. Div. 1964) ........ 6, 7

*Am. Employers' Ins. Co. v. Elf Atochem N. Am., Inc.*,
280 N.J. Super. 601, (App. Div. 1995) ........ 4

*Ames v. Premier Surgical Ctr., L.L.C., No. A-1278-15T1*,
2016 WL 3525246 (App. Div. 2016) ........ 9

*Anders v. Greenlands Corp.*,
31 N.J. Super. 329 (Ch. Div. Jun. 25, 1954) ........ 9

*Arcola Sales & Serv. Corp. v. Kelly*,
2005 WL 2219486 (Ch. Div. Sept. 9, 2005) ........ 10

*Banach v. Cannon*,
356 N.J. Super. 342 (Ch. Div. Jun. 24, 2002) ........ 11

*Cleef v. P. Serelis Corp., No. WRN-C-16005-05*,
2005 WL 975682 (Ch. Div. Apr. 8, 2005) ........ 4

*Crowe v. DeGoia*,
90 N.J. 126 (1982) ........ 4, 8, 10

*Delaware River & Bay Auth. v. York Hunter Const., Inc.*,
344 N.J. Super. 361 (Ch. Div. Jun. 28, 2001) ........ 4, 5

*Grand View Developers, Inc. v. Celentano*,
2005 WL 2483377 (Ch. Div. Oct. 7, 2005) ........ 8

*Hogan v. Donovan, No. BER-L-1602-12*,
2012 WL 1328279 (Law Div. Apr. 17, 2012) ........ 8

*In re Estate of Balgar*,
399 N.J. Super. 426 (Law Div. 2007) ........ 6

*Kern v. Szobovitz*,
2 N.J. Super. 401 (Ch. Div. Feb. 17, 1949) ........ 9

*Russo v. Estate of Rieger*,
2006 WL 2347881 (Ch. Div. Aug. 14, 2006) ........ 7

*Sarmanoukian v. Chemtek at Alpine, LLC*,
2005 WL 3005777 (Ch. Div. Nov. 4, 2005) ........ 8

*Sherman v. Sherman*,
330 N.J. Super. 638 (Ch. Div. 1999) .......... 10

*Subcarrier Communications, Inc. v. Day*,
299 N.J. Super. 634 (App. Div. 1997) .......... 4

*Tanner Associates, Inc. v. Ciraldo*,
33 N.J. 51 (1960) .......... 6

**Statutes & Rules**

N.J. Ct. R. 4:52-4 .......... 11

N.J.S.A. 2A:26-1 .......... 5

N.J.S.A. 2A:26-2 .......... 6

Defendants, Avrohom Prager a/k/a Shaya Prager and Shulamit Prager (the "Defendants") by and through their attorneys Stein Adler Dabah & Zelkowitz LLP and Cole Schotz P.C., respectfully submit this memorandum of law in opposition to Plaintiffs' Order to Show Cause signed by the Honorable Craig L. Wellerson, P.J. Civ., on June 28, 2024 (the "Order to Show Cause").[1]

## PRELIMINARY STATEMENT

The preliminary injunction sought by the Order to Show Cause should be denied as it presents an unwarranted restraint on all of Defendants' personal and business finances – even those with no remote relationship to Plaintiffs or this case. Plaintiffs are seeking a preliminary restraint against all of Defendants' assets pending the resolution of this entire lawsuit, which is functionally equivalent to a prejudgment attachment, an extraordinary remedy that is only granted in the limited circumstances expressly identified by the New Jersey legislature, none of which are applicable here. As Plaintiffs have utterly failed to demonstrate their entitlement to such extreme relief, there is no reason to circumvent the attachment statute by issuing an expansive preliminary injunction against Defendants as a substitute.

The crux of Plaintiffs' claims stem from Defendants' alleged breaches of Guarantees, which Plaintiffs readily admit are, if ultimately proven to have been breached, remedied by money damages: "Plaintiffs commenced this action to recover not less than $9,987,500 Defendants owe to Plaintiff[s]." (Plaintiffs' Brief, pg. 2; Verified Complaint, ¶ 10). Nowhere in the Verified Complaint do Plaintiffs seek equitable relief or suggest that money damages would not suffice, which is further evidenced by their decision to file this case in the Law Division, rather than in Chancery.

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Plaintiffs' Verified Complaint dated June 26, 2024 (the "Verified Complaint").

It is axiomatic that injunctive relief cannot be used to secure a potential money judgment. In a transparent effort to sidestep the well-settled New Jersey law that money damages do not present irreparable harm that would permit the preliminary relief sought, Plaintiffs allege – without *any* evidence other than mere speculation – that Defendants are engaged in a "concerted scheme to shield and conceal their assets from Plaintiffs" and thus, this Court must restrain and enjoin Defendants – and any entity of which Defendants are a "majority beneficiary" – from conveying, encumbering or disposing of any assets pending final adjudication of the entire lawsuit. Based on this mere reckless conjecture alone – which could similarly be raised by practically any litigant – Plaintiffs seek the most draconian relief, to wit, a complete freeze of all Defendants' personal and business assets, including those having no relationship to Plaintiffs' investments. This is absurd. Even if such relief were legally viable, Plaintiffs have come nowhere close to meeting their heavy burden of proving their entitlement thereto by clear and convincing evidence. An injunction here would be unprecedented and dangerous. Indeed, it would open the door to permit virtually any plaintiff who asserts a "concern" over asset dissipation to freeze a defendant's personal assets based on mere conjecture.

With respect to the balance of hardships, it bears noting that the extremely broad relief sought would raise constitutional concerns, as it would prevent Defendants from engaging in ordinary activities, for example, paying ordinary personal and business expenses having nothing to do with Plaintiffs. Defendants are well-known real estate investors who have outstanding obligations to lenders, employees, and tenants throughout the country at properties that are entirely unrelated to the claims at issue. The relief sought by Plaintiffs would inhibit Defendants' ability to continue functioning and have a cascading effect that would harm innocent third parties.

For the reasons stated herein, the Order to Show Cause, and requested temporary restraints, should be denied.

## STATEMENT OF FACTS

For a detailed recitation of the facts, the Court is respectfully referred to the certification of Avrohom Prager, sworn to on July 8, 2024 ("Prager Cert.").

## ARGUMENT

### I. PLAINTIFFS FAIL TO DEMONSTRATE ANY ENTITLEMENT TO RELIEF UNDER THE *CROWE* FACTORS

Plaintiffs' Order to Show Cause seeks the following relief (emphasis added):

> Preliminarily enjoining and restraining Defendants from conveying, transferring, disbursing, hypothecating, destroying, discarding, encumbering, mortgaging, borrowing against, indebting or drawing upon ***any of their assets***, including but not limited to such assets referred to in the financial statements annexed as Exhibit 15 and Exhibit 16, respectively, to the Verified Complaint, a***nd such assets held by any entity to which Defendants are the majority beneficiaries in interest, pending outcome of this case***.

In other words, Plaintiffs seek to enjoin Defendants from utilizing any of their personal or business assets – which includes their personal property (e.g., as homes and automobiles) – for any purpose. Ostensibly, the requested injunction will restrain Defendants from utilizing a personal credit card to purchase groceries or from utilizing business accounts to meet payroll obligations for employees of businesses in which Defendants have an interest. And incredibly, Plaintiffs ask the Court to do this at the pleading stage before Defendants have the opportunity to respond to the Verified Complaint or conduct any discovery.

It is well-established, however, that in order to obtain any preliminary injunction – let alone the draconian relief sought by the instant Order to Show Cause – Plaintiffs must demonstrate ***by clear and convincing evidence*** that: (1) immediate and irreparable harm will likely occur if the relief is denied; (2) the applicable underlying law is well-settled; (3) the material facts are not in controversy and Plaintiffs have a reasonable probability of ultimate success on the merits; and (4) the balance of hardships weighs in favor of granting the requested relief. Crowe v. DeGoia, 90

N.J. 126, 132 (1982); Subcarrier Communications, Inc. v. Day, 299 N.J. Super. 634, 639 (App. Div. 1997); see also Am. Employers' Ins. Co. v. Elf Atochem N. Am., Inc., 280 N.J. Super. 601, 611, (App. Div. 1995) (stating that "there must be clear and convincing proof in order to grant an injunction."). Plaintiffs cannot meet this high burden.

**A. Plaintiffs Have Not Demonstrated They Will Suffer Immediate Irreparable Harm in the Absence of a Preliminary Injunction**

Plaintiffs' application is devoid of anything other than speculation that they will suffer immediate and irreparable harm absent the oppressive temporary relief sought.

*i. Plaintiffs' Alleged Harm Can Be Redressed by Monetary Damages*

"One principle is that a preliminary injunction should not issue except when necessary to prevent irreparable harm. Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages." Crowe, supra, 90 N.J. at 132-33; see also Cleef v. P. Serelis Corp., No. WRN-C-16005-05, 2005 WL 975682, at *4 (Ch. Div. Apr. 8, 2005) ("The first principle and, the *sine qua non* for the granting of temporary restraints, is that a preliminary injunction should not issue except when necessary to prevent irreparable harm."). Thus, "[t]he availability of adequate monetary damages belies a claim of irreparable injury." Delaware River & Bay Auth. v. York Hunter Const., Inc., 344 N.J. Super. 361, 364-65 (Ch. Div. Jun. 28, 2001) (quoting Frank's GMC Truck Center v. General Motors Corp., 847 F.2d 100, 102 (3rd Cir. 1988)). "In other words, plaintiff must have no adequate remedy at law." Subcarrier, supra, 299 N.J. Super. at 638 (citing Green v. Piper, 80 N.J. Eq. 288, 293 (Ch. 1912)).

Here, Plaintiffs demand only money damages and compensation for the monies they invested in certain real estate transactions. The crux of Plaintiffs' claims stem from alleged breach of the respective Guarantees, which, if proven, can be remedied by an award of monetary damages. Indeed, the Verified Complaint sets forth three (3) causes of action: each for a separate breach of

a Guaranty for a different real estate investment, and all claim that "monies due and owing to Plaintiffs are in the aggregate amount of not less than $9,987,500 (exclusive of attorneys' fees and costs)." (Verified Complaint, ¶ 10). The Verified Complaint, which was filed in the Law Division a mere three (3) days before Plaintiffs filed their Order to Show Cause and during the interim of which Plaintiffs allege no changed circumstances, fails to set forth any equitable relief – let alone for the relief of an injunction. Since Plaintiffs' Verified Complaint seeks *only* money damages, the Order to Show Cause, and the temporary relief sought therein, should be denied as a matter of law.

*ii. The Injunctive Relief Sought is an Improperly Disguised Prejudgment Attachment*

Plaintiffs' requested relief seeks an extraordinary, limitless injunction restraining Defendants from the use of any business or personal asset, pending the resolution of the entire proceeding. Plaintiffs' requested relief is thus akin to a prejudgment attachment, which is entirely improper under the circumstances. See Delaware River Bay Auth., 344 N.J. Super. at 368 ("[m]ore than that, a pre-judgment restraint against the dissipation of assets is functionally equivalent to a prejudgment attachment of those assets.) Prejudgment attachment is authorized only under the limited circumstances set forth in the attachment statute (N.J.S.A. 2A:26-1) and is generally disfavored. See 410 Commerce, L.L.C. v. Geologistics Americas, Inc., 2006 WL 33708 (Ch. Div. Feb. 10, 2006). It is well-settled in New Jersey that "the reason for expanding the reach of those statutes is readily apparent especially since the Legislature might have done so but did not." See Delaware River Bay Auth., 344 N.J. Super. at 368.

Specifically, the statute provides that an attachment is available only under five (5) limited circumstances: (1) where the facts would entitle a plaintiff to an order of arrest before judgment in a civil action; (2) where the defendant absconds or is a nonresident of this State and a summons cannot be served on him; (3) where the cause of action existed against a decedent; (4) where the

plaintiff has a claim of an equitable nature; or (5) where the defendant is a corporation created by the laws of another state but authorized to do business in the state of New Jersey. See N.J.S.A. 2A:26-2. This statute is the only legal authority and the "sole source of an attachment remedy in this State." See Tanner Associates, Inc. v. Ciraldo, 33 N.J. 51, 53 (1960).

"Needless to say, 'attachment is an 'extraordinary remedy in rem for the collection of an ordinary debt by seizure of the property of the debtor,'' and may only be issued where there is a probability of success on the merits and the enumerated statutory criteria are satisfied." In re Estate of Balgar, 399 N.J. Super. 426, 438-39 (Law Div. 2007) (quoting Wolfson v. Bonello, 270 N.J. Super. 274, 289 (App. Div. 1994) (internal citations omitted)). Furthermore, the application for an attachment in the context of a contractual claim requires that the party applying for the attachment demonstrate some "fraudulent" intent or conduct to meet the requirements for an attachment. Allied Financial Corp. v. Steel Panel Sales, Corp., 86 N.J. Super. 65, 74 (App. Div. 1964) ("it is necessary to study our case law dealing with the added and presently material statutory requirement that defendant be show to have 'fraudulently contracted the debt or incurred the demand'").

Here, none of the five (5) scenarios exists to warrant the entry of a pre-judgment attachment in this matter (which is why Plaintiffs creatively styled their application as one for an injunction rather than an attachment in order to disguise the unorthodox and extraordinary relief sought): Plaintiffs are not entitled to an order of arrest; Plaintiffs have not interposed any proof that Defendants will abscond; none of Plaintiffs' claims are against a decedent; the Verified Complaint does not seek any equitable claim; and none of the Defendants are corporations created by the laws of another state (or this State, for that matter). Furthermore, as Plaintiffs' claims are based on contractual obligations, specifically the Guarantees, Plaintiffs must establish fraudulent conduct by the Defendants. See Allied Financial, 86 N.J. Super. at 74. Nowhere in any of Plaintiffs'

pleadings, however, do Plaintiffs allege or articulate fraudulent conduct by any of the Defendants. Instead, Plaintiffs' sole argument is that Defendants' unspecified alleged conduct could potentially frustrate the "status quo" of their assets. This bald and unsupported allegation not only fails to articulate any fraudulent conduct, but also fails to establish any basis for a pre-judgment attachment against Defendants on assets that were never identified as collateral in the subject Guarantees.

*iii. Plaintiffs' Alleged Irreparable Harm is Speculative in Nature*

In Russo v. Estate of Rieger, 2006 WL 2347881 (Ch. Div. Aug. 14, 2006), the Chancery Division held that "***potential*** insolvency alone does not constitute an inadequate remedy at law, and thus irreparable harm, justifying the jurisdiction of equity." *Id.*, *8 (emphasis added). In *Russo*, the Court found that because "plaintiffs' exclusive claim for irreparable harm in this case is the potential insolvency of the Estate, and same is based admittedly 'upon information and belief,' the court cannot find plaintiff has adequately shown any irreparable harm." *Id. Russo* is akin to the instant matter, where Plaintiffs allege, without any basis or supporting evidence, that "the ***only*** logical conclusion to be drawn from Defendants abject and persistent failure to provide financial disclosures to Plaintiffs is that either Avrohom's prior Statement of Financial Condition was false, or that Defendants are currently placing their assets beyond the reach of collection." (Plaintiffs' Brief, pg. 17). Furthermore, Defendants' alleged "persistent failure" to provide financial information – and the basis upon which they seek such draconian injunctive relief – arises from a single letter sent a week before filing suit calling for a response within five (5) days. This hardly supports the type of "concerted scheme" to hide assets which Plaintiffs allege.

To satisfy the "heavy burden" for injunctive relief, Plaintiffs rely upon reckless conjecture to support the imposition of an open-ended, unlimited injunction and functional prejudgment attachment, against all the assets of Defendants and related entities, pending the disposition of the

entire lawsuit, even though no equitable relief is sought in the actual Verified Complaint. Plaintiffs' speculative claim that Defendants *may* be potentially insolvent does not alone constitute an inadequate remedy at law, and cannot justify the harsh relief sought by Plaintiffs. See Sarmanoukian v. Chemtek at Alpine, LLC, 2005 WL 3005777, at *3 (Ch. Div. Nov. 4, 2005) (denying preliminary injunction where the movant's alleged harm stemmed from "a mere possibility"); see also Grand View Developers, Inc. v. Celentano, 2005 WL 2483377, at *4 (Ch. Div. Oct. 7, 2005) ("Vague assertions and unsubstantiated allegations are insufficient to sustain a claim for preliminary injunctive relief.").

Ultimately, the requested overboard restraint goes beyond merely maintaining the *status quo* and prevents Defendants from engaging in any form of business or personal financial activity and is unsupported by the evidence presented by Plaintiffs.

### B. The Material Facts Are in Controversy and Plaintiffs Have Failed to Demonstrate a Likelihood of Success on the Merits

"A third rule is that a preliminary injunction should not issue where all material facts are controverted. Thus, to prevail on an application for temporary relief, a plaintiff must make a preliminary showing of a reasonable probability of ultimate success on the merits." *Crowe, supra*, 90 N.J. at 133 (citations omitted); see also Hogan v. Donovan, No. BER-L-1602-12, 2012 WL 1328279, at *13 (Law Div. Apr. 17, 2012) (recognizing that the dispute of material facts prevents a showing of a reasonable probability of success on the merits). Moreover, to succeed on an application for injunctive relief, Plaintiffs are required to "demonstrate the likelihood of success on the merits by clear and convincing evidence." See Ames v. Premier Surgical Ctr., L.L.C., No. A-1278-15T1, 2016 WL 3525246, at *2 (App. Div. 2016).

Here, Plaintiffs claim Defendants owe them approximately $9,987,500.00; however these monies have been paid. *See* Prager Cert. ¶ 8. Indeed, Plaintiffs are a group of syndicated investors

who have pooled monies together and coordinated with Dr. Lilat Patel, M.D., who is the lead investors and managing member of UK Management and Investors Group LLC. *Id.* In 2021, Dr. Patel coordinated and syndicated funds from Plaintiffs to invest in the real estate deals now at issue. In or around January 2024, given the cash crunch at the properties, Dr. Patel and Avrohom Prager spoke about restructuring the investments and entering into a new agreement which would allow for the forbearance of any payment obligations. *Id.*, at ¶ 10. In order to move forward with the restructured investment, Dr. Patel required that Prager wire a total of approximately $10,000,000.00, and Dr. Patel (and his syndicated investors) was then supposed to then move forward with the restructuring. *Id.* at ¶¶ 11-12. After taking Prager's money, however, Dr. Patel, reneged on the deal. *Id.* at ¶ 13. Ultimately, Defendants remitted the monies that Plaintiffs allege are due and owing to Dr. Patel. *Id.* at ¶ 14. That Dr. Patel may have pocketed his investors' monies is not Defendants' fault, nor does it create any cognizable claim against Defendants. Ultimately, on these facts, Plaintiffs simply cannot demonstrate the likelihood of success on the merits by "clear and convincing evidence."

Furthermore, the material facts alleged by Plaintiffs are indeed disputed in detail in the Prager Certification. <u>See</u> <u>Anders v. Greenlands Corp.</u>, 31 N.J. Super. 329, 339 (Ch. Div. Jun. 25, 1954) ("Every material fact upon which plaintiffs rely is denied by defendants, fully and explicitly, under oath. A preliminary injunction may not issue in such a case."); <u>Kern v. Szobovitz</u>, 2 N.J. Super. 401, 403 (Ch. Div. Feb 17, 1949) ("Where the material facts on which plaintiffs rely are met by a full, explicit and circumstantial denial under oath, a preliminary injunction should not issue").

Ultimately, because the critical facts are disputed and the Court has nothing more than competing certifications, Plaintiffs have failed to demonstrate a probability of success on the merits by clear and convincing evidence.

**C. A Balance of the Equities Weighs in Favor of Defendants and Against the Issuance of a Preliminary Injunction**

"The final test in considering the granting of a preliminary injunction is the relative hardship to the parties in granting or denying relief." *Crowe, supra*, 90 N.J. at 134. Injunctive relief is only appropriate when the harm to the movant outweighs the harm to the non-movant. See Sherman v. Sherman, 330 N.J. Super. 638, 644 (Ch. Div. 1999) ("Temporary injunctive relief should not issue unless it can be said that injury to plaintiffs if the injunction does not issue outweighs the harm to defendants if it does.").

Here, Plaintiffs face no legitimate hardship if the extraordinary relief requested is denied. Arcola Sales & Serv. Corp. v. Kelly, 2005 WL 2219486, at *9 (Ch. Div. Sept. 9, 2005) (finding where "[a]lthough plaintiff suggests that harm may occur to the business, there has been no concrete showing of immediate harm nor has there been a satisfactory of potential harm" such that the balance of the equities tips against injunction). By contrast, the requested relief, if granted, will prevent Defendants from engaging in everyday personal and business transactions, including those having absolutely nothing to do with Plaintiffs' claims herein, and given the overbroad nature of the relief, will affect the lives of countless others that are not parties to this action.

It is abundantly clear that a balancing of the equities weighs heavily in favor of denying the requested restraints. Here, the harm that would befall Defendants by issuing a preliminary injunction substantially outweighs any speculative harm that Plaintiffs may suffer if the Court refuses to grant this application, and the relief should therefore be denied.

**II. THE REQUESTED RELIEF IS WILDLY OVERBROAD AND NOT NARROWLY TAILROED TO PREVENT SPECIFIC THREATENED HARM**

Rule 4:52-4 requires, among other things, that:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; **shall be specific in terms**; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts

> sought to be restrained; **and is binding only upon such parties to the action** and such of their officers, agents, employees, and attorneys, and upon such persons in active concert or participation with them as receive actual notice of the order by personal service or otherwise

[R. 4:52-4 (emphasis added).]

This rule embodies the principal that "the power to enjoin, that it is 'the strongest weapon at the command of a court of equity,' suggests 'caution, deliberation and sound discretion,' all of which bespeak a narrowing of its terms to meet only the matter at hand." Banach v. Cannon, 356 N.J. Super. 342, 347 (Ch. Div. Jun. 24, 2002) (quoting Light v. National Dyeing and Printing Co., 140 N.J.Eq. 506, 510 (Ch.1947)). Here, the requested preliminary relief is anything but narrowly tailored. Thus, in addition to Plaintiffs' having failed to demonstrate entitlement to relief on the merits of the application, the requested preliminary injunction is overbroad and unworkable.

*First*, the requested preliminary restraints seek to paralyze Defendants from using "all assets," including assets referenced on documents attached to the Verified Complaint, in express violation of Rule 4:52-4. *Second*, the preliminary restraints are sought against "such assets held by any entity to which Defendants are the majority beneficiaries in interest." (Order to Show Cause, pg. 3). In other words, Plaintiffs improperly seek to enjoin entities that are not parties to this action from using their respective assets, in direct contravention to Rule 4:52-4. *Third*, compliance with the requested restraints is essentially impossible, making an unreasonable restraint of Defendants' ability to conduct any business or utilize any personal finances. These requested preliminary restraints do not present "specific terms" that are prohibited, but rather set forth broad sweeping restrictions on business and personal finances.

The draconian and overbroad preliminary injunction sought will prevent Defendants from using any of their personal or business assets, including limiting Defendants from using their credit cards for any everyday purchases, or even meeting payroll obligations of any business in which

they have an interest. Such an overboard restraint would be unprecedented in New Jersey, grossly inequitable and entirely improper. The motion should be denied in its entirety and the TRO should be stricken.

**CONCLUSION**

For the foregoing reasons, it is respectfully requested that the Court deny the Order to Show Cause and preliminary injunction, together with any other relief the Court deems just and proper.

STEIN ADLER
DABAH & ZELKOWITZ LLP

By: ____________________
Adam J. Stein, Esq.
Jacob E. Lewin Esq.
936 Broadway, 5th Floor
New York, New York 10010
Tel. (212) 867-5620

COLE SCHOTZ P.C.

By: */s/ Jason Finkelstein*
Jason Finkelstein, Esq.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
Tel. (201) 525-6293

*Attorneys for Defendants, Avrohom Prager a/k/a Shaya Prager and Shulamit Prager*

Dated: July 8, 2024